UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION COMPANY, | ) | Case No. 17-17465 KHT |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC., | ) | Case No. 17-17467 KHT |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY-UTAH, LLC, | ) | Case No. 17-17469 KHT |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| MYTON OILFIELD RENTALS, LLC, | ) | Case No. 17-17471 KHT |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | **Jointly Administered Under** |
| | ) | **Case No. 17-17465 KHT** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
POSTPETITION FINANCING ON A SECURED, SUPERPRIORITY BASIS AND (B)
USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III)
SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for interim and final orders, under

sections 105, 361, 362, 363, and 364, of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002 and 4001 of Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Colorado (the "Local Bankruptcy Rules") seeking, among other things:

(1) authority pursuant to Bankruptcy Code sections 363 and 364(c) and (d) to obtain debtor-in-possession secured financing (the "DIP Facility") pursuant to the following terms and agreements (collectively, the "DIP Financing Documents"):  (a) this Order, and any final order entered by this Court approving the Motion and DIP Facility (the "Final Order"), and (b) the Badlands Production Company, *et al.* Terms and Conditions of Proposed Senior Secured, Super-Priority Debtor-in-Possession Credit Facility Term Sheet, attached to the Motion as Exhibit A, as amended, modified, and/or supplemented at or before the Final Hearing (as such term is defined below) and presented to this Court (the "DIP Financing Term Sheet"),[1] with Garrison Loan Agency Services LLC (the "DIP Agent"), as agent and the lenders designated pursuant thereto (the "DIP Lenders");

(2) the grant to the DIP Agent, for the benefit of itself and the DIP Lenders, of superpriority administrative claim status pursuant to Bankruptcy Code sections 364(c)(1) and 507(b) in accordance with the terms of this Order;

(3) authorization for the Debtors' use of cash collateral whenever or wherever acquired, and the proceeds of all collateral pledged to the Pre-Petition Lenders (defined below), as contemplated by Bankruptcy Code section 363 in accordance with the terms set forth herein;

(4) a grant of adequate protection to the Pre-Petition Agent and Pre-Petition Lenders under and in connection with the Pre-Petition Credit Agreement and Pre-Petition Loan Documents (as defined below) in accordance with the terms set forth herein;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Financing Term Sheet or the Motion, as applicable.

(5) modification of the automatic stay to the extent hereinafter set forth and waiving the 14-day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h); and

(6) a Final Hearing on the Motion for entry of an order authorizing the DIP Facility and use of cash collateral on a final basis.

Notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) (the "Notice") having been served by the Debtors in accordance with Bankruptcy Rule 4001 on: (i) the counsel for the DIP Agent and the DIP Lenders and counsel for the Pre-Petition Agent and Pre-Petition Lenders; (ii) the United States Trustee for the District of Colorado (the "U.S. Trustee"); (iii) the holders of the twenty (20) largest unsecured claims against each Debtor's estate; (iv) all parties known to the Debtors who hold any liens or security interest in the Debtors' assets who have properly filed UCC-1 financing statements against any of the Debtors, or who, to any Debtor's knowledge, have asserted any liens on any of such Debtor's assets; (vi) the Internal Revenue Service and all taxing authorities of states in which the Debtors are doing business; and (vii) certain other parties identified in the certificates of service filed with this Court.

Pursuant to Bankruptcy Rule 4001, this Court held an interim hearing with respect to the Motion on August 17, 2017 (the "Interim Hearing").

After the Motion and the proceedings before this Court at the Interim Hearing; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by this Court as reflected on the record established by the Debtors at the Interim Hearing;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[2]

---

[2]    To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

A. <u>Petition Date</u>.  On August 11, 2017 (the "<u>Petition Date</u>"), the Debtors each commenced a case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code;[3]

B. <u>Debtor in Possession</u>.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108, and no trustee or examiner has been appointed;

C. <u>Notice</u>.  The Debtors gave due and sufficient notice of the Motion pursuant to the Bankruptcy Rules and Local Bankruptcy Rules;

D. <u>Jurisdiction and Venue</u>.  This Court has core jurisdiction over the Debtors' bankruptcy cases, the Motion, and the parties and property affected by this Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

E. <u>Statutory Committee Formation</u>.  As of the date hereof, the United States Trustee has not appointed an official committee of unsecured creditors in this matter pursuant to Bankruptcy Code section 1102 (a "<u>Statutory Committee</u>");

F. <u>Debtors' Stipulations</u>.  The Debtors have admitted, represented and stipulated, without prejudice to the rights of third parties or any Statutory Committee set forth in this Order, the following (collectively, the "<u>Stipulations</u>"):

(1) *Pre-Petition Loan Documents and Obligations*.  As of the Petition Date, the Debtors and the Guarantors were parties to that certain Amended and Restated Credit Agreement, dated as of August 19, 2014 (such agreement, as amended, the "<u>Pre-Petition Credit Agreement</u>", and together with all other documents, instruments, and agreements

---

[3]   Unless otherwise noted, all statutory references are to the Bankruptcy Code.

delivered in connection with the Pre-Petition Credit Agreement, the "Pre-Petition Loan Documents") with Garrison Loan Agency Services LLC as agent (in such capacity, the "Pre-Petition Agent") and the lenders party thereto (in such capacity, the "Pre-Petition Lenders"), pursuant to which (a) Badlands Production Company ("Badlands") was indebted to the Pre-Petition Agent and Pre-Petition Lenders, without defense, counterclaim, recoupment, or offset of any kind, in the approximate non-contingent liquidated amount of no less than $33,401,224.84 as of the Petition Date, which obligations were subject to valid, binding, and irrevocable guaranties of payment by Badlands Energy, Inc., Badlands Energy-California, LLC, Badlands Energy-Utah, LLC, and Myton Oilfield Rentals, LLC (such entities, the "Guarantors" and the obligations of the and Guarantors under the Pre-Petition Credit Agreement and other Pre-Petition Loan Documents, collectively, the "Pre-Petition Obligations"), for which Badlands and the Guarantors have no defenses, counterclaims, recoupments, or offsets of any kind, and (b) such Pre-Petition Obligations were secured by valid, enforceable, properly perfected, first priority, and unavoidable liens on and security interests (the "Pre-Petition Liens") encumbering substantially all assets of the Debtors and Guarantors (such collateral, the "Pre-Petition Collateral"), as set forth in the Pre-Petition Credit Agreement and Pre-Petition Loan Documents;

(2)    *DIP Lenders' Terms of Financing*.  The DIP Agent and DIP Lenders are willing to provide post-petition financing to the Debtors through the DIP Facility as set forth in the DIP Financing Term Sheet;

(3)    *Cash Collateral*.  The Pre-Petition Agent and Pre-Petition Lenders and Wapiti II (as defined herein) consent to the Debtors' use of the Pre-Petition Collateral and

5

cash collateral (as such term is defined in Bankruptcy Code section 363(a)) only upon the terms and conditions contained in this Order and the DIP Financing Term Sheet, and subject to a reservation of rights of other parties in interest and entry of a Final Order;

(4)     *No Claims Against Pre-Petition Agent and Lenders*.  The Debtors and any non-debtor Guarantors possess no claims, offsets, or other rights, or causes of action against the Pre-Petition Agent and/or Pre-Petition Lenders that would in any manner impair, reduce, or otherwise modify the Pre-Petition Obligations or the validly perfected Pre-Petition Liens upon the Pre-Petition Collateral;

(5)     *Validity and Non-Disturbance of Pre-Petition Obligations*.  The Pre-Petition Obligations constitute valid, binding obligations of the Debtors and any non-debtor Guarantors, enforceable in accordance with their terms, and the Debtors and/or any non-debtor Guarantors will not assert any claims, counterclaims, setoffs, or defenses of any kind or nature, which in any way would affect the validity or enforceability of any of the Pre-Petition Obligations and/or the Pre-Petition Liens of the Pre-Petition Agent and Pre-Petition Lenders upon the Pre-Petition Collateral, or which would in any way reduce the obligation of Badlands or Guarantors to pay in full, in cash all of the Pre-Petition Obligations;

(6)     *Costs of Estate Administration*.  The Debtors reasonably and in good faith believe that the use of the Cash Collateral and the loans, advances, and other financial accommodations to be obtained pursuant to the DIP Credit Facility are sufficient to fund all projected legitimate and allowable expenses of their Chapter 11 Cases from the Petition Date through the period to which the Budget pertains; and

(7)     *Authorization*.  Each Debtor is a duly organized, validly existing limited liability company or corporation and has the requisite power and authority to own, lease, and operate its property, including, without limitation, the DIP Collateral.  Each of the Debtors has the requisite power and authority to enter into, execute, deliver, and perform its obligations under the DIP Financing Term Sheet and this Order and to incur the obligations provided for thereon.   Except as may be explicitly required in the DIP Financing Term Sheet, no consent or waiver of, filing with, authorization, approval or other action by any shareholder, any federal, state, or other governmental authority or regulatory body or any other person (other than the DIP Agent), which has not already been obtained or done, is required in connection with the execution, delivery, and performance by the Debtors of any of the documents required as a condition to the validity or enforceability of the DIP Financing Term Sheet, other than entry by this Court of this Order.

G.     Inability to Obtain Unsecured Credit.  The Debtors are unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense necessary to maintain and conduct their businesses;

H.     Inability to Obtain Alternate Secured Credit.  The Debtors are unable to obtain secured credit on more favorable terms than under the terms and conditions provided in this Order and  the other DIP Financing Documents;

I.     Cash Collateral.  The Debtors assert that all cash of the Debtors, wherever located on the Petition Date, represents (i) proceeds of loans or other financial accommodations provided to Debtors by the Pre-Petition Lenders under the Pre-Petition Credit Agreement and Pre-Petition Loan Documents; or (ii) proceeds of Pre-Petition Collateral.  The Debtors assert that such funds

(the "Cash Collateral") constitute cash collateral within the meaning of Bankruptcy Code section 363;

J.     Best Interests of Estates.  It is in the best interest of Debtors' estates that the Debtors be allowed to enter into the DIP Facility in order to use the Pre-Petition Collateral and Cash Collateral subject to and in accordance with the terms of this Order and the DIP Financing Term Sheet, and upon entry of a Final Order, obtain post-petition secured financing from the DIP Agent and DIP Lenders, and to grant adequate protection to the Pre-Petition Agent and Pre-Petition Lenders on account of the Pre-Petition Obligations, on an interim basis under the terms and conditions set forth herein and in the DIP Financing Term Sheet, as such is necessary to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing;

K.     Good Faith.  The extension of credit and financial accommodations under the DIP Financing Term Sheet are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration and the DIP Lenders are entitled to the protections of Bankruptcy Code section 364(e);

L.     Immediate Need for DIP Facility.  The Debtors assert that they require access to Cash Collateral and, upon entry of a Final Order the funding available, under the DIP Facility and the DIP Financing Term Sheet in order to satisfy administrative expenses associated with the operation of their businesses as going concerns and other costs relating to the administration of the Chapter 11 Cases, and in order to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing;

M.     Necessity of DIP Facility Terms.  The Pre-Petition Agent and Pre-Petition Lenders are unwilling to consent to use of the Pre-Petition Collateral by the Debtors, except as provided

under the terms of the DIP Financing Term Sheet and this Order assuring that the liens and the various claims, superpriority claims, and other protections granted in this Order will not be affected by any subsequent reversal or modification of this Order or any other order, as provided in Bankruptcy Code section 364(e), which is applicable to the post-petition financing arrangement contemplated in the DIP Financing Term Sheet and the use of Cash Collateral contemplated by this Order; and

N.  <u>Good Cause for Entry to Avoid Immediate and Irreparable Harm</u>.  Good and sufficient cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief set forth in this Order, the Debtors and their estates will be immediately and irreparably harmed.  Entry of this Order, consummation of the financing under the DIP Facility (subject to a Final Order), and the use of Pre-Petition Collateral, including Cash Collateral, in accordance with this Order and the DIP Financing Term Sheet pending the Final Hearing and Final Order are in the best interests of the Debtors, their estates and their creditors.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

1.      <u>DIP Facility Approval</u>.  Subject to entry of the Final Order, the Motion is granted on an interim basis effective as of the Petition Date.  The Debtors are authorized, pursuant to Bankruptcy Code sections 363 and 364, to enter into the DIP Facility pursuant to the DIP Financing Term Sheet, to execute such other and additional documents necessary or desired to implement the DIP Facility or the DIP Financing Term Sheet, to use the Pre-Petition Collateral, Cash Collateral, and the proceeds and products thereof, pursuant to the terms and conditions of the DIP Financing Term Sheet and this Order (with such changes, if any, as were made prior to or as a result of the Interim Hearing or are otherwise authorized to be made as amendments to the DIP Financing Term Sheet in accordance with this Order) to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing, provided however, that any post-petition secured financing from the DIP Agent and DIP Lenders, shall remain subject to entry of the Final Order.  The Debtors shall use Cash Collateral and, upon entry of a Final Order, any advances obtained under the DIP Facility and the DIP Collateral only for the purposes and in the amounts set forth in the DIP Financing Term Sheet attached to the Motion as <u>Exhibit B</u>, the Budget attached to the Motion, and any subsequent Budgets approved by the DIP Agent, in writing, at the DIP Agent's sole discretion. Upon entry of a Final Order, the DIP Agent and DIP Lenders shall have no obligation to make DIP Facility advances in excess of the amounts and times set forth in the DIP Financing Term Sheet.

2.     DIP Facility Obligations.  Subject to a Final Order, the DIP Financing Documents shall constitute and evidence the validity and binding effect of the Debtors' obligations under the DIP Facility, which DIP Facility obligations shall be enforceable against the debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in any of the Debtors' cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any such cases, or in any other proceedings superseding or related to any of the foregoing.  The Debtors shall be jointly and severally liable for repayment of any DIP Facility funds advanced, as authorized by a Final Order, pursuant to the DIP Financing Documents, together with interest thereon, at the times and in the amounts set forth in the DIP Financing Documents.

3.     DIP Facility Budget.  With respect to the Budget:

(a) (i) actual cash receipts for each line item within the Budget for any weekly period shall not be less than 90% of the budgeted cash receipts for such line item during such weekly period and (ii) each Budget line item for cash disbursements from operations (other than Professional Fees) during any weekly period shall not be more than 110% of the budgeted disbursements during such weekly period for such Budget line item;

(b) (i) actual cash receipts for each line item within the Budget for the cumulative period from the Petition Date to the end of the current weekly Budget period shall not be less than 95% of the budgeted total cash receipts for such line item during such cumulative period and (ii) each Budget line item for cash disbursements from operations (other than Professional Fees) during the cumulative period from the Petition Date to the end of the current weekly period for such Budget line item shall not be more than 105% of the budgeted cash disbursements from operations for such Budget line item during such cumulative period; and

(c) for all Professional Fees for each Professional (as such terms are defined in the DIP Financing Term Sheet) within the Budget, the Debtors shall not allow actual disbursements for each Professional Fee line item (and each Professional receiving Professional Fees shall be reflected on its own line item) to be more than the budgeted disbursements for such Professional Fee line item during the cumulative period from the Petition Date to the end of the current weekly Budget period.

4.  <u>Limitation on Use of DIP Facility Proceeds and Cash Collateral</u>.  No proceeds of the DIP Facility (as authorized by a Final Order) or Cash Collateral shall be used to (a) permit the Debtors, or any other party-in-interest or their representatives to challenge, investigate, or otherwise contest or institute any proceeding to determine (or support, directly or indirectly, any other person or entity in contesting or challenging) (i) the validity, perfection, or priority of any security interests in favor of the Pre-Petition Lenders, Pre-Petition Agent, DIP Agent, or the DIP Lenders, or (ii) the enforceability of the obligations of any of the Debtors or any Guarantor under the Pre-Petition Credit Agreement, any other Pre-Petition Loan Documents, the DIP Facility, the DIP Financing Term Sheet, or any other DIP Financing Documents, (b) investigate, commence, prosecute, or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding, or cause of action against the Pre-Petition Lenders, Pre-Petition Agent, the DIP Agent and/or the DIP Lenders and their respective agents, employees, attorneys, advisors, or representatives including, without limitation, any lender liability claims or subordination claims, (c) directly or indirectly investigate, commence, prosecute, or defend (or support, directly or indirectly, any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtors under the Pre-Petition Credit Agreement, any other Pre-

Petition Loan Documents, or the DIP Financing Documents, (d) fund acquisitions, capital expenditures, capital leases, or any other similar expenditure other than capital expenditures specifically set forth in the Budget and approved by the DIP Agent, or (e) for any other purpose for which the Carve-Out cannot be used; provided, however, that a Statutory Committee (if any) shall be allowed to use proceeds of the DIP Facility in an amount not to exceed ten thousand dollars ($10,000) to investigate the validity of the claims and liens of the Pre-Petition Agent and Pre-Petition Lenders (the "Committee Budget").

5.      DIP Facility Advances.  Subject to entry of a Final Order, pursuant to Bankruptcy Code sections 363 and 364(c) and (d), the DIP Facility funds to be advanced pursuant to the terms of this Order and the DIP Financing Term Sheet (collectively, the "DIP Facility Advances") shall be allowed administrative expenses of the Debtors' estates, which shall, subject to the Carve-Out, have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Chapter 11 Cases as provided under the Bankruptcy Code (such claim, the "DIP Superpriority Claim").  Notwithstanding the foregoing, the DIP Superpriority Claim shall not be payable from the proceeds of or recoveries upon Avoidance Actions (as such term is defined below).  The time of payment of the DIP Facility Advances authorized bv a Final Order shall not be altered, extended, or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of this Court which hereafter may be entered.

6.      Interest and Fees.  To the extent fully secured, interest on the Pre-Petition Obligations shall accrue from and after the Petition Date at the Non-Default Rate (as defined in the DIP Financing Term Sheet).  The reasonable fees and expenses of the DIP Agent (whether

incurred before or after the Petition Date) shall be payable as set forth in the DIP Financing Term Sheet without further notice, motion, or application to, order of, or hearing before this Court.

7.      <u>DIP Facility Liens</u>.  Subject to entry of a Final Order, pursuant to Bankruptcy Code sections 363, 364(c), and 364(d), as security for the DIP Facility Advances and other post-petition costs payable under the DIP Financing Term Sheet, the Debtors are hereby authorized to and are hereby deemed to grant to the DIP Agent a valid, binding, and enforceable lien, mortgage and/or security interest (a "<u>Lien</u>," and as so granted to the DIP Agent, the "<u>DIP Lien</u>") in all of the Debtors' presently owned or hereafter acquired property and assets (including the "DIP Collateral" as defined in the DIP Financing Term Sheet), whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located (including, without limitation, first priority liens on any cash held in the Debtors' bank accounts), and the proceeds and products thereof (collectively, the "<u>DIP Collateral</u>"), but excluding:  any causes of action that could be brought relating to prepetition transfers pursuant to sections 544, 545, 547, 548, and 550 of the Bankruptcy Code, or any applicable state fraudulent transfer statutes, and all proceeds of or recoveries thereon (the "<u>Avoidance Actions</u>").

8.      <u>Priority of DIP Facility Liens</u>.  Pursuant to Bankruptcy Code sections 364(c) and 364(d), and subject to entry of a Final Order, the DIP Lien shall be a first priority senior and priming lien on the DIP Collateral (including the Pre-Petition Collateral), subject and junior only to (i) the Carve-Out (defined below) and (ii) valid, enforceable, properly perfected, and unavoidable prepetition Liens (including any Liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted under Bankruptcy Code section 546(b)) encumbering assets currently in existence of a Debtor but only to the extent such

14

Liens are senior to the Liens held by Pre-Petition Lenders and/or Pre-Petition Agent in connection with the Pre-Petition Credit Agreement and other Pre-Petition Loan Documents. The DIP Liens shall not be subject or subordinate to any Lien which is avoided and which would otherwise be preserved for the benefit of any of the Debtors' estates under Bankruptcy Code section 551, and in no event shall any person or entity who pays (or causes to be paid) any of the obligations under the Pre-Petition Credit Agreement or Pre-Petition Loan Documents be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens, or security interests granted to or in favor of, or conferred upon, the DIP Agent or DIP Lenders by the terms of the DIP Financing Documents until such time as the obligations under the DIP Financing Documents and this Order are indefeasibly paid in full, in cash. The DIP Liens shall not be subject or subordinate to Liens arising after the Petition Date.

9.  <u>Cash Collateral Usage</u>. The Debtors, the DIP Agent, and the DIP Lenders assert that all rents, income, profits, cash in accounts and deposits derived from the Pre-Petition Collateral constitute Cash Collateral (as such term is defined in Section 363(a) of the Bankruptcy Code). Provided that each of the conditions set forth in this Paragraph are satisfied, the Debtors shall be authorized to use the Cash Collateral only in accordance with the terms of the Budget, this Order, and the other DIP Financing Documents. The satisfaction of each of the following conditions shall constitute a condition to the Debtors' authorization to use any Cash Collateral: (i) no Event of Default under shall exist or be continuing; and (ii) the Termination Date shall not have occurred. If, on any date, any of such conditions is not satisfied, then none of the Debtors shall be authorized to use any Cash Collateral unless and until such use is consented to by the DIP Agent in its sole and absolute discretion. Upon order of this Court, if the Termination Date occurs, then the Debtors shall remit to the DIP Agent any Cash Collateral then in the Debtors' possession for

application to the outstanding obligations under the DIP Facility and Pre-Petition Loan Documents.

10.     <u>Adequate Protection of Pre-Petition Obligations</u>.  Until the indefeasible payment in full, in cash of the Pre-Petition Obligations, the Pre-Petition Agent and Pre-Petition Lenders are entitled to adequate protection of their interests in the Pre-Petition Collateral (including Cash Collateral) as a result of (a) the provisions of this Order granting first priority and/or priming liens on such Pre-Petition Collateral to the DIP Agent for the benefit of itself and the DIP Lenders, (b) the Debtors' use of the Pre-Petition Collateral (including Cash Collateral), (c) the imposition of the automatic stay pursuant to Bankruptcy Code section 362, or (d) otherwise, pursuant to Bankruptcy Code sections 361(a), 363(c), and 364(d)(1).  The Pre-Petition Agent, on behalf of and for the benefit of itself and the Pre-Petition Lenders, is hereby granted, solely to the extent of diminution in value of the Pre-Petition Liens in the Pre-Petition Collateral from and after the Petition Date, the following:

A.     a Lien in all DIP Collateral (the "<u>Adequate Protection Lien</u>") junior only to: (i) the DIP Lien; (ii) the Carve-Out; and (iii) (ii) any valid, enforceable, properly perfected, and unavoidable prepetition Liens (including any Liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted under Bankruptcy Code section 546(b)) encumbering assets currently in existence of a Debtor but only to the extent such Liens are senior to the Liens held by Pre-Petition Lenders and/or Pre-Petition Agent in connection with the Pre-Petition Credit Agreement and other Pre-Petition Loan Documents; and

B.     a post-petition superpriority administrative expense claim (the "<u>Prepetition Adequate Protection Superpriority Claim</u>") against each of the Debtors, with recourse to

16

all pre-petition and post-petition property of the Debtors and all proceeds thereof, under Bankruptcy Code sections 503 and 507 against the Debtors' estates on a joint and several basis, in each case to the extent the Adequate Protection Lien does not adequately protect against the diminution in value of the Pre-Petition Liens, which shall have priority in payment as provided under the Bankruptcy Code, subject and junior to the Carve-Out, DIP Facility Advances and DIP Superpriority Claim.

11.     <u>No Waiver of Future Adequate Protection Requests</u>.   Nothing herein shall be deemed to be a waiver by the Pre-Petition Agent, any Pre-Petition Lenders, or Wapiti II (as defined herein) of their right to request additional or further protection of its interests in any property of the Debtors, to move for relief from the automatic stay (if such relief is required), to seek the appointment of a trustee or examiner or the dismissal of any of the Debtors' bankruptcy cases, or to request any other relief.

12.     <u>Modification of Automatic Stay</u>.   The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtors, the DIP Agent and DIP Lenders to implement the DIP Facility and perform pursuant to the DIP Financing Documents, including without limitation the provisions thereof with respect to the collection of Proceeds, and the maintenance and implementation of the Collection Accounts and the Collection Procedures (as such terms are defined below), and (b) the creation and perfection of all Liens granted or permitted by this Order.   The Debtors and the holders of any DIP Lien, Adequate Protection Lien, or Wapiti II Adequate Protection Lien (as defined below) shall not be required to enter into any additional security agreements or take any further action to create, memorialize, and/or perfect any such Liens, or to file UCC financing statements, mortgages, or other instruments with any other filing authority or take any other action to perfect any such Liens, which shall be, and are hereby, deemed

valid, binding, enforceable, and automatically perfected by the docket entry of this Order by the Clerk of the Court. If, however, the holder of any DIP Lien or Adequate Protection Lien in its sole and absolute discretion shall elect for any reason to enter into, file, record, or serve any such financing statements or other documents with respect to any such Lien, then the Debtors shall execute same upon request and the filing, recording, or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of this Order by the Clerk of the Court. The holders (including any agent therefor) of any DIP Lien, Pre-Petition Lien, or Adequate Protection Lien are hereby relieved of any requirement to file proofs of claim in the Debtors' bankruptcy cases with respect to any such Liens and the claims secured thereby, but any such holder (or such agent) may in its sole and absolute discretion file any such proof of claim.

13.     Carve-Out.     The DIP Liens, DIP Facility Superpriority Claims, Adequate Protection Liens and Prepetition Adequate Protection Superpriority Claims shall be subject to right of payment of the following expenses (the following subparagraphs, collectively, the "Carve-Out," and all amounts payable in connection therewith, the "Carve-Out Amounts"):

A.     unpaid post-petition fees and expenses of the Clerk of the Court and statutory fees payable to the U.S. Trustee  pursuant to 28 U.S.C. § 1930; and

B.     unpaid post-petition fees and expenses of professionals of the Debtors and professionals of a Statutory Committee (if any), which are retained by an order of the Court pursuant to Bankruptcy Code sections 327, 328, 363, or 1103(a) (the "Professionals") incurred prior to a Termination Event, but only to the extent such fees and expenses are (i) incurred prior to a Termination Event, (ii) within the amounts set forth in the Budget approved by the DIP Agent for such Professional through the date of the Termination Event, (iii) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363

18

of the Bankruptcy Code, and (iv) not otherwise paid from retainers, or any professional expense escrow account established by the Debtors.

provided, however, that (x) the Carve-Out shall only be available to pay fees and expenses set forth herein to the extent that unencumbered funds are not otherwise available, and (y) in no event shall the Carve-Out for each Professional exceed the amounts set forth for post-petition fees for such Professional set forth in the Budget as of any applicable date determination.  Any amounts paid from the DIP Collateral or the proceeds thereof, or funded by the DIP Agent or the DIP Lenders with respect to the Carve-Out prior to the entry of the Final Order shall be DIP Facility Advances and such obligations shall be secured by the DIP Lien.  Further, the payment of the fees or costs of any Professional and/or Statutory Committee (if any) shall be subject to Court approval, and the DIP Agent and the DIP Lenders reserve the right to object to any Professional's application for payment.  As used in this Order, the term "Termination Event" shall mean the occurrence of the earliest of: (i) an Event of Default under the DIP Financing Documents; (ii) the Debtors' failure to comply with the terms of this Order or the Final Order; or (iii) the Debtors' failure to comply with any of the Milestones set forth in the DIP Financing Term Sheet.

14.    Carve-Out Limitations.  Neither the payment of any Professional Fees, nor the Carve-Out shall include payment for any fees and expenses, if any, of the Professionals incurred directly or indirectly, in respect of, arising from or relating to:

A.    the initiation, joinder, support, or prosecution of any action contesting the indebtedness owed to the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders, or the validity of any Liens or security interests or claims granted, or purported to be granted, to any of such parties;

B.      preventing, hindering, or otherwise delaying (or supporting any other person or entity in preventing, hindering, or otherwise delaying), whether directly or indirectly, the exercise by the DIP Agent or Pre-Petition Agent of any of its rights and remedies under this Order, the Final Order, the DIP Financing Documents, the Pre-Petition Credit Agreement, or the Pre-Petition Loan Documents;

C.      the commencement, support, or prosecution of any action or proceeding of any claims, causes of action, or defenses against the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, or any of them;

D.      any request to borrow money other than pursuant to the terms of this Order or the Final Order and the other DIP Financing Documents;

E.      with respect to the Debtors, any of the Debtors' Professionals, or any of their successors or assigns (including, without limitation, any trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code) performing or commencing any investigation or litigation (whether threatened or pending) by the Debtors with respect to any matter to be released, waived, or specified as not subject to challenge by the Debtors (or any of them) pursuant to this Order or the Final Order (including, without limitation Paragraphs 24, 25, and 26 herein); and

F.      for any other purpose for which proceeds of the DIP Facility may not be used pursuant to the DIP Financing Documents.

20

15.     <u>Collateral Matters</u>.  Subject to the entry of the Final Order, and a showing of cause, effective as of the time of commencement of the Debtors' bankruptcy cases on the Petition Date:

A.     each Debtor waives irrevocably all claims and rights, if any, it or its estate might otherwise assert against the Pre-Petition Collateral or the DIP Collateral pursuant to Bankruptcy Code section 506(c) or 105(a), or any other applicable law;

B.     no entity in the course of the Debtors' bankruptcy cases shall be permitted to recover from the DIP Collateral (whether directly or through the grant of derivative or equitable standing in the name of the any Debtor or such Debtor's estate) any cost or expense of preservation or disposition of the Pre-Petition Collateral or the DIP Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code section 506(c) or 105(a), or any other applicable law;

C.     no entity shall be permitted to recover from the DIP Collateral or the Pre-Petition Collateral, or assert against the DIP Agent, DIP Lenders, Pre-Petition Agent or any Pre-Petition Lenders, any claim with respect to any unpaid administrative expense of the Debtors' bankruptcy cases, whether or not the Debtors' payment of such administrative claim was contemplated by or included in the Budget; and

D.     the Pre-Petition Agent, Pre-Petition Lenders, DIP Agent, and the DIP Lenders shall not be subject to the "equities of the case" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "marshaling" or any similar claim or doctrine, with respect to any DIP Collateral or the Pre-Petition Collateral.

16.     <u>No Additional Financing or Cash Collateral Usage</u>.  So long as the use of Cash Collateral and any DIP Facility obligations approved by a Final Order remain outstanding, unless

consented to in writing by the DIP Agent, no Debtor shall seek entry of any further orders in its Chapter 11 Case which authorize (a) under Bankruptcy Code section 363, the use of Cash Collateral; (b) the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code sections 364(c) or 364(d) that does not repay any amounts due under the DIP Facility in full, in cash, (c) the return of goods pursuant to Bankruptcy Code section 546(h) to any creditor of the Debtors or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to Bankruptcy Code section 553 or otherwise, or (d) any other grant of rights against the Debtors and/or their respective estates that is secured by a Lien in the DIP Collateral or is entitled to superpriority administrative status that does not repay any amounts due under the DIP Facility in full, in cash.

17. _Default Rights_. Subject to entry of a Final Order, an upon the occurrence of: (i) an Event of Default; (ii) the Termination Date; (iii) any Debtor's failure to comply with the terms of this Order or the Final Order (including, without limitation, its failure to comply with the Budget); or (iv) any Debtor's failure to comply with any of the Milestones set forth in the DIP Financing Term Sheet, and the giving of written notice thereof by the DIP Agent to counsel to the Debtors, the Statutory Committee (if any) and the U.S. Trustee (which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose) (the "_Default Notice_"), or upon the Maturity Date, then (1) the DIP Agent shall be fully authorized, in its sole discretion to cease making DIP Facility advances to the Debtors (as authorized by a Final Order), and (2) the DIP Agent shall be fully authorized to terminate the Debtors' use of the DIP Collateral (including, without limitation, Cash Collateral), and/or (3) the DIP Agent shall be fully authorized to immediately terminate the DIP Facility and demand repayment of the DIP Facility obligations

then outstanding (which obligations and advances under the DIP Facility remain subject to entry of a Final Order).

18.     <u>Exercise of Remedies Against DIP Collateral</u>.  Further, upon the occurrence of an Event of Default and transmission of a Default Notice, or upon the Maturity Date, the DIP Agent shall have the right, subject to Bankruptcy Code section 362 and Bankruptcy Rule 4001(a), to take immediate reasonable action to protect the DIP Collateral from harm, theft, and/or dissipation.

19.     <u>DIP Facility Reporting</u>.  The Debtors shall provide the DIP Agent with (i) all financial statements, certificates, and reports required pursuant to the DIP Financing Term Sheet in accordance with the timeframes specified therein and (ii) such additional information as the DIP Agent shall request from the Debtors.  The DIP Agent and its representatives shall have reasonable access to each Debtor's business premises and to the DIP Collateral in order to review and evaluate the physical condition of any of the DIP Collateral and/or to inspect the financial records and other records of the Debtors concerning the operation of the Debtors' businesses.

20.     <u>[Reserved]</u>

21.     <u>[Reserved]</u>

22.     <u>[Reserved]</u>

23.     <u>Credit Bidding</u>.  Subject to entry of the Final Order, the DIP Agent, DIP Lenders, Pre-Petition Agent, and Pre-Petition Lenders are hereby authorized to credit-bid all or any of the applicable obligations under the DIP Facility (subject to a Final Order) and the Pre-Petition Credit Agreement and Pre-Petition Loan Documents at any disposition of any Pre-Petition Collateral and/or DIP Collateral.

24.     <u>Binding Nature of Stipulations and Other Matters</u>.  Subject to entry of the Final Order and the right to bring a Challenge Action as set forth in Paragraph 27 below, upon entry of this Order:

A.     the Stipulations shall be binding upon the Debtors and all other persons, entities, and/or parties in all circumstances;

B.     the validity, extent, priority, perfection, enforceability, and non-avoidability of the Pre-Petition Agent's and Pre-Petition Lenders' respective first priority, validly perfected prepetition claims and Liens against the Debtors and the Pre-Petition Collateral shall not be subject to challenge by the Debtors or any other person, entity, or party; and

C.     neither the Debtors, nor any other person, entity, or party shall seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of the Pre-Petition Agent or the Pre-Petition Lenders prior to the Petition Date.

25.     <u>Debtor Release</u>.  In consideration of and as a condition to the DIP Agent and DIP Lenders making the DIP Facility Advances and providing credit and other financial accommodations to the Debtors pursuant to the terms of this Order and the DIP Financing Term Sheet, each of the Debtors (each a "<u>Releasor</u>" and collectively, the "<u>Releasors</u>") and subject to Paragraph 27 herein, their respective bankruptcy estates absolutely releases, forever discharges and acquits each of the Pre-Petition Agent, the Pre-Petition Lenders, and their respective successors and assigns, affiliates, officers, directors, employees, attorneys, and other representatives (the "<u>Releasees</u>") of and from any and all claims, demands, causes of action, damages, choses in action, and all other claims, counterclaims, defenses, setoff rights, and other liabilities whatsoever (the "<u>Prepetition Released Claims</u>") of every kind, name, nature, and

description, whether known or unknown, both at law and equity (including, without limitation, any "lender liability" claims) that any Releasor may now or hereafter own, hold, have, or claim against each and every of the Releasees arising at any time prior to the entry of this Order (including, without limitation, claims relating to the Debtors, the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents, and other documents executed in connection therewith, and the obligations thereunder); provided, however, that such release shall not be effective as to the Debtors' bankruptcy estates until the expiration of the Challenge Period.  In addition, upon the indefeasible payment, in full, in cash, of all DIP Facility obligations owed to the DIP Agent and DIP Lenders arising under a Final Order and the DIP Financing Term Sheet, the DIP Agent and DIP Lenders shall be released from any and all obligations, actions, duties, responsibilities, and causes of action arising or occurring in connection with or related to the DIP Financing Term Sheet or the other DIP Financing Documents.

26.    Releasor Covenants.  Each Releasor hereby absolutely, unconditionally, and irrevocably covenants and agrees with each Releasee that it will not sue (at law, in equity, or in any other proceeding) any Releasee on the basis of any claims or causes of action released and discharged by such Releasor pursuant to this Order.  If any Releasor violates this covenant, each Debtor agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all reasonable attorneys' fees and costs incurred by any Releasee as a result of such violation.

27.    Challenge Action and Challenge Period.  Notwithstanding any other provisions of this Order, any interested party (other than the Debtors or their Professionals) in these cases (including, without limitation, the Statutory Committee (if any)) shall have until seventy-five (75) days after the Petition Date (the "Challenge Period"), to commence an adversary proceeding

against the Pre-Petition Agent and/or Pre-Petition Lenders for the purpose (collectively, a "Challenge Action") of:

    A.    contesting challenging the findings of fact, Stipulations, waivers or releases contained herein;

    B.    challenging the validity, extent, priority, perfection, enforceability, and non-avoidability of the Pre-Petition Obligations and/or Pre-Petition Liens (as applicable) against the Debtors;

    C.    seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of the Pre-Petition Lenders or the Pre-Petition Agent (as applicable) prior to the Petition Date;

    D.    seeking damages or equitable relief against the Pre-Petition Lenders and/or the Pre-Petition Agent arising from or related to their prepetition business and lending relationships with the Debtors, including without limitation equitable subordination, recharacterization, lender liability, and deepening insolvency claims and causes of action; or

    E.    challenging any other matter to be waived or released pursuant to this Order (including, without limitation, pursuant to Paragraphs 24, 25 and 26).

28.    No Challenge Actions After Expiration of Challenge Period.  Subject to entry of the Final Order, all parties in interest, including without limitation the Statutory Committee (if any), that fail to act in accordance with the time periods set forth in the preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge Action or challenging in any manner the Liens or claims of the Pre-Petition Agent and/or Pre-Petition Lenders and shall be

bound by the waivers, Stipulations, and terms set forth in this Order (including Paragraphs 24, 25 and 26 of this Order).  Any Challenge Action filed shall prohibit application of this Paragraph only to the extent of the specific matters set forth in such Challenge Action on the date of filing.

29.    <u>Retention of Challenge Action Defenses</u>.    The legal and equitable claims, counterclaims, defenses, and/or rights of offset and setoff of the Pre-Petition Agent and Pre-Petition Lenders in response to any such Challenge Action are reserved, and the ability of a party to commence a Challenge Action shall in no event revive, renew, or reinstate any applicable statute of limitations which may have expired prior to the date of commencement of such Challenge Action.  Despite the commencement of a Challenge Action, the prepetition claims and Liens of the Pre-Petition Agent and Pre-Petition Lenders shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under Bankruptcy Code section 502(d) and not subject to subordination under Bankruptcy Code section 510 until such time as a final and non-appealable judgment and order is entered sustaining such Challenge Action in favor of the plaintiffs therein.    Notwithstanding anything to the contrary contained in this Order, the Court expressly reserves the right to order other appropriate relief against Pre-Petition Agent and Pre-Petition Lenders (solely in their capacities as such) in the event there is a timely and successful Challenge Action by any party in interest to the validity, enforceability, extent, perfection or priority of the Pre-Petition Liens.

30.    <u>No Control by DIP Agent and Lenders</u>.    In making decisions to advance any extensions of credit to the Debtors pursuant to the DIP Facility or in taking any other actions reasonably related to this Order, a Final Order, or the DIP Financing Documents (including, without limitation, the exercise of its approval rights with respect to any Budget), the DIP Agent and the DIP Lenders shall have no liability to any third party and shall not be deemed to be in

control of the operations of the Debtors or to be acting as a "control person," "responsible person," or other "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response Compensation and Liability Act, as amended, or any similar Federal or state statute), and the DIP Agent's and the DIP Lenders' relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the DIP Lenders and the Debtors.

31.    Successors and Assigns.  This Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, the Debtors, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  Except as set forth herein with respect to a Challenge Action and except for the benefit of the DIP Agent, the DIP Lenders and the Releasees, no rights are created under this Order for the benefit of any creditor of the Debtors, any other party in interest in the Debtors' bankruptcy cases, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

32.    Continuing Nature of DIP Facility Liens and Claims.  Any order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (a) the DIP Agent's and DIP Lenders' Liens in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Facility obligations are indefeasibly paid and satisfied in full, in cash; and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Facility Superpriority

Claim, the DIP Liens, the Adequate Protection Liens, and the Prepetition Adequate Protection Superpriority Claims.

33.     <u>Order Controls</u>.  To the extent that any of the provisions of this Order shall conflict with any provisions of the DIP Financing Term Sheet, or with any order of this Court authorizing the Debtors to continue the use of prepetition bank accounts, cash management systems, treasury management systems, or business forms, or any similar orders, this Order is deemed to control and supersede the conflicting provisions therein.

34.     <u>Immediate Effect of Order</u>.  The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise.  Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

35.     <u>Continuing Nature of Adequate Protection and Other Benefits Under DIP Order</u>. The DIP Agent, Pre-Petition Agent, DIP Lenders, the Pre-Petition Lenders, and Wapiti II (as defined below) shall be entitled to the benefits and protections of this Order, including (a) the adequate protection afforded to the Pre-Petition Agent, the Pre-Petition Lenders, and Wapiti II (as defined below) set forth in this Order, and (b) the protections afforded pursuant to Bankruptcy Code section 364(e), with respect to all loans, advances, and other financial, accommodations made by them pursuant to this Order.  The DIP Lien, the priority afforded the DIP Facility Advances, the adequate protection afforded to the Pre-Petition Agent and Pre-Petition Lenders, and the adequate protection provided to Wapiti II (as defined below) as set forth in this Order,

shall be binding on the Debtors and any successor trustee or trustees even if this Order is reversed or modified on appeal with respect to all loans, advances, and other financial accommodations made by them pursuant to this Order.  Except as provided herein, no Proceeds, or Cash Collateral may be used by any party in interest seeking to modify any of the rights granted to DIP Agent or DIP Lenders hereunder or in the DIP Financing Documents.

36.    <u>DIP Facility Modifications</u>.  The Debtors and the DIP Agent may implement non-material modifications of the DIP Financing Term Sheet without the need for notice or further approval of this Court, <u>provided</u>, <u>however</u>, that copies of such amendments will be provided to the U.S. Trustee, Wapiti II (as defined below), and the Statutory Committee (if any).  Subject to a Final Order, the Debtors and the DIP Agent may implement material modifications of the DIP Financing Term Sheet on at least seven (7) calendar days prior notice to the Statutory Committee (if any) and the U.S. Trustee.

37.    <u>Further Assurances</u>.  The Debtors are authorized to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, deeds of trust, and financing statements), and to pay all fees and expenses that may be required or necessary for the Debtors' performance under this Order or the DIP Financing Documents, including, without limitation, (a) the execution of the DIP Financing Term Sheet, (b) the payment of the fees and other expenses described herein or in the DIP Financing Term Sheet as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees, and facility fees.

38.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to enforce the provisions of this Order, the DIP Facility (as approved by a Final Order) and the DIP Financing Term Sheet, and this Court shall retain jurisdiction over all matters pertaining to the

implementation, interpretation and enforcement of this Order, the DIP Facility (as approved by a Final Order) and the DIP Financing Term Sheet.

39.     364(e) Protections.   This Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on terms and conditions to which the Debtors and DIP Agent and DIP Lenders have agreed.   Thus, each of the terms and conditions constitutes a part of the authorization under Bankruptcy Code section 364, and is, therefore, subject to the protections contained in Bankruptcy Code section 364(e), regardless of (i) any stay, modification, amendment, vacation, or reversal of this Order or the DIP Financing Term Sheet or any term hereunder or thereunder; (ii) the failure to obtain a final order pursuant to Bankruptcy Rule 4001(c)(2); or (iii) the dismissal or conversion of any of the Chapter 11 Cases.

40.     Protection of Wapiti II Interests - Liens.   Wapiti Oil & Gas II, LLC ("Wapiti II") alleges that it is a secured creditor of one or more of the Debtors holding a validly perfected operator's lien against such Debtor(s) (such liens "Purported Wapiti II Liens").   The Debtors, DIP Agent, DIP Lenders, Pre-Petition Agent, and Pre-Petition Lenders reserve all rights with respect to the alleged claims or liens of Wapiti II (including, without limitation, the Purported Wapiti II Liens) and do not, through entry of this Order, admit that Wapiti II holds any validly perfected Liens against any of the Debtors' estates or property of the Debtors' estates.   Nevertheless, in the event that a Purported Wapiti II Lien is determined to be a valid, binding, enforceable, perfected, non-avoidable Lien in existence on the Petition Date (including any Lien that is perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted under Bankruptcy Code section 546(b)) against estate property, to the extent that the Debtors' use of Cash Collateral or the granting of first priority and/or priming Liens to the DIP Agent for the

benefit of the DIP Lenders pursuant to this Order results in a diminution in the value of such Purported Wapiti II Lien (if any), Wapiti II shall be granted pursuant to Bankruptcy Code §§ 361 and 363, effective as of the Petition Date, valid and automatically perfected replacement Liens, solely to the extent of such diminution in value (such Liens, the "Wapiti II Adequate Protection Liens"), in and upon the same property of the Debtors to which such valid, binding, enforceable, perfected, and non-avoidable Purported Wapiti II Lien would be senior to the Pre-Petition Liens, together with the proceeds, products, and offspring of such assets.  Each such Wapiti II Adequate Protection Lien (if any) shall be afforded the same relative validity and priority as the applicable Purported Wapiti II Lien maintained as of the Petition Date.

41.    Protection of Wapiti II Interests – Priority Claims.  To the extent that the value, if any, of a Wapiti II Adequate Protection Lien proves to be inadequate to protect Wapiti II against any diminution in value (if any) of its Purported Wapiti II Liens as a result of the Debtors' use of Cash Collateral or the granting of first priority and/or priming Liens to the DIP Agent for the benefit of the DIP Lenders pursuant to this Order, Wapiti II shall receive, solely to the extent of diminution in value (if any) of Wapiti II's valid, binding, enforceable, perfected, non-avoidable Purported Wapiti II Lien that is not redressed by a Wapiti II Adequate Protection Lien, an allowed administrative expense claim against the Debtor(s) to which the Purported Wapiti II Lien applied, which claim shall, subject to the Carve-Out, the DIP Facility Advances (as approved by a Final Order), and the DIP Superpriority Claim, have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Chapter 11 Cases and any superseding Chapter 7 cases under the Bankruptcy Code (such claim, the "Wapiti II Superpriority Claim").  The Waipiti II Superpriority Claim shall not be payable from the proceeds of or recoveries upon Avoidance

Actions, and shall be junior in right of payment to the Carve-Out, DIP Facility Advances, and DIP Superpriority Claim.

42.     <u>Sale Proceeds Reservation</u>.   Any terms within the DIP Financing Term Sheet requiring direct payment of proceeds of the 363 Sale (as that term is defined in the DIP Financing Term Sheet) shall be conditioned upon entry of the Final Order (and subject to further Court orders as provided in the DIP Financing Term Sheet).

43.     <u>No Default Due to Wapiti II Adequate Protection</u>.   Notwithstanding anything to the contrary in the DIP Financing Term Sheet, the granting of any Wapiti II Adequate Protection Liens (if any) and the award of Wapiti II Superpriority Claim (if any) shall not constitute an Event of Default under the DIP Financing Term Sheet.

44.     <u>Final Hearing</u>.   A final hearing with respect to the Motion is scheduled for August 31, 2017 at 9:00 a.m. (prevailing Mountain time) (the "<u>Final Hearing</u>") before the Honorable Kimberley H. Tyson, United States Bankruptcy Judge.   The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a Bankruptcy Rule 2002 request for service.   Any party in interest objecting to the relief sought at the Final Hearing shall file written objections, and serve them on (i) the Debtors' proposed counsel, Lindquist & Vennum, LLP, attn:  Theodore J. Hartl, 600 17th Street, Suite 1800 South, Denver, CO 80202; (ii) the DIP Lenders' counsel, Holland & Knight LLP, attn.:  Brent McIlwain, 200 Crescent Court, Suite 1600, Dallas, TX 75201; and (iii) the U.S. Trustee, attn.: Alan K. Motes, Office of

(see next page)

the U.S. Trustee, 1961 Stout Street, Suite 12-200, Denver, CO 80294 on or before August 28, 2017.

Dated:  August 21, 2017.

BY THE COURT:

Hon. Kimberley H. Tyson
United States Bankruptcy Court Judge