## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC. | ) | Case No. 17-17465 KHT |
| EIN: 98-0204105, | ) | Chapter 11 |
| | ) | |
|     Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION COMPANY | ) | Case No. 17-17467 KHT |
| EIN: 84-1461816, | ) | Chapter 11 |
| | ) | |
|     Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY-UTAH, LLC | ) | Case No. 17-17469 KHT |
| EIN: 47-2023934, | ) | Chapter 11 |
| | ) | |
|     Debtor. | ) | |
| | ) | |
| In re: | ) | |
| MYTON OILFIELD RENTALS, LLC | ) | Case No. 17-17471 KHT |
| EIN: 20-1202389, | ) | Chapter 11 |
|     Debtor. | ) | **Jointly Administered Under** |
| | ) | **Case No. 17-17465 KHT** |
| | ) | |

### DEBTORS' MOTION TO
### (A) APPROVE BID PROCEDURES FOR SALE OF SOUTH ALTAMONT ASSETS OF BADLANDS ENERGY-UTAH, LLC, AND SALE OF RELATED FIELD OFFICES AND ASSETS OF MYTON OILFIELD RENTALS,
### (B) SCHEDULE AUCTION AND SALE HEARING, AND
### (C) APPROVE PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS IN CONNECTION THEREWITH

Badlands Energy-Utah, LCC ("Badlands Utah"), and Myton Oilfield Rentals, LLC ("Myton") (together, the "Debtors"), for this Motion state:

## BACKGROUND

1. On August 11, 2017 (the "Petition Date"), Debtors filed their voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Debtors continue in possession of their assets and manage their businesses as debtors-in-possession under Bankruptcy Code §§ 1107 and 1108. No committees have been appointed in the Debtors' jointly administered cases.

2. The Debtors, together with Badlands Energy, Inc., and Badlands Production Company, are a consolidated natural gas and petroleum development and production company. They own and operate leasehold interests in petroleum and natural gas producing properties in the Uintah Basin in northeastern Utah, primarily in Duchesne County and Uintah County.

3. Through Badlands Utah the Debtors own and operate the South Altamont Project (the "Badlands Utah Property"). Myton owns related field office and equipment (the "Myton Property," and collectively with the Badlands Production Property and the Badlands Energy Property, the "Debtor Property").

4. Earlier this year, Debtors retained Parkman Whaling, LLC ("PW"), as investment bankers in connection with restructuring, and a potential sale, merger, or other disposition of all or a portion of the Debtors and the Debtor Property. The Debtors and PW canvassed interested parties, solicited bids, and assisted interested buyers in completing initial due diligence toward a sale or sales.

5. Debtors were unable to obtain a Stalking Horse Purchase Agreement for the Badlands Energy Property or the Myton Property. Debtors have, however, proposed forms of Asset Purchase Agreements for the sales of the Badlands Utah Property and the Myton Property. Those agreements are being filed concurrently with this Motion in the Debtors' jointly administered bankruptcy cases.

6. Debtors now seek to solicit bids for the Debtor Property and conduct an open auction in order to obtain the highest and best price for these assets.

7. This process will allow the Debtors to substantially meet the Sale Milestones agreed to with their post-petition lender, as approved by this Court's Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis, and (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Granting Related Relief (Docket No. 136).

## RELIEF REQUESTED

8. The Debtors seek entry of an order, substantially in the form attached as **Exhibit A** (the "Bid Procedures Order"):

    a. Authorizing and approving the Bid Procedures attached to the Bid Procedures Order as **Exhibit 1**;

    b. Approving the form and manner of notice of an auction (the "Auction") and sale hearing (the "Sale Hearing") with respect to the Sales of the Badlands Utah Property and the Myton Property, free and clear of liens, claims, encumbrances and other interests (the "Sales"), attached as **Exhibit 2** to the Bid Procedures Order (the "Sale Hearing Notice");

    c. Scheduling the Auction and the Sale Hearing; and

    d. Approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sales, and notice thereof attached as Exhibit 3 to the Bid Procedures Order (the "Assumption and Assignment Notice").

9. Debtors respectfully request that the Court approve the following general timeline:

- **Bid Deadline**: 11:59 p.m. (prevailing Mountain Time), on or before October 19, 2017, as the deadline by which bids for Debtor Property or any portion thereof (as well as the deposit and all of the documentation required under the Bid Procedures for Qualified Bidders (as defined in the Bid Procedures)) must be actually received (the "<u>Bid Deadline</u>");

- **Auction**: October 26, 2017 at 10:00 a.m. (prevailing Mountain Time), as the date and time the Auction will be held at the offices of Lindquist & Vennum LLP, located at 600 17th Street, Suite 1800-South, Denver, Colorado 80202;

- **Auction Report**: To be filed with the Court no later than October 27, 2017;

- **Sale Motions and Assumption and Assignment Notices**: To be filed and served no later than October 30, 2017;

- **Sale Objection Deadline**: November 10, 2017, as the deadline to object to one or more of the Sales and/or to any Assumption and Assignment Notice;

- **Sale Hearing**: On or before November 15, 2017, at 10:00 a.m. (prevailing Mountain Time) or otherwise as the Court's calendar permits, as the date and time for the Sale Hearings;

- **Closing Date**: On or before November 20, 2017.

10. Debtors believe that this timeline maximizes the prospect of receiving the highest and best offer for the Debtor Property without unduly prejudicing their estates. To further ensure that the proposed Auction and Sale process maximizes value to the benefit of their estates, Debtors have and will continue to use the time prior to the Bid Deadline to continue to actively market the Debtor Property in an attempt to obtain the highest and best bids, consistent with the Sale Milestones.

## THE BID PROCEDURES ORDER

11. To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtors, in concert with PW and Garrison Loan Agency Services, LLC in its capacity as both (a) agent under the Debtors' pre-petition secured facility (in such capacity,

4

the "First Lien Agent") and (b) Agent under the Debtors' post-petition DIP financing facility (in such capacity, the "DIP Agent"), have developed and proposed the Bid Procedures, attached as **Exhibit 1** to the Bid Procedures Order. Following are the salient points of the Bid Procedures.[1]

    A.    **Consideration and Structure.**

        1.    ***Total Consideration***. Each Bid must identify the form and amount of the total consideration to be provided to the Debtors in cash, identify the Debtor Property to be acquired from Badlands Utah, and/or Myton, and the form of Assumed Obligations, including any Assumed Contracts (the "Bid Value").

        2.    ***Minimum Bid for South Altamont Assets of Badlands Utah***. The Badlands Utah Property will not be subject to any minimum bid before the Bid Deadline. The Debtors, in consultation with the First Lien Agent and DIP Agent, may announce a minimum, opening bid for the Badlands Utah Property at the Auction.

        3.    ***Minimum Bid for Myton Assets***. The Myton Property will not be subject to any minimum bid before the Bid Deadline. The Debtors, in consultation with the First Lien Agent and DIP Agent, may announce a minimum, opening bid for the Myton Property at the Auction.

        4.    ***Deposits***. Each Bid, other than a Bid by any of the Garrison Credit Bid Parties, must be accompanied by a cash deposit in the amount of ten percent (10%) of its aggregate cash consideration, to be held in a segregated deposit account to be identified and established by the Debtors (the "Deposit").

        5.    ***Same or Better Terms***. Except as otherwise provided herein, each Bid must, in the Debtors' business judgment and in consultation with the First Lien Agent and DIP Agent, be on terms the same as or better than the terms than any other Bid received to be considered. Each Bid, other than a Bid by any of the Garrison Credit Bid Parties, must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"). The Bid Documents shall include a schedule of Assumed Contracts, as reflected in the proposed form Asset Purchase Agreement for some or all of the Debtor Property, to the extent applicable to the Bid, and a copy of the Debtors' proposed form of Asset Purchase Agreement clearly marked to

---

[1] This summary is qualified in its entirety by the Bid Procedures attached as **Exhibit 1** to the Bid Procedures Order. All capitalized terms used in this summary but not otherwise defined herein shall have the meanings in the Bid Procedures. To the extent there are any conflicts between this summary and the Bid Procedures, the terms of the Bid Procedures shall govern.

show all changes requested by the Acceptable Bidder (including those related to the Purchase Price, the Assumed Obligations and the Property), as well as all other material documents integral to such Bid.

6. *Sources of Financing*. The Bid must indicate the source of cash (or in the case of the Garrison Credit Bid Parties, credit bid) consideration, including proposed funding commitments and confirm that such consideration is not subject to any contingencies.

7. *Tax Structure*. The Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or if any incremental tax liabilities will be incurred by the Debtors under the Bid.

8. *Assumed Obligations*. The Bid must specify which, if any, of the obligations of the Debtors the Acceptable Bidder proposes to assume.

B. **Other Requirements.**

1. *Binding and Irrevocable*. The Bid must by its terms remain binding and irrevocable until three months after the date of selection of the Successful Bid, subject to extension by the Debtors (in consultation with the First Lien Agent and DIP Agent) for up to one month in the event that any necessary or advisable regulatory approval has not been received as of such date; *provided that* if the Bid is not selected as a Successful Bid or a Backup Bid, the Bid may be revoked after approval of the applicable Successful Bid by the Bankruptcy Court.

2. *Regulatory Approvals*. Each Bid, other than a Bid by any of the Garrison Credit Bid Parties, must describe in detail (a) the efforts that each party must utilize in connection with seeking and obtaining all regulatory approvals required to complete the Sale and (b) any limitations on the Acceptable Bidder's obligation to take all actions necessary or advisable to obtain such regulatory approvals.

3. *Conditions to Closing*. The Bid must identify with particularity each and every condition to Closing.

4. *No Financing, Approval, or Diligence Outs*. The Bid must not be conditioned on obtaining any of the following: (a) financing; (b) board of directors or other similar approval; or (c) the outcome or completion of a due diligence review by the Acceptable Bidder, other than as set forth in the Stalking Horse Purchase Agreement.

5. *Due Diligence Acknowledgement*. The Bid must include a written acknowledgement and representation that the Acceptable Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Sale before making its offer; (b) has relied solely upon its own independent

6

      review, investigation, and/or inspection of any documents and/or the Sale in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Sale or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed form of definitive agreement.

6. *No Collusion*. The Acceptable Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale.

7. *Good Faith Offer*. The Bid must constitute a good faith, bona fide offer to consummate one or more Sales.

8. *Identification Information*. The Acceptable Bidder (other than any of the Garrison Credit Bid Parties) must fully disclose the identity of each entity or person that will be consummating the Sale or Sales or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder (other than any of the Garrison Credit Bid Parties) and each such entity is legally empowered, by power of attorney or otherwise, to complete the Sale on the terms contemplated by the parties.

9. *Consent to Jurisdiction*. The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, and the Sales documents and the Closing, as applicable.

10. *Disclaimer of Bid Protections*. Each Bid must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation ("Bid Protections"). For the avoidance of doubt, no Qualified Bidder (as defined herein) will be permitted to request, or be granted by the Debtors, at any time, whether as part of the Auction or otherwise, any Bid Protections of any kind, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

C. **Auction.**

1. *Badlands Utah and Myton*. The Debtors intend to conduct an Auction for the Badlands Utah Property and/or Myton Property, even if no Qualified Bids are received for such properties by the Bid Deadline, provided, however, that the Debtors, in consultation with the First Lien Agent and

7

      DIP Agent, reserve the right to cancel any Auction for the Badlands Utah Property and/or Myton Property at any time.

  2. ***Credit Bid***. Nothing in the Bid Procedures is intended to, or shall, impair or limit the credit bid rights of any of the Garrison Credit Bid Parties under Section 363(k) of the Bankruptcy Code or otherwise. Each of the Garrison Credit Bid Parties shall have the right to make a credit bid (up to the full amount of obligations owed to such entity), which shall be deemed a Qualified Bid, and may participate in the Auction as a Qualified Bidder. None of the Garrison Credit Bid Parties shall be required to submit any deposit as a condition to participating in any Auction as a Qualified Bidder.

  12. Importantly, the Bid Procedures recognize the Debtors' fiduciary obligations to maximize sale values, do not impair the Debtors' ability to consider all qualified bid proposals, and, as noted, preserve the right to modify the Bid Procedures as necessary or appropriate to maximize the value for each Debtor's estate.

**THE AUCTION AND SALE NOTICE**

  13. On or within three business days after entry of the Bid Procedures Order, the Debtors will cause a Notice of Sale by Auction and Sale Hearings ("<u>Sale Hearing Notice</u>") to be served on the following parties or their respective counsel, if known: (a) the U.S. Trustee; (b) all parties who have expressed a written interest in some or all of the Debtor Property; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Debtor Property; (d) the Internal Revenue Service; (e) all applicable state and local taxing authorities; (f) all the Debtors' other creditors; (g) the United States Bureau of Land Management; (h) the Utah Department of Environmental Quality; (i) any other governmental agency that is known to the Debtors to be an interested party with respect to the Sales and transactions proposed thereunder; (j) all other parties who are served with notice of this Motion; (k) counterparties to the Debtors' executory contracts and unexpired leases (the

"Contract Counterparties"); and (l) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

14. The Debtors respectfully submit that the Sale Hearing Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sales, including: (a) the date, time, and place of the Auction (if one is held); (b) the Bid Procedures; (c) the deadline for filing objections to any Sale, to any Assumption and Assignment Notice, and entry of any Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Debtor Property; (e) instructions for promptly obtaining a copy of the proposed Asset Purchase Agreements; and (f) a description of the Sales as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the respective Sale proceeds.

15. Pursuant to the Bid Procedures Order, notice of the proposed assumption and assignment of Assigned Contracts to the Successful Bidder, the proposed Cure Amounts relating thereto, and the rights, procedures and deadlines for objecting thereto, will be provided by separate notice, attached to the Bid Procedures Order as Exhibit 3 (the "Assumption and Assignment Notice").

16. The Debtors further submit that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Hearing Notice, the Sale Motion(s), and the Assumption and Assignment Notice as provided for herein, constitute good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and Local Rules 2002-1, and 9013-1.

17. Sale Motions and any Assumption and Assignment Notices for the Badlands Energy Property and the Myton Property will be served by the Debtors as soon as practicable

9

after the Auction, but not later than October 30, 2017. Objections would be due by November 10, 2017.

## BASIS FOR RELIEF

**A. The Relief Sought in the Bid Procedures Order Is in the Best Interests of the Debtors' Estates and Should Be Approved.**

18. A debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'" (internal citations omitted)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (quoting *In re Schipper*); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656–7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

19. The paramount goal in any proposed sale of property of the estate is to maximize proceeds. *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

20. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

21. The Debtors believe that the proposed Bid Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Debtor Property. The proposed Bid Procedures will allow the Debtors to conduct the Sales in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best package for the Debtor Property and who can demonstrate the ability to close a transaction. Specifically, the Bid Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

22. At the same time, the Bid Procedures provide the Debtors with a robust opportunity to consider competing bids and select the highest or otherwise best offer for the completion of the Sales. As such, creditors of the Debtors' estates can be assured that the consideration obtained will be fair and reasonable and at or above market.

23. The Debtors submit that the proposed Bid Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

**B.      The Form and Manner of the Sale Hearing Notice Should Be Approved.**

24.     Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein.

25.     The Debtors submit that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Hearing Notice, the Sale Motion(s), and the Assumption and Assignment Notices as provided for herein, constitute good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.

26.     Shortening notice of the final Section 363 sale motions and the Assumption and Assignment Notices, which will be filed promptly upon completion of the Auction, and not later than October 30, 2017, will not prejudice any party in interest under these circumstances. And it will allow the Debtors to remain compliant with the approved Sale Milestones. Accordingly, the Debtors request that this Court approve the form and manner of the Sale Hearing Notice, together with the deadlines for filing the Sale Motion(s) and Assumption and Assignment Notices, and the Objection Deadline for each.

**C.      The Assumption Procedures Are Appropriate and Should Be Approved.**

27.     As set forth above, the Sale contemplates the assumption and assignment of the Assigned Contracts to the Successful Bidder arising from the Auction, if any. In connection with this process, the Debtors believe it is necessary to establish a process by which: (a) the Debtors and Contract Counterparties can reconcile Cure Amounts, if any, in accordance with section 365 of the Bankruptcy Code; and (b) such Counterparties can object to the assumption and

assignment of the Assigned Contracts and/or related Cure Amounts (the "Assumption Procedures").

28. As set forth in the Bid Procedures Order, the Debtors also request that any party that fails to object to the proposed assumption and assignment of any Contract be deemed to consent to the assumption and assignment of the applicable Contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the Cure Amounts identified in the Assumption and Assignment Notice. *See, e.g., In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

29. The Debtors believe that the Assumption Procedures are fair and reasonable, provide sufficient notice to the Contract Counterparties, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof. Accordingly, the Debtor requests the Court approve the Assumption Procedures set forth in the Bid Procedures Order.

WHEREFORE, the Debtors respectfully request that the Court enter the Bid Procedures Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated this 2nd day of October, 2017.

**LINDQUIST & VENNUM LLP**

By:   */s/ Theodore J. Hartl*
      Theodore J. Hartl, #32409
      Harold G. Morris, Jr., #8409
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
Email: thartl@lindquist.com
Email: hmorris@lindquist.com

*Proposed Counsel for Debtors*