## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC. | ) | Case No. 17-17465-KHT |
| EIN: 98-0204105, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION COMPANY | ) | Case No.  17-17467-KHT |
| EIN: 84-1461816, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY-UTAH, LLC | ) | Case No.  17-17469-KHT |
| EIN: 47-2023934, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| MYTON OILFIELD RENTALS, LLC | ) | Case No.  17-17471-KHT |
| EIN: 20-1202389, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Jointly Administered Under |
| | ) | Case No.  **17-17465-KHT** |
| | ) | |

---

## ORDER (A) APPROVING BID PROCEDURES AND BID
## PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY
## ALL OF THE ASSETS OF BADLANDS PRODUCTION COMPANY,
## (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
## (C) SCHEDULING AN AUCTION AND A SALE HEARING,
## (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT
## OF CONTRACTS, AND (E) GRANTING RELATED RELIEF

---

Upon the motion (the "Motion")[1] of Badlands Production Company (the "Debtor") for entry of an order (this "Order"), (a) authorizing and approving the bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures"), (b) approving the Bid Protections in connection with the sale of substantially all assets of the Debtor (the "Property"), (c) approving the form and manner of notice of the Auction and the Sale Hearing with respect to the Property, and (d) scheduling an Auction and a Sale Hearing; it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties in interest; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, **THE COURT FINDS THAT**:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The bases for the relief requested in the Motion are: (i) sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, 11 U.S.C. §§ 101−1532 (the "Bankruptcy Code"); (ii) Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable.

"Bankruptcy Rules"); and (iii) Rules 2002-1, 6004-1, and 9013-1 of the Court's Local

Bankruptcy Rules, Forms and Appendix (the "Local Rules").

D.      Notice of the Motion has been given to: (i) the Office of the United States Trustee

for the District of Colorado (the "U.S. Trustee"); (ii) the administrative agent under the Debtors'

prepetition credit facility; (iii) counsel to the administrative agent under the Debtors' prepetition

credit facility; (iv) the United States Attorney's Office for the District of Utah; (v) the Internal

Revenue Service; (vi) the Environmental Protection Agency; (vii) the office of the Attorney

General for the State of Utah; (viii) counsel to the Stalking Horse Bidder; (ix) all parties who

have expressed a written interest in some or all of the Property; (x) all known holders of liens,

encumbrances, and other claims secured by the Property as reflected on each Debtor's Schedule

D filed as required by Section 521(a)(1)(A) of the Bankruptcy Code; (xi) the United States

Bureau of Land Management; (xii) the Utah Department of Environmental Quality; (xiii) any

party that has requested notice pursuant to Bankruptcy Rule 2002; and (xiv) all creditors on a list

of creditors with the 20 largest unsecured claims.

E.      The Debtor has articulated good and sufficient reasons for this Court to: (i)

approve the Bid Procedures; (ii) schedule the Auction and Sale Hearing and approve the manner

of notice of the Auction and Sale Hearing; (iii) approve the procedures for the assumption and

assignment of the Assumed Contracts, including notice of proposed Cure Amounts; and (iv)

grant the Breakup Fee and Expense Reimbursement as provided in the Stalking Horse Purchase

Agreement and in this Order.

F.      Subject to entry of a further order as provided herein, the Breakup Fee and the

Expense Reimbursement: (i) shall, if triggered, be deemed actual and necessary costs and

expenses of preserving the Debtor's estate, within the meaning of sections 503(b) and 507(a)(2)

of the Bankruptcy Code; (ii) are commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Stalking Horse Bidder; (iii) are reasonable and appropriate, including in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to better and higher offers; and (iv) are necessary to induce the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Purchase Agreement.

G.      The Breakup Fee, the Expense Reimbursement, and the Minimum Overbid (together, the "Bid Protections") were a material inducement to, and express condition of, the Stalking Horse Bidder's willingness to submit a bid through execution of the Stalking Horse Purchase Agreement that will serve as a minimum or floor bid on which the Debtor, its creditors, suppliers, vendors, regulators, and other bidders may rely. The Stalking Horse Bidder has provided a material benefit to the Debtor and its creditors by increasing the likelihood that, given the circumstances, the best possible price for the Property will be received. Accordingly, the Bid Procedures and the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtor's estate, subject to final approval and payment of any Breakup Fee or Expense Reimbursement, as applicable.

H.      The Bid Procedures and the Stalking Horse Purchase Agreement were negotiated by the parties at arms' length and in good faith by the Debtor and the Stalking Horse Bidder.

I.      ***Assumption and Assignment Procedures***. The Motion, this Order, and the assumption and assignment procedures set forth herein are reasonably calculated to provide counterparties to any Assumed Contracts to be assumed by the Debtor and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their

4

Assumed Contracts, the procedures in connection therewith, and any Cure Amounts relating thereto.

J.     *Sale Notice*. The sale notice, substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bid Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Property to be sold; (v) instructions for promptly obtaining copies of the Stalking Horse Purchase Agreement; (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable Purchase Agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; (vii) notice of the proposed assumption and assignment of Assumed Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the Sale shall be required.

**IT IS HEREBY ORDERED THAT**:

1.     The Motion is granted as provided herein.

2.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.     Important Dates and Deadlines.**

3.     *Sale Hearing*. The Sale Hearing shall commence on **October 25, 2017, at 10:00 a.m.** (prevailing Mountain Time) before the Honorable Kimberley H. Tyson, at the Court, 721 19th Street, Courtroom A, Denver, Colorado 80202. Upon entry of this Order, the Debtor is

5

authorized to perform any obligations set forth in the Stalking Horse Purchase Agreement or other applicable Purchase Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order. The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

      4.    ***Sale Objection Deadline***. Objections, if any, to the Sale must be made on or before 12:00 noon (prevailing Mountain Time), **October 17, 2017** (the "Sale Objection Deadline"). Objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be actually received no later than the Sale Objection Deadline by the following parties (the "Notice Parties"):

| Counsel to the Debtor | The Debtor |
|---|---|
| Lindquist & Vennum LLP<br>600 17th Street, Suite 1800 South<br>Denver, Colorado 80202<br>Attn: Theodore J. Hartl, Harold G. Morris, Jr. | Badlands Production Company<br>7979 E. Tufts Avenue, Suite 1150<br>Denver, Colorado 80237<br>Attn: Richard S. Langdon |
| **The United States Trustee** | **Counsel to Agent Under the Debtors' Prepetition Credit Facility** |
| Office of the United States Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Suite 12-200<br>Denver, Colorado 80202 | Garrison Loan Agency Services, LLC<br>c/o Holland & Knight<br>200 Crescent Court, Suite 1600<br>Dallas, Texas 75201<br>Attn: Brent McIlwain |
| **Counsel to the Stalking Horse Bidder** | **Debtor's Investment Banker** |
| Diamond McCarthy LLP<br>909 Fannin Street, 37th Floor<br>Houston, Texas 77010<br>Attn: Kyung S. Lee and Charles M. Rubio | Parkman Whaling, LLC<br>600 Travis, Suite 600<br>Houston, Texas 77002<br>Attn: Bruce Campbell |

5.      A party's failure to timely file or make an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable Purchase Agreement, including the assumption and assignment of the Assumed Contracts to the Successful Bidder pursuant to the applicable Purchase Agreement, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation, such assumption and assignment.

6.      ***Bid Deadline***. The deadline by which all Bids for the Property must be ***actually received*** by the parties specified in the Bid Procedures is 11:59 p.m. (prevailing Mountain Time), on **October 9, 2017** (the "Bid Deadline").

7.      ***Auction***. **October 12, 2017 at 10:00 a.m.** (prevailing Mountain Time), is the date and time the Auction, if one is needed. Such Auction will be held at the offices of counsel to the Debtors: Lindquist & Vennum LLP, 600 17th Street, Suite 1800 South, Denver, Colorado 80202, or such later time on such day or other place as the Debtor, in consultation with Garrison Loan Agency Services LLC, in its capacity as agent for the Debtor's postpetition financing facility (in such capacity, the "DIP Agent") shall notify all Qualified Bidders who have submitted Qualified Bids. As set forth more fully in the Bid Procedures, only Qualified Bidders shall be permitted to participate at the Auction.

## II.      Auction, Bid Procedures, and Related Relief.

8.      The Bid Procedures, substantially in the form attached hereto as **Exhibit 1**, are hereby approved in their entirety, and the Bid Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Property. Any party desiring to bid on the Property shall comply with the Bid Procedures and this Order. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

9.     The Stalking Horse Bidder is deemed a Qualified Bidder, and the Stalking Horse Bid as set forth in the Stalking Horse Purchase Agreement is deemed a Qualified Bid.

10.     Garrison Loan Agency Services LLC, in its capacity as agent under the Debtor's prepetition secured credit facility (in such capacity, the "First Lien Agent"), the DIP Agent, each of the lenders under the prepetition secured credit facility administered by the First Lien Agent (collectively, the "First Lien Lenders"), and each of the lenders under the postpetition credit facility administered by the DIP Agent (collectively, the "DIP Lenders") shall each be deemed a Qualified Bidder.  Nothing in the Bid Procedures or this Order shall impair or limit the credit bidding rights held by the DIP Agent, DIP Lenders, First Lien Agent, or First Lien Lenders.

11.     If the Debtor does not receive any Qualified Bids (other than the Stalking Horse Bid): (a) the Debtor will not hold the Auction; (b) the Stalking Horse Bidder will be deemed the Successful Bidder for the Property; and (c) the Debtor shall be authorized to seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing.

12.     If the Debtor receives one or more Qualified Bids from Qualified Bidders (other than the Stalking Horse Bidder), then the Debtor shall conduct the Auction in accordance with the Bid Procedures.

13.     Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bid Procedures.  The Auction shall be conducted openly.

14.     Subject to the terms of the Bid Procedures, in the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to credit bid the value of the Breakup Fee and the Expense Reimbursement.

15.     The Debtor may, in consultation with the DIP Agent: (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid, any Bid (other than the Stalking Horse Bid) that, in the discretion of the Debtor (in consultation with the DIP Agent), is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtor's estate and its creditors; and (c) at or before the conclusion of the Auction, may impose such other terms and conditions upon Qualified Bidders (except the Stalking Horse Bidder) as the Debtor, in consultation with the DIP Agent, determines to be in the best interests of its bankruptcy estate.

16.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived its right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

**III.    Breakup Fee and Expense Reimbursement.**

17.     The Breakup Fee and the Expense Reimbursement are approved on the terms set forth in the Stalking Horse Purchase Agreement, subject to an application by the Stalking Horse Purchaser and Court order approving the same. Upon entry of a Court order, the Debtor is authorized to pay any and all such amounts owing to the Stalking Horse Bidder on account of the Breakup Fee and the Expense Reimbursement in accordance with the terms of the Stalking Horse Purchase Agreement.

18.     Upon approval, the Breakup Fee and the Expense Reimbursement (if payable under the Stalking Horse Purchase Agreement in accordance with its terms and the terms of this Order, and until such Breakup Fee and Expense Reimbursement are paid) shall be an allowed

administrative expense claim in the Debtor's chapter 11 case pursuant to sections 503(b)(1) and 507(a)(2).

## IV.     Assumption and Assignment Procedures.

19.     The following procedures regarding the assumption and assignment of the Assumed Contracts in connection with the Sale are hereby approved to the extent set forth herein, and shall govern the assumption and assignment of all executory contracts and unexpired leases (as such terms are used in Section 365 of the Bankruptcy Code) proposed to be assumed by the Debtor pursuant to Section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder or the Backup Bidder following a Sale or Sales pursuant to Section 365(f) of the Bankruptcy Code (the "Assumed Contracts").

20.     The Debtor shall, on or before October 5, 2017, serve on all Assumed Contract counterparties an Assumption and Assignment Notice that identifies, to the extent applicable, (i) the executory contract and unexpired leases that may be assumed by the Debtor and assigned to the Successful Bidder or the Backup Bidder; (ii) the name and address of the Assumed Contract counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Debtor and Buyer to withdraw such request for assumption and assignment of the Assumed Contracts prior to the Closing; (iv) the amount, if any, determined by the Debtor to be necessary to be paid to cure any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Cost"); and (v) the deadlines by which any such Assumed Contract counterparty must file an objection to the proposed assumption and assignment of any Assumed Contract; provided, however, that the presence of any contract or lease on an Assumption and Assignment Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

10

21.     As soon as practicable after the conclusion of the Auction, the Debtor shall file with the Court and serve by facsimile, electronic transmission, overnight, or first class mail on the Assumed Contract counterparty (and its attorney, if known) to each Assumed Contract an Auction Notice: (a) identifying the Successful Bidder; (b) stating which executory contracts and unexpired leases will be assumed and assigned thereto; and (c) containing a statement as to the Successful Bidder's ability to perform the Debtor's obligations under the applicable Assumed Contracts.

22.     All objections to the assumption and assignment of any Assumed Contract, including, without limitation, any objection to the Debtor's proposed Cure Cost or the provision of adequate assurance of future performance under any Assumed Contract pursuant to Section 365 of the Bankruptcy Code ("Adequate Assurance") must: (a) be filed not later than the Sale Objection Deadline (**October 17, 2017**); (b) identify the contracts or leases to which the objector is party; (c) describe with particularity any cure the claimant contends is required under Section 365 of the Bankruptcy Code (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim under the contract or lease; (d) attach all documents supporting or evidencing the Cure Claim; and (e) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is required to provide Adequate Assurance (the "Assumed Contract Objection Procedures").

23.     If no objection is timely and properly filed and served in accordance with the Assumed Contract Objection Procedures, (a) the Cure Cost set forth in the Assumption and Assignment Notice shall be controlling notwithstanding anything to the contrary in any Assumed and Assigned Contract or other document and the Assumed Contract counterparty thereto shall be forever barred from asserting any other claim against the Debtor or Successful Bidder (or, if

applicable, Backup Bidder) with respect to such Assumed Contract arising prior to the assignment thereof and (b) the Successful Bidder's (or, if applicable, Backup Bidder's) promise to perform under the Assumed Contract shall be deemed Adequate Assurance thereunder. To the extent the Debtor disputes any Cure Claim, such dispute shall be presented to the Court at the Sale Hearing.

24.     If at any time after prior to the Closing of the Sale, the Debtor identifies Previously Omitted Contracts (as such term is used in the Stalking Horse Purchase Agreement) to be assumed and assigned to it as Assumed Contracts (whether before or after closing of the Sale), the Debtor shall serve a supplemental Assumption and Assignment Notice by first-class mail, facsimile, electronic transmission, or overnight mail on the Contract Counterparty (and its attorney, if known) to each supplemental Assumed Contract at the last known address available to the Debtor by no later than 14 days before the proposed effective date of the assignment. A Contract Counterparty receiving any such supplemental Assumption and Assignment Notice shall have until the later of (a) the Sale Objection Deadline or (b) 10 days from service of the supplemental Assumption and Assignment Notice to file an objection to the assumption and assignment of its contract or Lease in accordance with the Assumed Contract Objection Procedures set forth herein.

**V.      Consent Rights/Preferential Rights Notice.**

25.     If any person or entity asserts that any property or right (including an Assumed Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the applicable purchase and sale agreement on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights (each, a "Consent Right"), then such person or entity must file a

notice with the Clerk of the Bankruptcy Court with all supporting documentation (a "Consent Rights Notice") on or before the Sale Objection Deadline. Each Consent Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

26.     Any person or entity failing to timely file a Consent Rights Notice will be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtor's Property, including, from asserting any alleged Consent Rights with respect to the Debtor's transfer, sale, assumption, and/or assignment of the Debtor's Property, and (b) deemed to consent to and approve the transfer, sale, assumption, and/or assignment of the Debtor's Property free and clear of all liens, encumbrances, claims and other interests.

27.     If any person or entity timely files a Consent Rights Notice, the Debtor and any other party in interest will have the opportunity to object to any alleged Consent Rights asserted by filing an objection to such Consent Rights Notice at any time prior to the Sale Hearing.

**VI.    Sale Hearing Notice.**

28.     The Sale Notice is hereby approved. On or within three (3) business days following entry of this Order, the Debtor shall cause the Sale Notice to be served on: (a) the U.S. Trustee; (b) counsel to the Stalking Horse Bidder; (c) the Assigned Contract Counterparties; (d) all parties who have expressed a written interest in some or all of the Property; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Property; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) all the Debtors' other creditors; (i) the United States Bureau of Land Management; (j) the Utah Department of Environmental Quality; (k) any other governmental agency that is known to the Debtor to be an interested party with respect to

the Sale and transactions proposed thereunder; (l) all other parties who were served with notice

of the Motion; and (m) all parties that have requested or that are required to receive notice

pursuant to Bankruptcy Rule 2002.

**VII.**   **Miscellaneous.**

29.    The Debtor is authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order in accordance with the Motion.

30.    The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

31.    This Court exclusive retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

Dated: October 3, 2017.          BY THE COURT:

Honorable Kimberley H. Tyson
United States Bankruptcy Judge

## Exhibit 1

**Bid Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC. | ) | Case No. 17-17465-KHT |
| EIN: 98-0204105, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION COMPANY | ) | Case No.  17-17467-KHT |
| EIN: 84-1461816, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY-UTAH, LLC | ) | Case No.  17-17469-KHT |
| EIN: 47-2023934, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| MYTON OILFIELD RENTALS, LLC | ) | Case No.  17-17471-KHT |
| EIN: 20-1202389, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **Jointly Administered Under** |
| | ) | **Case No.  17-17465-KHT** |
| | ) | |

## BID PROCEDURES FOR THE SALE OF THE RIVERBEND ASSETS OF BADLANDS PRODUCTION COMPANY

On August 7, 2017, the Debtor Badlands Production Company (the, "Debtor"), entered into an asset purchase agreement (the "Stalking  Horse Purchase Agreement") with Wapiti Newco, L.L.C. (the "Stalking Horse Bidder") pursuant to which the Stalking Horse Bidder proposes to purchase, acquire, and take assignment and delivery of, free and clear of all liens, claims, encumbrances, and other interests (except as otherwise provided in the Stalking Horse Purchase Agreement), the Riverbend, Utah, assets owned by the Debtor (the "Property") as more particularly described in the Stalking Horse Purchase Agreement.

On October _____, 2017, the United States Bankruptcy Court for the District of Colorado (the "Court") entered an order approving these bid procedures (these "Bid Procedures," and such

order, the "Bid Procedures Order"),[1] in the Debtors' jointly-administered chapter 11 cases (the "Chapter 11 Cases"). The Bankruptcy Court will have jurisdiction with respect to any dispute that may arise with respect to these Bid Procedures.

These Bid Procedures set forth the process by which the Debtor is authorized to conduct an auction for the sale (the "Sale") of the Property.

The Debtors selected the Stalking Horse Bid (as defined below) after a closed bidding process (the "Stalking Horse Bidding Process"). Any other party interested in making a higher and better bid shall submit a bid meeting certain qualifications and requirements set out herein by the Bid Deadline (defined below in Key Dates). If a party submits such a Bid, then the Debtors will so notify the Stalking Horse Bidder and the holders of Qualified Bids and conduct an auction (the "Auction") on October 12, 2017, which Auction shall take place at the offices of Lindquist & Vennum. After announcing the Stalking Horse Bid, the Debtors will conduct a round of open bidding (the "Open Bidding Process") culminating in an auction intended to obtain a higher or otherwise best bid for the Sale (the "Auction").

## I.    Submissions to the Debtors.

All submissions to the Debtor required to be made under these Bid Procedures must be directed to each the following persons unless otherwise provided (collectively, the "Debtor's Representatives"):

A.    **Debtors**. Badlands Energy, Inc., 7979 E. Tufts Avenue, Suite 1150, Denver, Colorado 80237, attn: Rich Langdon.

B.    **Counsel**. Counsel to the Debtors, Lindquist & Vennum LLP, 600 17th Street, Suite 1800 South, Denver, Colorado 80202, Attn:  Theodore J. Hartl, Harold G. Morris, Jr.; and

C.    **Sale Advisor.** Parkman Whaling LLC, 600 Travis, Suite 600, Houston, Texas 77002, Attn: Bruce E. Campbell.

The Debtor's Representatives shall reasonably promptly (and no later than one business day after receipt thereof) send all such submissions to  the Stalking Horse Bidder and to Garrison Loan Agency Services LLC, in its capacity as both (i) agent under the Debtor's prepetition secured facility  (in such capacity, the "First Lien Agent"); and (ii) agent under the Debtor's postpetition DIP financing facility (in such capacity, the "DIP Agent").

## II.    Key Dates

| Bid Deadline | October 9, 2017 |
| --- | --- |
| Auction | October 12, 2017 |

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bid Procedures Motion.

| Sale Objection Deadline | October 17, 2017 |
| Sale Hearing | October 25, 2017, at 10:00am |
| Closing Date | On or before October 31, 2017 |

## III.    Participation Requirements.

### A.    Potential Bidders.

To participate in the bidding process or otherwise be considered for any purpose under these Bid Procedures, a person or entity (other than the Garrison Credit Bid Parties, as defined below) interested in consummating the Sale (a "Potential Bidder") must deliver or have previously delivered, if determined to be necessary by the Debtor, in consultation with the DIP Agent, by no later than five (5) business days prior to the Bid Deadline established in the Bid Procedures Order:

    1.    an executed confidentiality agreement on terms acceptable to the Debtor (a "Confidentiality Agreement")[2]; and

    2.    preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Property, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtor and its Representatives in consultation with the DIP Agent.

### B.    Notice of Acceptable Bidder.

The Debtor's Representatives will notify each Potential Bidder whether such Potential Bidder has submitted adequate documentation so that such Potential Bidder may submit a Bid (each, an "Acceptable Bidder"). The Stalking Horse Bidder shall be deemed an Acceptable Bidder and a Qualified Bidder at all times.  Each of the DIP Agent, each of the lenders under the postpetition credit facility administered by the DIP Agent (such lenders, collectively, the "DIP Lenders"), the First Lien Agent, and each of the lenders under the prepetition credit facility administered by the First Lien Agent (such lenders, collectively, the "First Lien Lenders") shall be deemed an Acceptable Bidder and a Qualified Bidder at all times.  The DIP Agent, DIP Lenders, First Lien Agent, and First Lien Lenders shall collectively be referred to herein as the "Garrison Credit Bid Parties")

---

[2] For the avoidance of doubt, parties who have already executed a confidentiality agreement with the Debtor shall not be required to execute a new confidentiality agreement provided that the existing confidentiality agreement is in form and substance acceptable to the Debtor.

3

### IV.     Obtaining Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information and access to the Debtor's electronic data room and to additional non-public information regarding the Debtor. ***No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement; provided, that none of the Garrison Credit Bid Parties shall be required to sign any Confidentiality Agreement in order to conduct any due diligence.*** The Debtor will provide to each Acceptable Bidder reasonable due diligence information, as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, and the Debtor shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtor's electronic data room. The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtor shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtor shall not furnish any confidential information relating to the Property, liabilities of the Debtor, or the Sale to any person except to an Acceptable Bidder or to such Acceptable Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtor and its advisors shall coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; provided that the Debtor may decline to provide such information to Acceptable Bidders (other than any of the Garrison Credit Bid Parties) who, at such time and in the Debtor's reasonable business judgment in consultation with the DIP Agent, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate the Sale.

**All due diligence requests must be directed to the Debtor's Representatives.** Notwithstanding anything to the contrary in these Bid Procedures, all substantive direct communications with Acceptable Bidders shall be through the Debtor's Representatives.

### V.     Due Diligence from Acceptable Bidders and Confidentiality.

If an Acceptable Bidder makes a Bid that would make relevant the Debtor's or its creditors' need for information from the Bidder concerning the Bidder, the Acceptable Bidder shall comply with all reasonable requests for information from the Debtor and its Representatives regarding the Acceptable Bidder (the "Bidder Due  Diligence Information," and together with any Bid information shared during the bidding process, the "Bidder Confidential Information"); provided, however, that the Garrison Credit Bid Parties shall not be required to provide any Bidder Due Diligence Information or Bidder Confidential Information.  The Acceptable Bidder may request that the Debtor enter into a Confidentiality Agreement, if the Debtor has not done so, with respect to the Bidder Confidential Information satisfactory to the Debtor and the Acceptable Bidder. Failure by an Acceptable Bidder to comply with reasonable requests for information may be a basis for the Debtor and its Representatives to determine that such bidder no longer qualifies as an Acceptable Bidder.

The Debtor and its Representatives shall be obligated to maintain in confidence any Bidder Confidential Information in accordance with any applicable Confidentiality Agreement, except as

4

otherwise set forth in these Bid Procedures. Each recipient of Bidder Confidential Information agrees to use, and to instruct their advisors and representatives to use, such Bidder Confidential Information only in connection with the evaluation of Bids during the Bidding Process or otherwise in connection with the Chapter 11 Cases or in accordance with the terms of any applicable Confidentiality Agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtor and the Debtor's Representatives may disclose Bidder Confidential Information, as applicable: (a) with the prior written consent of such Bidder and the Debtor; (b) in accordance with the Open Bidding Process as set forth in sections VI and VII of these Bid Procedures; (c) to the First Lien Agent and DIP Agent; and (d) as otherwise required or allowed by any applicable Confidentiality Agreement with respect to a particular Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

## VI.   Bid Requirements.

Any proposal, solicitation, or offer (each, a "Bid") shall be in cash, must be submitted by an Acceptable Bidder, and must be submitted on or before the Bid Deadline, in writing and determined by the Debtor, in their reasonable business judgment and in consultation with the DIP Agent, to have satisfied the following requirements (collectively, the "Bid Requirements").

### A.   Consideration and Structure.

1.   **Total Consideration**. The Bid must identify the form and amount of the total consideration to be provided to the Debtors in cash and in the form of Assumed Obligations (the "Bid Value").

2.   **Minimum Bid**. The aggregate cash consideration proposed by each Bid must equal or exceed the sum of (i) the Purchase Price set forth in the Stalking Horse Bid; (ii) the Break-Up Fee and the Expense Reimbursement; plus (iii) $100,000 (the "Overbid Increment") (collectively, the "Minimum Bid").

3.   **Deposit**. Each Bid, other than a Bid by any of the Garrison Credit Bid Parties, must be accompanied by a cash deposit in the amount of ten percent (10%) of its aggregate cash consideration, to be held in a segregated deposit account to be identified and established by the Debtor (the "Deposit").

4.   **Same or Better Terms**. Except as otherwise provided herein, each Bid must, in the Debtor's business judgment and in consultation with the DIP Agent, be on terms the same as or better than the terms of the Stalking Horse Purchase Agreement. Each Bid, other than a Bid by any of the Garrison Credit Bid Parties, must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"). The Bid Documents shall include a schedule of Assumed Contracts (pursuant to the Stalking Horse Purchase Agreement) to the extent applicable to the Bid, and a copy of the Stalking Horse

Purchase Agreement clearly marked to show all changes requested by the Acceptable Bidder (including those related to the Purchase Price, the Assumed Obligations and the Property), as well as all other material documents integral to such Bid.

5.   ***Sources of Financing***. The Bid must indicate the source of cash consideration, including proposed funding commitments and confirm that such consideration is not subject to any contingencies.

6.   ***Assumed Obligations***. The Bid must specify which, if any, of the obligations of the Debtor the Bidder proposes to assume.

**B.   Other Requirements.**

1.   ***Binding and Irrevocable***. The Bid must by its terms remain binding and irrevocable until thirty days after the date of selection of the Successful Bid, subject to extension by the parties or the Bankruptcy Court in the event that any necessary or advisable regulatory approval has not been received as of such date; *provided that* if the Bid is not selected as the Successful Bid or Backup Bid, the Bid may be revoked after approval of the Successful Bid by the Bankruptcy Court.

2.   ***Regulatory Approvals***. Each Bid, other than a Bid by any of the Garrison Credit Bid Parties, must describe in detail (a) the efforts that each party must utilize in connection with seeking and obtaining all regulatory approvals required to complete the Sale and (b) any limitations on the Acceptable Bidder's obligation to take all actions necessary or advisable to obtain such regulatory approvals.

3.   ***Conditions to Closing***. The Bid must identify with particularity each and every condition to Closing.

4.   ***No Financing, Approval, or Diligence Outs***. The Bid must not be conditioned on obtaining any of the following: (a) financing; (b) board of directors or other similar approval; or (c) the outcome or completion of a due diligence review by the Acceptable Bidder, other than as set forth in the Stalking Horse Purchase Agreement.

5.   ***Due Diligence Acknowledgement***. The Bid must include a written acknowledgement and representation that the Acceptable Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Sale before making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Sale in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Sale or the completeness of any information provided in connection therewith or

6

the Auction, except as expressly stated in the Acceptable Bidder's proposed form of definitive agreement.

6. ***No Collusion***. The Acceptable Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale.

7. ***Good Faith Offer***. The Bid must constitute a good faith, bona fide offer to consummate the Sale.

8. ***Identification Information***. The Acceptable Bidder (other than any of the Garrison Credit Bid Parties) must fully disclose the identity of each entity or person that will be consummating the Sale or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder (other than any of the Garrison Credit Bid Parties) and each such entity is legally empowered, by power of attorney or otherwise, to complete the Sale on the terms contemplated by the parties.

9. ***Consent to Jurisdiction***. The Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtor's qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, and the Sale documents and the Closing, as applicable.

10. ***Disclaimer of Bid Protections***. Each Bid (other than the Stalking Horse Bid) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation ("Bid Protections"). For the avoidance of doubt, no Qualified Bidder (as defined herein) (other than the Stalking Horse Bidder) will be permitted to request, or be granted by the Debtor, at any time, whether as part of the Auction or otherwise, any Bid Protections of any kind, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

**C.    Credit Bid**.

Nothing in these Bid Procedures is intended to, or shall, impair or limit the credit bid rights of any of the Garrison Credit Bid Parties under Section 363(k) of the Bankruptcy Code or otherwise.  Each of the Garrison Credit Bid Parties shall have the right to make a credit bid (up to the full amount of obligations owed to such entity) by the Bid Deadline, which shall be deemed a Qualified Bid, and may participate in the Auction as a Qualified Bidder.  If any of the Garrison Credit Bid Parties elect to submit a credit bid by the Bid Deadline, then the DIP Agent will no longer be entitled to any of the consultation rights set forth in these Bidding Procedures.    None

of the Garrison Credit Bid Parties shall be required to submit any deposit as a condition to participating in the Auction as a Qualified Bidder; provided that, if any of the Garrison Credit Bid Parties (a) makes a credit bid, (b) is selected as the Successful Bidder or Backup Bidder and (c) closes the Sale of the Assets as the buyer, then such Garrison Credit Bid Party shall make a cash payment to the Debtor at Closing in an amount sufficient for the Debtor to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder.  All credit bids are subject to satisfying higher priority lien claims in full.

**VII.    Open Bid Requirements.**

The Debtor will only consider Bids during the Open Bidding Process from Acceptable Bidders that satisfy the Bid Requirements. Acceptable Bidders will be permitted to submit multiple Bids during the Open Bidding Process. In addition, Acceptable Bidders during the Open Bidding Process must satisfy the following requirements (the "Open Bid Requirements").

     A.    ***Minimum Value***. The Bid must provide for Bid Value equal to at least the Minimum Bid(the "Initial Minimum Overbid").

     B.    ***Documentation***. The Bid, other than a Bid by any of the Garrison Credit Bid Parties, must include a marked version of the Stalking Horse Purchase Agreement.

     C.    ***No Other Bid Protections***. A Bid may not propose any Bid Protections.

Bids submitted during the Open Bidding Process and fulfilling all of the Bid Requirements and Open Bid Requirements may, at the Debtor's discretion in consultation with the DIP Agent, be deemed to be "Qualified Bids," and those parties submitting Qualified Bids may, at the Debtor's discretion in consultation with the DIP Agent, be deemed to be "Qualified Bidders." To be eligible to be selected as a Qualified Bidder, a Bidder must be an Acceptable Bidder and must submit a Bid that is **actually received** no later than **11:59 p.m. (prevailing Mountain Time) on October 9, 2017** (the "Bid Deadline") by each of the Debtor's Representatives. Acceptable Bidders that do not submit a Bid by the Bid Deadline will not be eligible to be selected as Qualified Bidders without further order of the Court.

By no later than two (2) business days after the Bid Deadline, the Debtor, in consultation with the DIP Agent, shall determine which Acceptable Bidders are Qualified Bidders, and will notify the Acceptable Bidders whether Bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtor. The Stalking Horse Bid shall constitute a Qualified Bid.

**VIII.    Auction.**

If the Debtor receives a Qualified Bid, other than the Stalking Horse Bid, the Debtor will conduct the Auction to determine the Successful Bidder with respect to the Property. If the Debtor does not receive a Qualified Bid (other than the Stalking Horse Bid), the Debtor will not conduct the Auction and shall designate the Stalking Horse Bidder's Qualified Bid as the Successful Bid.

No later than four (4) calendar days after the Bid Deadline at 12:00 p.m. (prevailing Mountain Time), the Debtor will notify all Qualified Bidders of the highest or otherwise best

Qualified Bid, as determined in the Debtor's reasonable business judgment in consultation with the DIP Agent (the "<u>Baseline Bid</u>"), and provide copies of the Bid Documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtor, in consultation with the DIP Agent, reasonably deems relevant to the value of the Qualified Bid to the Debtor's estate, including, among other things: (a) the number, type, and nature of any changes to the Stalking Horse Purchase Agreement requested by the Qualified Bidder, including the type and amount of Property sought and Assumed Obligations in the Bid; (b) the total cash or credit bid consideration; (c) the likelihood of the Bidder's ability to close a transaction, the conditions thereto, and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "<u>Bid Assessment Criteria</u>").

The Auction shall take place at 10:00 a.m. (prevailing Mountain Time) on October 12, 2017, at the offices of Lindquist & Vennum LLP, 600 17th Street, Suite 1800 South, Denver, Colorado 80202, or such later date and time as selected by the Debtor. The Auction shall be conducted in a timely fashion according to the following procedures.

**A.   The Debtor Shall Conduct the Auction.**

The Debtor and its Representatives shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. All incremental Bids made thereafter must be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction.

**B.   Terms of Overbids.**

"<u>Overbid</u>" means any cash bid made at the Auction by a Qualified Bidder subsequent to the Debtor's announcement of the Baseline Bid. Each Overbid must comply with the following conditions.

1.   ***Minimum Overbid Increment***. Any Overbid following the Initial Minimum Overbid or following any subsequent Prevailing Highest Bid (as defined below) shall be in increments in cash of at least the amount of $100,000.00 (the "<u>Overbid Increment</u>").

2.   ***Conclusion of Each Overbid Round***. Upon the solicitation of each round of Overbids, the Debtor, in consultation with the DIP Agent, may announce a deadline (as the Debtor may, in its business judgment, extend from time

to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtor.

3. ***Overbid Alterations***. Each Overbid must contain the Overbid Increment and may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtor's estate than any prior Qualified Bid or Overbid, as determined in the Debtor's reasonable business judgment, in consultation with the DIP Agent, but shall otherwise comply with the terms of these Bid Procedures.

4. ***Announcing Highest Bid***. Subsequent to each Overbid Round Deadline, the Debtor shall announce whether the Debtor (in consultation with the DIP Agent) has identified, an Overbid as being higher or otherwise better than the Initial Minimum Overbid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Debtor (in consultation with the DIP Agent) as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtor shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtor (in consultation with the DIP Agent) as the Prevailing Highest Bid as well as the value attributable by the Debtor to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

5. ***Stalking Horse Credit Bid***.  In making an Overbid during any round at the Auction, the Stalking Horse shall be given a credit of $300,000 (consisting of: (a) $200,000.00 of credit representing the Breakup Fee; and (b) $100,000 of credit representing the Expense Reimbursement) (the "Stalking Horse Credit Bid").  In no event shall the Stalking Horse be required to fund the Stalking Horse Credit Bid with cash.

6. ***Credit Bids by Garrison Credit Bid Parties***.  The Garrison Credit Bid Parties shall each have the right, but not the obligation, to match bids made by any other Qualified Bidder and, in such event, the matching bid of the bidding Garrison Credit Bid Party shall be deemed the Prevailing Highest Bid.

**C.     Consideration of Overbids.**

The Debtor reserves the right, in its reasonable business judgment in consultation with the DIP Agent, to adjourn the Auction one or more times to, among other things (i) facilitate discussions between the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment (and in consultation with the DIP Agent), may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

**D.    Closing the Auction.**

1.    The Auction shall continue until there is only one Qualified Bid that the Debtor determines, in its reasonable business judgment in consultation with the DIP Agent to be the highest or otherwise best Qualified Bid for the Property. Such Qualified Bid shall be declared the "<u>Successful Bid</u>," and such Qualified Bidder, the "<u>Successful Bidder</u>" and at which point the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtor of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

2.    For the avoidance of doubt, nothing in these Bid Procedures shall prevent the Debtor from exercising its fiduciary duties under applicable law.

3.    The Debtor shall not consider any Bids or Overbids submitted after the conclusion of the Auction without further order of the Court, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid absent further Court order.

4.    As soon as reasonably practicable after closing the Auction, the Debtor shall cause the Bid Documents for the Successful Bid and Backup Bid (defined below) to be filed with the Court.

**E.    No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the Sale or bidding (including that it has no agreement with any other Bidder or Qualified Bidder to control the price), and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**IX.    Backup Bidder.**

A.    Notwithstanding anything in these Bid Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Property, as determined by the Debtor in the exercise of its reasonable business judgment in consultation with the DIP Agent (the "<u>Backup Bid</u>"), shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtor.

B.    The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtor, at the conclusion of the Auction at the same time the Debtor announces the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final

11

Overbid) open and irrevocable until the closing of the transaction with the Successful Bidder. The Backup Bidder's Deposit shall be held by the Debtor until the closing of the transaction with the Successful Bidder.

C.     If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtor, after consultation with the DIP Agent, may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtor will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtor, and the Debtor specifically reserves the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## X.     Reservation of Rights.

The Debtor reserves its rights to modify these Bid Procedures in its reasonable business judgment, in consultation with the DIP Agent, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Property, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing (as defined below) in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

Notwithstanding the foregoing and subject in all respects to the Stalking Horse Purchase Agreement, the Debtor may not impair or modify the Stalking Horse Bidder's rights and obligations under the Stalking Horse Purchase Agreement as part of any Bid at the Auction or otherwise.

## XI.     Consent to Jurisdiction.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bid Procedures, and/or the Bid Documents, as applicable.

## XII.     Sale Objection Deadline.

**Any and all objections to the Sale shall be filed with the Court not later than 12:00 noon prevailing Mountain Time, October 17, 2017 (the "Sale Objection Deadline").**

Any such objection must be served on the Debtor, the  Successful Bidder, the DIP Agent, and the First Lien Agent so as to be actually received by the Sale Objection Deadline.

## XIII.   Assumption and Assignment Procedures

The following procedures regarding the assumption and assignment of the Assumed Contracts in connection with the Sale are hereby approved to the extent set forth herein, and shall govern the assumption and assignment of all executory contracts and unexpired leases (as such terms are used in Section 365 of the Bankruptcy Code) proposed to be assumed by the Debtor pursuant to Section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder or the Backup Bidder following a Sale or Sales pursuant to Section 365(f) of the Bankruptcy Code (the "Assumed Contracts").

The Debtor shall, on or before October 5, 2017, serve on all Assumed Contract counterparties an Assumption and Assignment Notice that identifies, to the extent applicable, (i) the executory contract and unexpired leases that may be assumed by the Debtor and assigned to the Successful Bidder or the Backup Bidder; (ii) the name and address of the Assumed Contract counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Debtor and Buyer to withdraw such request for assumption and assignment of the Assumed Contracts prior to the Closing; (iv) the amount, if any, determined by the Debtor to be necessary to be paid to cure any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Cost"); and (v) the deadlines by which any such Assumed Contract counterparty must file an objection to the proposed assumption and assignment of any Assumed Contract; provided, however, that the presence of any contract or lease on an Assumption and Assignment Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

As soon as practicable after the conclusion of the Auction, the Debtor shall file with the Court and serve by facsimile, electronic transmission, overnight, or first class mail on the Assumed Contract counterparty (and its attorney, if known) to each Assumed Contract an Auction Notice: (a) identifying the Successful Bidder; (b) stating which executory contracts and unexpired leases will be assumed and assigned thereto; and (c) containing a statement as to the Successful Bidder's ability to perform the Debtor's obligations under the applicable Assumed Contracts.

All objections to the assumption and assignment of any Assumed Contract, including, without limitation, any objection to the Debtor's proposed Cure Cost or the provision of adequate assurance of future performance under any Assumed Contract pursuant to Section 365 of the Bankruptcy Code ("Adequate Assurance") must: (a) be filed not later than the Sale Objection Deadline (October 17, 2017); (b) identify the contracts or leases to which the objector is party; (c) describe with particularity any cure the claimant contends is required under Section 365 of the Bankruptcy Code (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim under the contract or lease; (d) attach all documents supporting or evidencing the Cure Claim; and (e) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is required to provide Adequate Assurance (the "Assumed Contract Objection Procedures").

If no objection is timely and properly filed and served in accordance with the Assumed Contract Objection Procedures, (a) the Cure Cost set forth in the Assumption and Assignment Notice shall be controlling notwithstanding anything to the contrary in any Assumed and Assigned Contract or other document and the Assumed Contract counterparty thereto shall be forever barred from asserting any other claim against the Debtor or Successful Bidder (or, if applicable, Backup Bidder) with respect to such Assumed Contract arising prior to the assignment thereof and (b) the

13

Successful Bidder's (or, if applicable, Backup Bidder's) promise to perform under the Assumed Contract shall be deemed Adequate Assurance thereunder.  To the extent the Debtor disputes any Cure Claim, such dispute shall be presented to the Court at the Sale Hearing.

If at any time after prior to the Closing of the Sales, the Debtor identifies Previously Omitted Contracts (as such term is used in the Stalking Horse Purchase Agreement) to be assumed and assigned to it as Assumed Contracts (whether before or after closing of the Sale), the Debtor shall serve a supplemental Assumption and Assignment Notice by first-class mail, facsimile, electronic transmission, or overnight mail on the Contract Counterparty (and its attorney, if known) to each supplemental Assumed Contract at the last known address available to the Debtor by no later than 14 days before the proposed effective date of the assignment.  A Contract Counterparty receiving any such supplemental Assumption and Assignment Notice shall have until the later of (a) the Sale Objection Deadline or (b) 10 days from service of the supplemental Assumption and Assignment Notice to file an objection to the assumption and assignment of its contract or Lease in accordance with the Assumed Contract Objection Procedures set forth herein.

## XIV.      Consent Rights/Preferential Rights Notice

If any person or entity asserts that any property or right (including an Assumed Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the applicable purchase and sale agreement on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights (each, a "Consent Right"), then such person or entity must file a notice with the Clerk of the Bankruptcy Court with all supporting documentation (a "Consent Rights Notice") on or before the Sale Objection Deadline. Each Consent Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

Any person or entity failing to timely file a Consent Rights Notice will be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtor's Property, including, from asserting any alleged Consent Rights with respect to the Debtor's transfer, sale, assumption, and/or assignment of the Debtor's Property, and (b) deemed to consent to and approve the transfer, sale, assumption, and/or assignment of the Debtor's Property free and clear of all liens, encumbrances, claims and other interests.

If any person or entity timely files a Consent Rights Notice, the Debtor and any other party in interest will have the opportunity to object to any alleged Consent Rights asserted by filing an objection to such Consent Rights Notice at any time prior to the Sale Hearing.

## XV.     Sale Hearing.

A hearing to consider approval of the Sale of all or substantially all of the Debtor's Property to the Successful Bidder (or to approve the Stalking Horse Purchase Agreement if no Auction is held) (the "Sale Hearing") is currently scheduled to take place on **October 25, 2017, at 10:00 a.m.**

14

(prevailing Mountain Time), before the Honorable Kimberley H. Tyson, at the Court, 721 19th Street, Courtroom A, Denver, Colorado 80202.

**The Sale Hearing may be continued to a later date by the Debtor by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder).**

At the Sale Hearing, the Debtor shall present the Successful Bid to the Court for approval.

## XVI. Stalking Horse Purchase Agreement and Stalking Horse Rights.

Notwithstanding anything in these Bid Procedures to the contrary, the Stalking Horse Purchase Agreement and related transaction documents shall remain in full force and effect until such agreements have terminated in accordance with their respective terms and regardless of whether the Stalking Horse Bidder is designated the Successful Bidder or the Backup Bidder.

The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auctions, the Sale and related matters, including the right to object to the sale of the Property or any portion thereof (including the conduct of the Auctions and interpretation of these Bid Procedures).

## XVII. Return of Deposit.

The Deposit of the Successful Bidder shall be applied to the Purchase Price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtor in its sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or within five (5) business days after the Auction.

If a Successful Bidder or Backup Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder or Backup Bidder (as applicable), the Debtor will not have any obligation to return the Deposit deposited by such Successful Bidder and/or Backup Bidder, which may be retained by the Debtor as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtor, and the Debtor shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## XVIII. Payment of Sale Proceeds; Court Order.

In accordance with the final order approving the Debtors' use of cash collateral and postpetition financing, Dkt. #136, the proceeds from the Sale shall be used to (i) if the Stalking Horse Bid is not the Successful Bid, pay the Break-Up Fee and Expense Reimbursement, and then, subject to entry of a further Court order (ii) indefeasibly repay, in cash, in the manner set forth in the order approving such postpetition financing, the Debtor's postpetition financing obligations to the DIP Agent and the Debtor's prepetition obligations to the First Lien Agent.

### XIV.   Fiduciary Out.

Nothing in these Bid Procedures shall require the board of directors, board of managers, or such similar governing body of the Debtor to take any action, or to refrain from taking any action, with respect to these Bid Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations.

\*   \*   \*   \*   \*

Dated: October _____, 2017.

**LINDQUIST & VENNUM** LLP

By: _____/s/Theodore J. Hartl_____
Theodore J. Hartl, #32409
Harold G. Morris, Jr., #8409
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
Email: thartl@lindquist.com
Email: hmorris@lindquist.com

*Counsel for Badlands Production Company*

**<u>Exhibit 2</u>**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC. | ) | Case No. 17-17465-KHT |
| EIN: 98-0204105, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION COMPANY | ) | Case No.  17-17467-KHT |
| EIN: 84-1461816, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY-UTAH, LLC | ) | Case No.  17-17469-KHT |
| EIN: 47-2023934, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| MYTON OILFIELD RENTALS, LLC | ) | Case No.  17-17471-KHT |
| EIN: 20-1202389, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Jointly Administered Under |
| | ) | Case No.  **17-17465-KHT** |
| | ) | |

---

## NOTICE OF SALE BY AUCTION AND SALE HEARING

---

**PLEASE TAKE NOTICE** that on August 14, 2017, the above-captioned debtor and debtor in possession Badlands Production Company (the "Debtor") filed the *Debtor's Motion for Entry of An Order (A) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of Its Assets, (B) Approving The Form And Manner of Notice Thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Assumed Contracts, and (E) Granting Related Relief* [Docket No. 21] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the District of Colorado (the "Court") seeking, among other things, entry of an order (the "Bid Procedures Order") authorizing and approving bid protections and various procedures to govern the sale of substantially all of the Debtor's assets (the "Property") to Wapiti Newco, L.L.C. (the "Stalking Horse Bidder"), free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the sale proceeds, except as set forth in the Stalking Horse Purchase Agreement and subject to higher or otherwise better offers (the "Sale"); and (b) procedures for the assumption and

assignment of executory contracts and unexpired leases (collectively, the "Assumed Contracts"). Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Bid Procedures Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtor is soliciting offers for the purchase of the Property of the Debtor consistent with the bid procedures (the "Bid Procedures") approved by the Court by entry of an order on October ____, 2017 [Docket No.__] (the "Bid Procedures Order"). **All interested bidders should carefully read the Bid Procedures and Bid Procedures Order.** To the extent that there are any inconsistencies between this Notice and the Bid Procedures or Bid Procedures Order, the Bid Procedures or Bid Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtor receives qualified competing bids within the requirements and time frame specified by the Bid Procedures, the Debtor will conduct an auction (the "Auction") of the Property on **October 12, 2017 at 10:00 a.m. (prevailing Mountain Time)** at the offices of Lindquist & Vennum LLP, 600 17th Street, Suite 1800 South, Denver, Colorado 80202 (or at any other location as the Debtor may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that the Debtor will seek approval of the Sale at a hearing scheduled to commence on or before **October 25, 2017, at 10:00 a.m. (prevailing Mountain Time)** (the "Sale Hearing") before the Honorable Kimberley H. Tyson, United States Bankruptcy Judge for the Bankruptcy Court for the District of Colorado, at 721 19th Street, Courtroom A, Denver, Colorado 80202.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bid Procedures Order with respect to any objections to proposed Cure Amounts or the assumption and assignment of Assumed Contracts, objections to the relief requested in the related *Motion for Entry of an Order (A) Approving the Purchase and Sale Agreement Between Badlands Production Company and the Successful Bidder, (B) Authorizing the Sale of Substantially All of its Property Pursuant Thereto, Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granted Related Relief must*: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be *actually received* by **12:00 noon  (prevailing Mountain Time) on October 17, 2017** (the "Sale Objection Deadline") by the following parties:

| Counsel to the Debtor | The Debtor |
| --- | --- |
| Lindquist & Vennum LLP<br>600 17th Street, Suite 1800 South<br>Denver, Colorado 80202<br>Attn:  Theodore J. Hartl, Harold G. Morris, Jr. | Badlands Production Company<br>7979 E. Tufts Avenue, Suite 1150<br>Denver, Colorado  80237<br>Attn:  Richard S. Langdon |

2

| The United States Trustee | Agent Under the Debtors' Prepetition Credit Facility |
|---|---|
| Office of the United States Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Suite 12-200<br>Denver, Colorado 80202 | Garrison Loan Agency Services, LLC<br>c/o Holland & Knight<br>200 Crescent Court, Suite 1600<br>Dallas, Texas 75201<br>Attn:  Brent McIlwain |
| **Counsel to the Stalking Horse Bidder** | **Debtor's Investment Banker** |
| Diamond McCarthy LLP<br>909 Fannin Street, 37th Floor<br>Houston, Texas 77010<br>Attn:  Kyung S. Lee and Charles M. Rubio | Parkman Whaling, LLC<br>600 Travis, Suite 600<br>Houston, Texas  77002<br>Attn:  Bruce Campbell |

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BID PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT.**

### LIMITATION OF TRANSFEREE LIABILITY

The Stalking Horse Purchase Agreement and proposed Sale Order provide that the Stalking Horse Bidder and/or Successful Bidder, if applicable, will have no responsibility for, and the Property will be sold free and clear of, any transferee liability, including the following: (a) any liability or other obligation of the Debtor's estate or related to the Property other than as expressly set forth in the applicable Purchase Agreement; or (b) any claims against the Debtor, its estate, or any of its predecessors or affiliates. Except as expressly provided in the Sale Order or the applicable Purchase Agreement, the Stalking Horse Bidder or Successful Bidder shall have no liability whatsoever with respect to the Debtor's businesses or operations or any of the Debtor's obligations or liabilities of any kind or character, whether known or unknown as of the Closing Date (as defined in the applicable Purchase Agreement), now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated and arising prior to the closing of the Sale.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, Bid Procedures, and Bid Procedures Order, as well as all related exhibits, including the Stalking Horse Purchase Agreement and the proposed Sale Order, are available: (a) upon request to Lindquist & Vennum

3

LLP, 600 17th Street, Suite 1800 South, Denver, Colorado 80202, Attn:  Theodore J. Hartl, Esq.;
(b) for a fee via PACER by visiting http://www.cob.uscourts.gov.

Dated:  October _____, 2017.

**LINDQUIST & VENNUM LLP**

By:   ___/s/Theodore J. Hartl_____
Theodore J. Hartl, #32409
Harold G. Morris, Jr., #8409
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
Email:  thartl@lindquist.com
Email:  hmorris@lindquist.com

*Counsel for Badlands Energy, Inc., Badlands Production Company,
Badlands Energy-Utah, LLC, and Myton Oilfield Services, LLC*

## **Exhibit 3**

**Assumption and Assignment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC. | ) | Case No. 17-17465-KHT |
| EIN: 98-0204105, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION COMPANY | ) | Case No.  17-17467-KHT |
| EIN: 84-1461816, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY-UTAH, LLC | ) | Case No.  17-17469-KHT |
| EIN: 47-2023934, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| MYTON OILFIELD RENTALS, LLC | ) | Case No.  17-17471-KHT |
| EIN: 20-1202389, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Jointly Administered Under |
| | ) | Case No.  **17-17465-KHT** |
| | ) | |

---

**NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

**PLEASE TAKE NOTICE** that on August 14, 2017, the above-captioned debtor and debtor in possession Badlands Production Company (the "Debtor") filed the *Debtor's Motion for Entry of An Order (A) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of Its Assets, (B) Approving The Form And Manner of Notice Thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Assumed Contracts, and (E) Granting Related Relief* [Docket No. 21] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the District of Colorado (the "Court") seeking, among other things, entry of an order (the "Bid Procedures Order") authorizing and approving bid protections and various procedures to govern the sale of substantially all of the Debtor's assets (the "Property") to Wapiti Newco, L.L.C. (the "Stalking Horse Bidder"), free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the sale proceeds, except as set forth in the Stalking Horse Purchase Agreement and subject to

higher or otherwise better offers (the "<u>Sale</u>"); and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "<u>Assumed Contracts</u>"). Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Bid Procedures Motion.

**PLEASE TAKE FURTHER NOTICE** that on October __, 2017, the Court entered an order [Docket No.____] (the "<u>Bid Procedures Order</u>") granting certain of the relief sought in the Bid Procedures Motion, including, among other things, approving: (a) the bid procedures (the "<u>Bid Procedures</u>") for the Sale of the Property; and (b) procedures for the assumption and assignment of the Assumed Contracts (the "<u>Assumption Procedures</u>").[1]

**PLEASE TAKE FURTHER NOTICE** that the Debtor will seek approval of the Sale at a hearing scheduled to commence on or before **October 25, 2017, at 10:00 a.m. (prevailing Mountain Time)** (the "<u>Sale Hearing</u>") before the Honorable Kimberley H. Tyson, United States Bankruptcy Judge for the Bankruptcy Court for the District of Colorado, at 721 19th Street, Courtroom A, Denver, Colorado 80202.

**PLEASE TAKE FURTHER NOTICE** that upon the closing of the Sale, the Debtor intends to assume and assign to the Stalking Horse Bidder, or any other Successful Bidder arising from the Auction (as defined in the Bid Procedures Order), the Assumed Contracts and any modifications thereto (collectively, the "<u>Assumed Contracts</u>") set forth on **Exhibit A** attached hereto, subject to (a) the Stalking Horse Bidder's right to designate additional Assumed Contracts as Assumed Contracts or remove certain Assumed Contracts from the list of Assumed Contracts pursuant to the Stalking Horse Purchase Agreement or (b) any similar right of any other Successful Bidder arising from the Auction. In addition, the cure amounts, if any, necessary for the assumption and assignment of the Assumed Contracts (the "<u>Cure Amounts</u>") are set forth on **Exhibit A** attached hereto.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has evaluated the financial wherewithal of the Stalking Horse Bidder (e.g., financial credibility, willingness, and ability of the interested party to perform under the Assumed Contracts) and believes that the Stalking Horse Bidder's financial health, agreement to pay Cure Amounts related to the Assumed Contracts, and commitment to pay obligations as they come due satisfies the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, after the Auction Deadline has occurred, the Debtors will separately identify the Assumed Contracts designated for assumption and assignment by the Successful Bidder (if other than the Stalking Horse Bidder) and furnish adequate assurance information demonstrating the ability of that Successful Bidder to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including, without limitation, that Successful Bidder's financial wherewithal and willingness to perform under the Assumed Contracts.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Motion.

**PARTIES LISTED ON <u>EXHIBIT A</u> ATTACHED HERETO ARE RECEIVING THIS NOTICE BECAUSE THE STALKING HORSE BIDDER HAS IDENTIFIED THEM AS A COUNTERPARTY TO AN ASSIGNED CONTRACT**. Under the terms of the Assumption Procedures, the Stalking Horse Bidder or Successful Bidder may modify the list of Assumed Contracts in accordance with the Stalking Horse Purchase Agreement or the Successful Bidder's Purchase Agreement, as applicable. Any counterparty added to the list of Assumed Contracts by such a modification will receive notice thereof and will have an opportunity to object to the proposed Cure Amount or assumption and assignment of the Assigned Contract, if applicable.

## Obtaining Additional Information

Additional copies of the Bid Procedures Order, the Bid Procedures, and any other related documents are available: (a) upon request to Lindquist & Vennum LLP, 600 17th Street, Suite 1800 South, Denver, Colorado 80202, Attn:  Theodore J. Hartl, Esq.; (b) for a fee via PACER by visiting http://www.cob.uscourts.gov.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption Procedures, objections to the proposed assumption and assignment of an Assigned Contract, including any objection relating to the Cure Amount and/or adequate assurance of future performance (collectively, a "<u>Contract Objection</u>"), must: (a) be in writing; (b) state with specificity the nature of such objection and alleged Cure Amount, including applicable and appropriate documentation in support of such alleged Cure Amount; (c) comply with the Bankruptcy Rules and the Local Rules; (d) for Contract Objections to any Cure Amount set forth on <u>Exhibit A</u> attached hereto or to the assumption and assignment of an Assigned Contract to the Stalking Horse Bidder, be filed with the Court and served so as to be ***actually received*** by **5:00 p.m. (prevailing Mountain Time) on October 17, 2017**; and (e) for Contract Objections to the adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder, be filed with the Court and served so as to be ***actually received*** at or prior to the Sale Hearing, which is scheduled on or before **October 25, 2017, at 10:00 a.m. (prevailing Mountain Time)**.

Any timely filed Contract Objections made prior to the Sale Hearing will be considered at the Sale Hearing, or another date agreed to by the parties, and must be served on the following parties:

| Counsel to the Debtor | The Debtor |
|---|---|
| Lindquist & Vennum LLP<br>600 17th Street, Suite 1800 South<br>Denver, Colorado 80202<br>Attn:  Theodore J. Hartl, Harold G. Morris, Jr. | Badlands Production Company<br>7979 E. Tufts Avenue, Suite 1150<br>Denver, Colorado  80237<br>Attn:  Richard S. Langdon |

| The United States Trustee | Agent Under the Debtors' Prepetition Credit Facility |
|---|---|
| Office of the United States Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Suite 12-200<br>Denver, Colorado 80202 | Garrison Loan Agency Services, LLC<br>c/o Holland & Knight<br>200 Crescent Court, Suite 1600<br>Dallas, Texas 75201<br>Attn: Brent McIlwain |
| **Counsel to the Stalking Horse Bidder** | **Debtor's Investment Banker** |
| Diamond McCarthy LLP<br>909 Fannin Street, 37th Floor<br>Houston, Texas 77010<br>Attn: Kyung S. Lee and Charles M. Rubio | Parkman Whaling, LLC<br>600 Travis, Suite 600<br>Houston, Texas 77002<br>Attn: Bruce Campbell |

If any timely filed Contract Objection cannot be resolved by the Stalking Horse Bidder or Successful Bidder arising from the Auction, if any, and the objecting party, the Court shall resolve such Contract Objection prior to assumption and assignment of such Assigned Contract, and upon entry of an order by the Court resolving such Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the date such objecting party receives the Assumption Notice. To the extent that any Contract Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Contract Objection, to be determined in the reasonable discretion of the Stalking Horse Bidder or other Successful Bidder arising from the Auction, if any, and until such time as the Contract Objection can be resolved, the Contract shall be conditionally assumed and assigned pending a resolution of the Contract Objection after notice and a hearing.

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**ANY COUNTERPARTY TO AN ASSIGNED CONTRACT WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF AN ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO IN ACCORDANCE WITH THE BID PROCEDURES ORDER AND THE ASSUMPTION PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO, INCLUDING ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE ASSIGNED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.**

*[Remainder of page intentionally left blank]*

Dated:  October ___, 2017.

**LINDQUIST & VENNUM** LLP

By: ____/s/Theodore J. Hartl_____
Theodore J. Hartl, #32409
Harold G. Morris, Jr., #8409
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
Email:  thartl@lindquist.com
Email:  hmorris@lindquist.com

*Counsel for Badlands Energy, Inc., Badlands Production Company, Badlands Energy-Utah, LLC, and Myton Oilfield Services, LLC*

## **Exhibit A**

**Assumed Contracts**

**<u>Assumed Contracts</u>**[1]

| Counterparty | Address | Description of Assumed Contracts or Leases | Cure Amount |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

---

[1] The presence of a contract or lease on this **<u>Exhibit A</u>** does not constitute an admission by the Debtor that such contract is an executory contract or such lease is an unexpired lease pursuant to section 365 of the Bankruptcy Code or any other applicable law, and the Debtor reserves all rights to withdraw any proposed assumption and assignment or to reject any contract or lease at any time before such contract or lease is assumed and assigned pursuant to an order of the Court.

**<u>Exhibit 4</u>**

**Auction Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC. | ) | Case No. 17-17465-KHT |
| EIN: 98-0204105, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION COMPANY | ) | Case No.  17-17467-KHT |
| EIN: 84-1461816, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY-UTAH, LLC | ) | Case No.  17-17469-KHT |
| EIN: 47-2023934, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| MYTON OILFIELD RENTALS, LLC | ) | Case No.  17-17471-KHT |
| EIN: 20-1202389, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Jointly Administered Under |
| | ) | Case No.  **17-17465-KHT** |
| | ) | |

---

**NOTICE OF AUCTION, SUCCESSFUL BIDDER, AND UNEXPIRED LEASES**

---

**PLEASE TAKE NOTICE** that on August 14, 2017, the above-captioned debtor and debtor in possession Badlands Production Company (the "Debtor") filed the *Debtor's Motion for Entry of An Order (A) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of Its Assets, (B) Approving The Form And Manner of Notice Thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Assumed Contracts, and (E) Granting Related Relief* [Docket No. 21] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the District of Colorado (the "Court") seeking, among other things, entry of an order (the "Bid Procedures Order") authorizing and approving bid protections and various procedures to govern the sale of substantially all of the Debtor's assets (the "Property") to Wapiti Newco, L.L.C. (the "Stalking Horse Bidder"), free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the sale proceeds, except as set forth in the Stalking Horse Purchase Agreement and subject to higher or otherwise better offers (the "Sale"); and (b) procedures for the assumption and

assignment of executory contracts and unexpired leases (collectively, the "Assumed Contracts"). Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Bid Procedures Motion.

**PLEASE TAKE FURTHER NOTICE** that on October __, 2017, the Court entered an order [Docket No. _] (the "Bid Procedures Order") granting certain of the relief sought in the Sale Motion, including, among other things, approving: (a) the bid procedures (the "Bid Procedures") for the Sale of the Property; and (b) procedures for the assumption and assignment of the Assumed Contracts (the "Assumption Procedures").[1]

**PLEASE TAKE FURTHER NOTICE** that, as provided in the Bid Procedures Order, the Debtor conducted an Auction of the Property on October 12, 2017. At the conclusion of the Auction the Debtor announced _____ as the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that, accordingly, pursuant to the Assumption Procedures and by this written notice, the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that the Assumed Contracts and any modifications thereto set forth on **Exhibit A**  attached hereto (collectively, the "Assumed Contracts") shall be assumed and assigned to the Successful Bidder, subject to the Successful Bidder's payment of the Cure Amounts set forth on Exhibit A, or such other Cure Amounts that are agreed to by the parties.

**PLEASE TAKE FURTHER NOTICE** that, as set forth more fully in the Successful Bidder's Purchase Agreement, the Successful Bidder has the right under certain circumstances to designate additional Assumed Contracts as Assumed Contracts or remove certain Assumed Contracts from the list of Assumed Contracts prior to Closing (as defined in the Purchase Agreement).

**PLEASE TAKE FURTHER NOTICE** that the Debtor has evaluated the financial wherewithal of the Successful Bidder (financial credibility, willingness, and ability to perform under the Assumed Contracts) and believes that the Successful Bidder's financial health, agreement to pay Cure Amounts, and commitment to pay obligations as they come due satisfies the requirement of adequate assurance of future performance under Section 365(f)(2)(B) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bid Procedures Order and the Bid Procedures and any other related documents are available: (a) upon request to Lindquist & Vennum LLP, 600 17th Street, Suite 1800 South, Denver, Colorado 80202, Attn:  Theodore J. Hartl, Esq.; (b) for a fee via PACER by visiting http://www.cob.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise provided by the Bid Procedures Order, the time for filing objections to (a) the Cure Amounts related to the Assumed

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

Contracts, or (b) the Debtor's ability to assume and assign any Assigned Contract, has passed and no further notice or action is necessary with respect to such matters.

**PLEASE TAKE FURTHER NOTICE** that if you retain the right under the Bid Procedures Order to object to the Cure Amount for your Assumed Contract, the Debtor's ability to assume and assign your Assumed Contract, or the adequate assurance of future performance by the Successful Bidder, your objection must be filed with the Court and served so as to be actually received at or prior to the Sale Hearing, which is scheduled on or before **October 25, 2017, at 10:00 a.m. (prevailing Mountain Time)**. Service is required to be made on the following parties:

| Counsel to the Debtor | The Debtor |
|---|---|
| Lindquist & Vennum LLP<br>600 17th Street, Suite 1800 South<br>Denver, Colorado 80202<br>Attn:  Theodore J. Hartl, Harold G. Morris, Jr. | Badlands Production Company<br>7979 E. Tufts Avenue, Suite 1150<br>Denver, Colorado  80237<br>Attn:  Richard S. Langdon |
| **The United States Trustee** | **Counsel to Agent Under the Debtors' Prepetition Credit Facility** |
| Office of the United States Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Suite 12-200<br>Denver, Colorado 80202 | Garrison Loan Agency Services, LLC<br>c/o Holland & Knight<br>200 Crescent Court, Suite 1600<br>Dallas, Texas 75201<br>Attn:  Brent McIlwain |
| **Counsel to the Stalking Horse Bidder** | **Debtor's Investment Banker** |
| Diamond McCarthy LLP<br>909 Fannin Street, 37th Floor<br>Houston, Texas 77010<br>Attn:  Kyung S. Lee and Charles M. Rubio | Parkman Whaling, LLC<br>600 Travis, Suite 600<br>Houston, Texas  77002<br>Attn:  Bruce Campbell |

You retain the right to object to your Cure Amount or the Debtor's ability to assume and assign your Assumed Contract IF your Assumed Contract was not listed on Debtor's prior NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES dated October ___, 2017.  You also retain the right to object to your Cure Amount if the Cure Amount listed on Exhibit A is less than the Cure Amount set forth on Debtor's October ___, 2017, NOTICE. You retain the right to object to the Successful Bidder's adequate assurance of future performance in any event.

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**

**ANY COUNTERPARTY TO AN ASSIGNED CONTRACT WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED ASSUMPTION**

3

**AND ASSIGNMENT OF AN ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO IN ACCORDANCE WITH THE BID PROCEDURES ORDER AND THE ASSUMPTION PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO, INCLUDING ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE ASSIGNED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.**

*[Remainder of page intentionally left blank]*

Dated:  October _____, 2017.

**LINDQUIST & VENNUM LLP**

By: _____/s/Theodore J. Hartl_____
Theodore J. Hartl, #32409
Harold G. Morris, Jr., #8409
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
Email:  thartl@lindquist.com
Email:  hmorris@lindquist.com

*Counsel for Badlands Energy, Inc., Badlands Production Company,*
*Badlands Energy-Utah, LLC, and Myton Oilfield Services, LLC*

## Exhibit A

**Assumed Contracts**

### Assumed Contracts[1]

| Counterparty | Address | Description of Assumed Contracts or Leases | Cure Amount (except as otherwise agreed to by the parties) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

---

[1] The presence of a contract or lease on this **Exhibit A** does not constitute an admission by the Debtor that such contract is an executory contract or such lease is an unexpired lease pursuant to section 365 of the Bankruptcy Code or any other applicable law, and the Debtor reserves all rights to withdraw any proposed assumption and assignment, or to reject any contract or lease at any time before such contract or lease is assumed and assigned pursuant to an order of the Court.