**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | ) |
| | ) |
| BADLANDS ENERGY, INC. | ) Case No. 17-17465 KHT |
| EIN: 98-0204105, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |
| In re: | ) |
| | ) |
| BADLANDS PRODUCTION COMPANY | ) Case No. 17-17467 KHT |
| EIN: 84-1461816, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |
| In re: | ) |
| | ) |
| BADLANDS ENERGY-UTAH, LLC | ) Case No.  17-17469 KHT |
| EIN: 47-2023934, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |
| In re: | ) |
| | ) |
| MYTON OILFIELD RENTALS, LLC | ) Case No.  17-17471 KHT |
| EIN: 20-1202389, | ) Chapter 11 |
| | ) |
| Debtor. | ) **Jointly Administered Under** |
| | ) **Case No.  17-17465 KHT** |

---

**ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT
BETWEEN DEBTOR BADLANDS PRODUCTION COMPANY AND WAPITI UTAH,
L.L.C., (B) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS, (C) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND
(D) GRANTING RELATED RELIEF**

---

Upon the motion (the "Sale Motion")[1] of the above-captioned debtor and debtor in

possession Badlands Production Company (the "Debtor"), for entry of an order (the "Sale

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Agreement (as defined herein), as applicable.

Order"): (a) approving that certain purchase and sale agreement, dated as of August 7, 2017, by and between the Debtor and Wapiti Utah, L.L.C. f/k/a Wapiti Newco, L.L.C. (the "Buyer") (as amended from time to time, the "Agreement"), (b) authorizing and approving the sale (the "Sale") of the Property free and clear of all liens, liabilities, claims, interests, and other encumbrances as set forth in the Agreement, (c) authorizing the Debtor to assume and assign the contracts set forth on **Exhibit 1** attached hereto (the "Assumed Contracts") to the Buyer as set forth in the Agreement, and (d) granting certain related relief; and this Court, in furtherance of the Motion, having entered an order on October 3, 2017 at [Docket No.164] (the "Bid Procedures Order") approving, among other things, the proposed Bid Procedures appended to the Bid Procedures Order, the notice of the Sale, and procedures for determining and fixing cure costs to be paid in respect of Assumed Contracts; and the Debtor having determined, after an extensive marketing process, that the Buyer has submitted the highest and best bid for the Property; and upon adequate and sufficient notice of the Sale Motion, the Bid Procedures, the Auction, the Agreement, and all other related transactions contemplated thereunder and in this Sale Order having been given in the manner directed by the Court in the Bid Procedures Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered (i) the Sale Motion, (ii) the objections thereto and (iii) statements of counsel and the evidence proffered in support of the relief requested by the Debtor in the Sale Motion at a hearing before the Court on October 25, 2017 (the "Sale Hearing"); and the Court having jurisdiction over this matter; and it appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties in

interest; and upon the record of the Sale Hearing and all other pleadings and proceedings in these chapter 11 cases, including the Sale Motion; and after due deliberation thereon; and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

### Jurisdiction, Final Order, and Statutory Predicates

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

C.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay and expressly directs entry of judgment as set forth herein.

### Notice of the Sale, Auction, and Cure Amounts

D.      Actual written notice of the Sale Motion, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been afforded to

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the following entities and parties (the "Notice Parties"): (a) the Office of the United States Trustee for the District of Colorado; (b) the administrative agent under the Debtors' prepetition credit facility; (c) all creditors on the Debtor's list of creditors with the 20 largest unsecured claims; (d) the United States Attorney's Office for the District of Utah; (e) the Internal Revenue Service; (f) the Environmental Protection Agency; (g) the office of the Attorney General for the State of Utah; (h) counsel to the Stalking Horse Bidder; (i) the United States Bureau of Land Management; (j) the Utah Department of Environmental Quality; (k) all parties identified as secured creditors in Debtor's Schedule D filed as required by Section 521(a)(1)(A) of the Bankruptcy Code; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E.    Actual written notice of the auction for the Sale of the Property that was scheduled for October 12, 2017 (the "Auction"), the Sale Hearing, the Sale of the Property, and a reasonable opportunity to object or be heard with respect thereto, has been afforded to the following entities and parties: (a) the Notice Parties; (b) counterparties to the Assumed Contracts (the "Contract Counterparties"); (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Property; (d) all applicable state and local taxing authorities; (e) all the Debtor's other scheduled creditors; and (f) any governmental agency known to the Debtor to be an interested party with respect to the Sale.

F.    In accordance with the provisions of the Bid Procedures Order, the Debtor has served notice upon the Contract Counterparties: (i) that the Debtor seeks to assume and assign to the Buyer the Assumed Contracts on the Closing Date (as defined in the Agreement) and (ii) of the relevant Cure Amounts (defined below). The service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of

establishing a Cure Amount for the Contracts. Each of the Contract Counterparties has had or will have had an opportunity to object to the Cure Amounts set forth in the notice and to the assumption and assignment to the Buyer of the applicable Assigned Contract.

G.     As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Sale, and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Assumed Contracts to the Buyer, has been provided in accordance with the Bid Procedures Order and sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed Contracts to the Buyer is or shall be required.

H.     The disclosures made by the Debtor concerning the Sale Motion, the Agreement, the Auction, the Sale Hearing, the Sale, and the assumption and assignment of the Assumed Contracts to the Buyer were good, complete, and adequate.

I.     A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein (including the assumption and assignment of Assumed Contracts to the Buyer and any Cure Costs related thereto), has been afforded to all interested persons and entities, including the Notice Parties.

**<u>Good Faith of Buyer</u>**

J.     The Agreement was negotiated, proposed, and entered into by the Debtor and the Buyer without collusion, in good faith, and from arms'-length bargaining positions.

K.     Neither the Debtor nor the Buyer have engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. The Buyer

has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.

L.      The Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code. The Buyer has proceeded in good faith in all respects in connection with the Sale including, but not limited to: (i) agreeing to subject its bid to the competitive bidding process contemplated in the Bid Procedures Order in good faith, (ii) complying with the provisions in the Bid Procedures Order, (iii) neither inducing nor causing the chapter 11 filings by the Debtor; and (iv) disclosing all payments and commitments to be made by the Buyer in connection with the Sale. The Buyer is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

## Highest and Best Offer

M.      The Debtor conducted a sale process in accordance with, and has otherwise complied in all respects with, the Bid Procedures Order. The sale process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Property. The Auction was duly noticed in a noncollusive, fair, and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Property.

N.      The Agreement constitutes the highest and best offer for the Property, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the Agreement constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Debtor's business judgment.

O.      The Agreement represents a fair and reasonable offer to purchase the Property under the circumstances of these chapter 11 cases. No other entity or group of entities has offered to purchase the Property for greater overall value to the Debtor's estate than the Buyer.

6

P.      Approval of the Sale Motion and the Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtor's chapter 11 estate, its creditors, and other parties in interest.

## No Fraudulent Transfer or Merger

Q.      The consideration provided by the Buyer pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the Property, and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States.

R.      The Buyer is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Buyer and the Debtor. The Buyer is not holding itself out to the public as a continuation of the Debtor. The Buyer is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer and the Debtor.

## Validity of Transfer

S.      Debtor has, to the extent necessary or applicable, (i) full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Agreement, and (iii) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those

expressly provided for in the Agreement, are required for the Debtor to consummate the Sale, the Agreement, or the transactions contemplated thereby.

T.       Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Property to the Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Property, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtor to the Property free and clear of (i) all liens and encumbrances relating to, accruing, or arising any time prior to the Closing Date (collectively, the "Liens") and (ii) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, and interests (collectively, the "Claims"), whether arising prior to or subsequent to the commencement of these cases, with the exception of Permitted Encumbrances and Assumed Liabilities that are expressly assumed by Buyer under the Agreement, including, for the avoidance of doubt, Cure Amounts or any obligations arising at or after Closing arising under the Assumed Contracts.

### Section 363(f) is Satisfied

U.       The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Property free and clear of any interest in the property other than the Permitted Encumbrances and Assumed Liabilities.

V.       The Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the sale of the Property to the Buyer and the assumption of any Assumed Liabilities by the Buyer were not free and clear of all Liens and Claims, other than Permitted Encumbrances and the Assumed Liabilities, or if the Buyer would, or in the future could, be liable for any of such Liens and Claims (other than Permitted Encumbrances and the Assumed Liabilities). Unless expressly included in Permitted

Encumbrances or Assumed Liabilities, the Buyer shall not be responsible for any Liens or Claims.

   W. The Debtor may sell the Property free and clear of all Liens and Claims against the Debtor, its estate or any of the Property (except the Permitted Encumbrances and Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtor, its estate, or any of the Property who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens or Claims (except to the extent that such Liens or Claims are Assumed Liabilities or Permitted Encumbrances) are adequately protected by having their Liens or Claims, if any, in each instance against the Debtor, its estate, or any of the Property, attach to the cash proceeds of the Sale ultimately attributable to the Property in which such creditor alleges a Lien or Claims, in the same order of priority, with the same validity, force, and effect that such Liens or Claims had prior to the Sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

   X. Under the Agreement, the Debtor does not assume the Monarch Natural Gas, LLC ("Monarch") gathering agreement and seeks to sell the Property free and clear of such agreement.  Monarch has asserted that the gas gathering agreement is a covenant running with the land and as such it cannot be sold free and clear under Section 363(f) of the Bankruptcy Code and/or must be assumed by the Buyer.   Monarch also asserts that the prepetition claim (default) is an encumbrance against the Property irrespective of whether the contract is actually assumed or not and that the Buyer of the Property is therefore liable for payment. On October 23, 2017, Monarch commenced adversary proceeding number 17-1429 KHT (the "Monarch Adversary")

in this Court arguing that, among other things, the gas gathering agreement is a "covenant running with the land" that cannot be rejected, and that any sale of the Property is subject to such agreement.

Y.     The Debtor and the Buyer believe that the gas gathering agreement is an executory contract that the Debtor may reject under applicable law, and that the Property may be sold free and clear of all pre-petition amounts the Debtor may owe to Monarch.

Z.     The Buyer agrees that if it is determined that Monarch has an interest in the Property that cannot be sold free and clear under Section 363(f) of the Bankruptcy Code then such interest shall be deemed a Permitted Encumbrance under this Sale Order.  If it is determined that Monarch's gas gathering agreement or the salt water disposal agreement (which are the subject of the Monarch Adversary) cannot be rejected or sold free and clear, Buyer will be responsible for the obligations under those agreements, including any pre-petition amounts that cannot be sold free and clear or that the Court otherwise determines must be cured by the Buyer. For avoidance of doubt, the Buyer is not responsible for paying any pre-petition claims that Monarch has against the Debtor unless it is determined by the Court, subject to the parties' rights to appeal, that the Buyer is required to pay such pre-petition claim.

**Cure/Adequate Protection**

AA.     The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interests of the Debtor and its estate, its creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor. The Buyer shall: (i) to the extent necessary, cure or provide adequate assurance of cure, of any default existing prior to the date hereof with respect to the Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and

10

365(f)(2)(A), and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A). The Buyer's promise to pay the Cure Amounts and to perform the obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).

BB.    Any objections to the assumption and assignment of any of the Assumed Contracts to the Buyer are hereby overruled or withdrawn, or have been resolved by the terms of this Sale Order.  Any objections to the Cure Amounts are hereby overruled or withdrawn, or have been resolved by the terms of this Sale Order. To the extent that any Contract Counterparty failed to timely object to its Cure Amount or the assumption and assignment of its Contract to the Buyer, such Counterparty is deemed to have consented to such Cure Amount and the assignment of its Contract to the Buyer.

## Compelling Circumstances for an Immediate Sale

CC.    Good and sufficient reasons for approval of the Agreement and the Sale have been articulated. The Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the Agreement and (ii) compelling circumstances for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the only means by which the Debtor may satisfy the Assumed Liabilities.

DD.     To maximize the value of the Property and preserve the viability of the business to which the Property relate, it is essential that the Sale of the Property occur within the time constraints set forth in the Agreement. Time is of the essence in consummating the Sale.

EE.     The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale does not impermissibly restructure the rights of the Debtor's creditors.

FF.     The consummation of the Sale and the assumption and assignment of the Assumed Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### General Provisions

1.     The relief requested in the Sale Motion and the transactions contemplated thereby and by the Agreement are approved as set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if set forth fully in this Sale Order, and the Sale contemplated thereby is approved.

2.     All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court or the terms of this Sale Order, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

3.     This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

## Approval of the Agreement

4.     The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.     Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized, empowered, and directed to use its reasonable best efforts to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement, (b) close the Sale as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the Agreement, including the assumption and assignment to the Buyer of the Assumed Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other Sale related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

6.     This Sale Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor, any holders of Liens or Claims (whether known or unknown) in, against or on all or any portion of the Property, all Contract Counterparties, the Buyer and all successors and assigns of the Buyer, the Property, and any trustees, if any, subsequently appointed in any of the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtor's case.

## **Transfer of the Property**

7.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the
Debtor is authorized and directed to use reasonable best efforts to transfer the Property to the
Buyer on the Closing Date and such transfer shall constitute a legal, valid, binding, and effective
transfer of such Property and shall vest Buyer with title to the Property and, upon the Debtor's
receipt of the Purchase Price, other than Permitted Encumbrances and Assumed Liabilities, shall
be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever,
including but not limited to, (a) successor or successor-in-interest liability, and (b) Claims in
respect of the Excluded Liabilities, with all such Liens, Claims, or other interests to attach to the
cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or
other interests are asserted, subject to the terms thereof, with the same validity, force, and effect,
and in the same order of priority, which such Liens, Claims, or other interests now have against
the Property, subject to any rights, claims, and defenses the Debtor or its estate, as applicable,
may possess with respect thereto. Such Liens, Claims, or other interests include, but are not
limited to, those asserted by Halliburton Energy Services, Inc. and Multi-Chem Group, LLC, in
adversary proceeding number 17-1427 KHT (the "Halliburton Adversary").  Upon the Closing,
the Buyer shall take title to and possession of the Property subject only to the Permitted
Encumbrances and Assumed Liabilities.

8.      All persons and entities that are in possession of some or all of the Property on the
Closing Date are directed to surrender possession of such Property to the Buyer at the Closing.
On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such
commercially reasonable documents and take all other commercially reasonable actions as may
be reasonably necessary to release its Liens, Claims, or other interests in the Property, if any, as
such Liens, Claims or interests may have been recorded or may otherwise exist.  The Buyer is

authorized to take any action on behalf of the Debtor to evidence entry of this Sale Order and the release of any Liens, Claims, or other interests in Property pursuant to this Sale Order.

9.      The transfer of the Property to the Buyer pursuant to the Agreement does not require any consents other than as specifically provided for in the Agreement. On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtor's interests in the Property. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

10.      To the extent that (a) there are restrictions on the sale, assignment, transfer, conveyance or delivery, or attempted sale, assignment, transfer, conveyance or delivery, to Buyer of any Purchased Asset or (b) the same would require the consent, authorization, approval or waiver of a person or entity who is not a party to the Agreement or an Affiliate of a party to the Agreement (including any Governmental Authority), then (1) such consent, authorization, approval or waiver is not required and/or (2) the Purchased Asset subject to such consent, authorization, approval or waiver shall be assigned or transferred regardless of any such restriction or necessary consent, authorization, approval or waiver and that there shall be no breach or adverse effect on the rights of the Debtor or the Buyer for the failure to obtain any such consent, authorization, approval or waiver or otherwise comply with such restriction.

11.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the Liens or Claims of record except those assumed as Assumed Liabilities or Permitted Encumbrances.

12.     The provisions of this Sale Order authorizing the transfer of the Property free and clear of all Liens or Claims (other than Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and the Debtor, the Buyer, and creditors shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Sale Order to be effectuated, consummated and/or implemented.

13.     This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, or other interests of any kind or nature whatsoever existing as to the Property prior to the Closing Date, other than Permitted Encumbrances and Assumed Liabilities, or as otherwise provided in this Sale Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.

14.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

15.     Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely

affect or interfere with the ability of the Debtor to sell and transfer the Property to the Buyer in accordance with the terms of this Agreement and this Sale Order.

16.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Property, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

17.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Property sold, transferred, or conveyed to the Buyer on account of the filing or pendency of the Debtors' chapter 11 cases or the consummation of the transactions contemplated by the Agreement.

18.     Notwithstanding any provision in the Agreement or this Order, any assignment and/or transfer of any interests in contracts, leases, covenants, operating rights agreements, rights-of-use and easements, and rights–of-way or other interests or agreements: (a) with the federal government; (b) involving federal land or minerals; (c) with the State of Utah; or (d) involving Utah State land or minerals (collectively, the "Government Leases") will be ineffective absent the consent of the United States or the State of Utah, as applicable. The Debtor and Buyer agree to comply with all applicable bankruptcy and non-bankruptcy law with respect to the Government Leases, including any decommissioning obligations and financial assurance requirements under the Government Leases as determined by the United States or the State of Utah, as applicable (as provided for under applicable law and the Government Leases).

19.     Nothing in this Order shall be interpreted to require the United States or the State of Utah to novate, approve, or otherwise consent to the assignment and/or transfer of any

17

interests in the Government Leases. Except to the extent already paid by the Debtor, the obligations for any amounts owed to the United States known to date under any Government Leases sought to be assumed and/or sold, assigned and/or transferred, must be ratified and assumed by the Buyer and shall be paid in full as soon as practicable by the later of (i) the Closing Date; or (ii) when due in the ordinary course.  If the Buyer does not pay these amounts by the deadline set forth above, late payment charges will be due on the untimely payment at the rate established at 30 C.F.R. § 1218.54.  For the avoidance of doubt, in order to obtain the consent of the United States or the State of Utah, as applicable, all existing defaults under the Government Leases, including any outstanding rents or royalties known to date plus interest, must be assumed and cured. By no later than the Closing Date, Debtor agree to submit to ONRR all presently identified missing production reports and associated royalty reports that the Debtor failed to submit to ONRR; to the extent that such reports are not submitted by Debtor to ONRR by the Closing Date, Buyer agrees to submit such missing reports not later than thirty (30) days after the Closing Date. The United States Department of Interior ("DOI") and the State of Utah will retain and have the right to audit and/or perform any compliance review, and if appropriate, collect from the Debtor and/or the Buyer any additional monies owed by the Debtor prior to the transfer or assignment of the Government Leases without those rights being adversely affected by these bankruptcy proceedings.  The Debtors and their successors and assigns will retain all defenses and/or rights, other than defenses and/or rights arising from the bankruptcy, to challenge such determination provided, however, that any such challenge, including any challenge associated with this bankruptcy proceeding, must be raised in the United States' administrative review process leading to a final agency determination by ONRR.  With respect to the DOI's audit and review rights, the audit and/or compliance review period shall remain open

18

for the full statute of limitations period established by the Federal Oil and Gas Royalty

Simplification and Fairness Act of 1996 (30 U.S.C. §§1701, *et seq.*).

20.     Nothing in this Sale Order or the Agreement releases, nullifies, precludes or

enjoins the enforcement of any police or regulatory liability to a governmental unit that any

entity would be subject to as the owner or operator of property after the date of entry of this Sale

Order. Nothing in this Sale Order or the Agreement authorizes the transfer or assignment of any

governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the

discontinuation of any obligation thereunder, without compliance with all applicable legal

requirements and approvals under police or regulatory law. Nothing in this Sale Order divests

any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale

Order or to adjudicate any defense asserted under this Sale Order.

21.     The Debtor and the Buyer will retain all defenses and/or rights to challenge any

determinations relating to the Government Leases; provided that any such challenge, including

any challenge associated with this bankruptcy proceeding, must be raised in the applicable

government's administrative review process leading to a final agency determination. The audit

and/or compliance review period shall remain open for the full statute of limitations period

established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30

U.S.C. § 1701, *et seq.*) to the extent applicable to the Government Leases under non-bankruptcy

law. Nothing in this Sale Order shall affect the police and regulatory powers of the United States

or the State of Utah.

22.     The Debtor's Property is also subject to a Consent Decree entered March 24,

2014, in the case *Gasco Energy, Inc. v. Environmental Protection Agency*, Civil No. 1:12-CV-

1658-MSK-BNB (D. Colo.) which resolved allegations concerning violations of Section 404 of

the Clean Water Act by illegally filling wetlands located in an area designated by the United States Fish and Wildlife Service as critical habitat for several endangered species of fish (specifically the Colorado pikeminnow, bonytail, humpback chub, and razorback sucker). Pursuant to the Consent Decree, the Debtor implemented a wetlands restoration plan, which included among other things, removing fill and planting of wetlands vegetation.  The Debtor was to monitor the restoration for at least five growing seasons and ensure compliance with the Restoration Plan set forth in the Consent Decree until success criteria are satisfied.  A portion of the Property includes a portion of the access road leading to a well known as Lamb Trust 24-14-9-19, as well as in the vicinity of another filled wetlands area.  The Sale is subject to all requirements of the Consent Decree and after Closing, the Buyer shall complete the monitoring activities required by the Consent Decree and Restoration Plan, and undertake all additional restoration activities necessary to comply with the Restoration Plan.  The Buyer is not liable for paying any pre-petition fines or claims the Debtor owes under the Consent Decree, *provided however*, that the obligations under the Consent Decree after the Closing Date are Permitted Encumbrances.

### Assumption and Assignment of Contracts.

23.     The Debtor is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Buyer, effective upon the Closing of the Sale, the Assumed Contracts free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever (other than the Permitted Encumbrances and Assumed Liabilities), and (b) execute and deliver to Buyer such documents or other instruments as Buyer reasonably deems may be necessary to assign and transfer the Assumed Contracts, Permitted Encumbrances, and Assumed Liabilities to Buyer.

20

24.     With respect to the Assumed Contracts: (a) the Debtor may assume each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code, (b) the Debtor may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect, (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to Buyer of each Assigned Contract have been satisfied, (d) the Assumed Contracts shall be transferred and assigned to, and following the closing of the Sale remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by Buyer, and (e) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract.

25.     Unless otherwise agreed and stated on the record at the Sale Hearing, the respective amounts set forth under the "Cure Amount" column on **Exhibit 1** attached hereto reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults and pay all pecuniary losses under the Assumed Contracts (collectively, the

"Cure Amounts"), and no other amounts are or shall be due in connection with the assumption by the Debtor and the assignment to the Buyer of the Assumed Contracts.

26.     All defaults or other obligations of the Debtor under the Assumed Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Buyer at the Closing or as soon thereafter as practicable by payment of the Cure Amounts.

27.     Except for a Contract Counterparty who has filed a timely objection to the Cure Amount by October 17, 2017 or by the objection date applicable to any Previously Omitted Contracts (whose objection shall be resolved in accordance with the procedures set forth in the Bid Procedures Order) (a "Contract Objection"), such counterparty is deemed to have consented to such Cure Amount.

28.     Except for a Contract Counterparty who has filed a timely Contract Objection to the Debtor's proposed assignment of such Assigned Contract to the Buyer (whose objection shall be resolved in accordance with the procedures set forth in the Bid Procedures Order), such counterparty is deemed to have consented to assumption and assignment, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

29.     With respect to any timely-filed Contract Objections, such objections shall be resolved in accordance with the procedures set forth in the Bid Procedures Order. The provisions of this Sale Order shall be effective and binding upon Contract Counterparties to the extent set forth in, and in accordance with, such procedures. Nothing in this Sale Order, the Sale Motion, or in any notice or any other document is or shall be deemed an admission by the Debtor that any

22

contract or Contract is an executory contract or unexpired lease or must be assumed and assigned pursuant to the Agreement or in order to consummate the Sale.

30.     Upon the Debtor's assignment of the Assumed Contracts to the Buyer under the provisions of this Sale Order and any additional orders of this Court and Buyer's payment of any Cure Amounts pursuant to the terms hereof, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted (a) to declare a default by the Buyer under such Contract or (b) otherwise take action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract. Except insofar as a Contract Counterparty has filed or may timely file and prosecute a Contract Objection as provided by the Bid Procedures Order, each non-Debtor party to a Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtor or Buyer, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or, against Buyer, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtor and (ii) imposing or charging against Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtor's assumption and assignments to Buyer of the Assumed Contracts. The validity of such assumption and assignments of the Assumed Contracts shall not be affected by any dispute between the Debtor and any non-Debtor party to an Assigned Contract relating to such Assigned Contract's respective Cure Amount.

31.     The failure of the Debtor or Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtor's and Buyer's rights to enforce every term and condition of the Contracts.

## **Prohibition of Actions Against the Buyer**

32.      Except for the Permitted Encumbrances and Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Agreement, the Buyer shall not have any liability or other obligation of the Debtor arising under or related to any of the Property. Without limiting the generality of the foregoing, and except as otherwise specifically provided in this Sale Order or in the Agreement, the Buyer shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, legal or equitable, liquidated or unliquidated.

33.      The Buyer has given substantial consideration under the Agreement for the benefit of the Debtor, its estate, and its creditors. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens against or interests in, or Claims against the Debtor or any of the Property, other than holders of Liens or Claims relating to the Permitted Encumbrances or Assumed Liabilities. The consideration provided by the Buyer for the Property under the Agreement is fair and reasonable and, accordingly, the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

## **Permanent Injunction**

34.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Property to the Buyer in accordance with the Agreement and this Sale Order.  Following the Closing, except for persons

entitled to enforce Assumed Liabilities and Permitted Encumbrances, all Persons, including but not limited to (i) the Debtor and/or its respective successors (including any trustee), (ii) creditors, (iii) investors, (iv) current and former employees and shareholders, and (v) the successors and assigns of each of the foregoing holding Liens, Claims or other interests in the Property or against the Debtor with respect to the Property of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Liens, Claims or other interests of any kind or nature whatsoever against the Buyer or any Affiliate of the Buyer or any of their respective property, successors and assigns, or the Property, as an alleged successor or on any other grounds.  No Person shall assert, and the Buyer and the Property shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Buyer or the Debtor, or any obligation of any other party, under or with respect to any Property, with respect to any act or omission that occurred prior to the Closing, or with respect to any other agreement or any obligation of the Debtor that is not an Assumed Liability.

## Post-Closing Actions and Transactions

35.     The Debtor and the Buyer, and each of their respective officers, employees, and agents, will be authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order. Further, effective as of the Closing, the Buyer and its successors and assigns shall be designated and appointed the Debtor's true and lawful attorney and attorneys, with full power of substitution, in the Debtor's

name and stead, to demand and receive any and all of the Property, and from time to time institute and prosecute in the name of the Buyer, for the benefit of the Buyer, its successors and assigns, any and all proceedings at law, in equity, or otherwise, that the Buyer, its successors or assigns, may deem proper for the collection or reduction to possession of any of the Property, and to do all acts and things with respect to the Property that the Buyer, or its successors and assigns, shall deem desirable. All of the foregoing powers granted to the Buyer are coupled with an interest and are irrevocable by the Debtor.

36.    At the closing of the Sale to the Buyer, the Buyer shall deliver the cash purchase price payable under the Agreement directly to the Debtor, which shall hold such proceeds pending further Court order that determines and resolves the nature, extent, and priority of all creditors who assert secured claims and/or Liens against such proceeds including Halliburton and Garrison Loan Agency Services LLC (the "Agent"), in its capacity as administrative agent for the Debtor's prepetition and postpetition credit facilities. All parties in interest asserting a secured claim and/or Lien against the Debtor, including the Agent and Halliburton, but excluding Wapiti Oil & Gas II, LLC ("Wapiti II"), reserve their rights and claims in connection with determination of the nature, extent, validity, and priority of such asserted secured claims and/or Liens against the proceeds of the Sale, including the claims pending in the Halliburton Adversary.

## No Waiver

37.    Except as otherwise expressly set forth herein, nothing in this Sale Order shall modify or waive any closing conditions or termination rights in the Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

**Other Provisions**

38.     Notwithstanding anything in the Sale Order to the contrary, the Debtor hereby

assumes and assigns to Buyer all the executory contracts between the Debtor and Wapiti II set

forth on Exhibit 2 (the "Wapiti II Contracts"), subject to Wapiti II's continued assertion that the

COA terminated prepetition which shall be resolved by agreement or in adversary proceeding

number 17-1377 KHT (the "Wapiti Adversary").  In addition, the Buyer shall substitute for the

Debtor as the real party in interest in the Wapiti Adversary.   The Buyer shall pay any and all

cure costs related to assumption of the Wapiti II Contracts and shall pay any and all amounts

determined to be owed by final order in the Wapiti Adversary.  To reiterate, the Buyer shall be

responsible for (i) any and all amounts determined to be due to Wapiti II as cure costs for the

assumption of Wapiti II Contracts, (ii) all amounts that Wapiti II establishes are owed by the

Debtor in the Wapiti Adversary, and (iii) any amounts that Wapiti II establishes that it would

otherwise be owed from the sale proceeds, it being understood that none of the sale proceeds will

be distributed to Wapiti II in the nature of a cure payment for assumption of the Wapiti II

Contracts, satisfaction of an operator's lien, or any other encumbrance, Lien, Claim, or Interest.

If it is determined by agreement or in the Wapiti Adversary that the COA cannot be assumed by

the Buyer, Buyer shall turnover operations to Wapiti II as soon as reasonably possible.  In the

event Buyer and the Wapiti II cannot resolve the Wapiti Adversary, then either the Buyer or

Wapiti II may continue to prosecute the Wapiti Adversary or commence another litigation in any

court of competent jurisdiction.

39.     The sale of the Property is subject to the determination in the Monarch Adversary,

subject to the parties' rights to appeal, whether Monarch's gas gathering agreement or the salt

water disposal agreement is a "covenant running with the land" and thus cannot be sold free and

clear.  Subject to a decision and the entry of a final, non-appealable order in the Monarch

Adversary (which shall control the ultimate interests of the parties) if it is determined that the Monarch agreements cannot be rejected or sold free and clear, Buyer will be responsible for the obligations under the agreements, including any pre-petition obligations that cannot be sold free and clear, or that the Court otherwise determines must be cured by the Buyer. The Buyer is not responsible for paying any pre-petition claims that Monarch has against the Debtor unless it is determined in the Monarch Adversary, subject to the parties' rights to appeal, that the Buyer is required to pay such pre-petition claims.

40.     The transactions contemplated by the Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

41.     Nothing contained in the Agreement or this Sale Order shall affect, relieve, alter, discharge, or otherwise impair any non-Debtor's liability for any Reclamation Obligations, Excluded Liabilities, or other costs such non-Debtor is liable for by contract, statute, or common law.

42.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.

43.     For cause shown, pursuant to Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed, shall be effective immediately upon entry, and the Debtor and Buyer are authorized to close the Sale immediately upon entry of this Sale Order.

44.     The failure to specifically include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety; *provided* that this Sale Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

45.     The Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate or lower the amount of cash proceeds paid.

46.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which Debtor is a party or which has been assigned by the Debtor to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property to the Buyer, (b) interpret, implement, and enforce the provisions of this Sale Order; (c) protect Buyer against any Liens, Claims, or other interest in or against the Seller or the Property of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter

any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Contracts.

47.     Nothing in this Sale Order or the Agreement (a) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order and (b) authorizes the transfer or assignment to Buyer of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Buyer's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

48.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Sale Order shall govern.

49.     Entry of this Sale Order is without prejudice to the rights of Dorrier Equities, Ltd. and Markham, LLC c/o McIntyre Partners to assert any further objections to the distribution of sale proceeds, or to assert any objection, right, claim, or interest in any of the above-captioned Debtors' Chapter 11 cases, all of which rights, claims, and interests are reserved to Dorrier Equities, Ltd. and Markham, LLC c/o McIntyre Partners as parties in interest under the Bankruptcy Code and applicable law.  Further, entry of this Sale Order is without prejudice to the Debtors, the Agent, or any other party to respond to any objection and/or assert an interest in sale proceeds, and the reservation of rights set forth in this paragraph shall not waive, modify, or impair the rights of the Debtors and/or the Agent to enforce the terms of any subordination agreements or other agreements between the parties, including the right to assert that any objection raised by Dorrier Equities, Ltd. and/or Markham, LLC c/o McIntyre Partners is

prohibited by or violates such agreements.  Moreover, the reservation of rights set forth in this paragraph shall not expand any rights or release any obligations of Dorrier Equities, Ltd. and/or Markham, LLC c/o McIntyre Partners that have been voluntarily waived by agreement of the parties.

Dated:  October 26, 2017.

BY THE COURT:

Hon. Kimberley H. Tyson
United States Bankruptcy Judge

## **Exhibit 1**

**Assumed Contracts**

**Assumed Contracts**

| Counterparty | Description of Contract | Date of Contract | Cure Amount |
|---|---|---|---|
| Anadarko | Sale and Purchase of Natural Gas | 12/1/2007 | $0.00 |
| BLM(Gate Canyon I, UTU80986X) | Unit Operating Agreement | 11/26/2003 | $0.00 |
| BLM(Gate Canyon II, UTU90523X) | Unit Operating Agreement | 12/10/2014 | $0.00 |
| BLM(Wilkin Ridge, UTU81153X) | Unit Operating Agreement | 2/6/2004 | $0.00 |
| BLM (Deseret Unit, UTU89823X) | Unit Operating Agreement | 2/26/2014 | $0.00 |
| BLM (Bend Green River Enhanced Recovery Unit; UTU90215X) | Unit Operating Agreement | 9/1/2014 | $0.00 |
| Dolar Energy, LLC & Cochrane Resources, Inc. | Contract Operating Agreement | 3/1/2005 | $0.00 |
| EnWest | Oil Purchase Agreement | 12/17/2008 | $0.00 |
| Halliburton Energy Services, Inc. | Joint Operating Agreement | 9/30/2003 | $0.00 |
| MBG | Joint Operating Agreement | 3/19/2010 | $0.00 |
| MBGV | Joint Operating Agreement | 3/19/2010 | $0.00 |
| Medallion Exploration | Model Fonn Operating Agreement | 5/1/2000 | $0.00 |
| Newfield | Farmout and Option Agreement | 1/12/2004 | $0.00 |
| Newfield | Gas Sales Agreemenct | 9/1/2013 | $0.00 |
| Newfield | Joint Operating Agreement | 4/1/2005 | $0.00 |
| Newfield | Joint Operating Agreement | 5/22/2007 | $0.00 |
| NFR Uinta Basin LLC | Joint Operating Agreement | 7/25/2007 | $0.00 |
| Pleasant Valley WI Owners | Joint Operating Agreement | 4/1/1981 | $0.00 |
| PNG | Sale and Purchase of Natural Gas | 1/1/2008 | $0.00 |

| Counterparty | Description of Contract | Date of Contract | Cure Amount |
|---|---|---|---|
| QEP | Gas Purchase Agreement | 3/1/2005 | $0.00 |
| QEP Energy Company | Nerno Unit Operating Agreement | 9/14/2010 | $0.00 |
| Questar Exploration and Production Company | Kraken Unit Operating Agreement | 4/25/2010 | $0.00 |
| Questar Exploration and Production Company | Unit Agreement for the Development and Operation of the Kraken Unit | 3/19/2010 | $0.00 |
| Schlumberger et al | NEA | 1/16/2004 | $0.00 |
| XTO | Gas Purchase Agreement | 5/1/2014 | $29,585.98 plus other amounts arising in the ordinary course of business after the petition date and as of the Closing Date [1] |
| Yates Petroleum Corporation et. at. | Farmout Letter Agreement | 12/5/2003 | $0.00 |

---

[1] If there is a dispute between the parties as to the amount of the cure claim arising between the petition date and the closing date, the parties seek a determination of the amount from the Court.

## Exhibit 2

**Wapiti II Contracts**

| Contract Name | Date |
|---|---|
| Amendment No.1 To Development Agreement | 2/12/2014 |
| Assignment and Assumption Agreement | 3/20/2012 |
| Assignment and Bill of Sale (Wapiti Non-Producing Interests) | 9/1/2011 |
| Closing Agreement | 3/22/2012 |
| Contract Operating Agreement | 3/22/2012 |
| Development Agreement | 3/22/2012 |
| Joinder To Amended and Restated Gas Gathering and Processing Agreement | 3/22/2012 |
| Model Form Operating Agreement - Badlands Production Company [4] | 3/22/2012 |
| Model Form Operating Agreement - Wapiti Oil & Gas II, LLC | 3/22/2012 |
| License Agreement | 3/22/2012 |
| Purchase and Sale Agreement | 2/23/2012 |
| Tax Partnership Agreement | 3/22/2012 |