# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>BADLANDS ENERGY, INC.<br>EIN: 98-0204105,<br><br>    Debtor. | Case No. 17-17465 KHT<br>Chapter 11 |
| In re:<br><br>BADLANDS PRODUCTION COMPANY<br>EIN: 84-1461816,<br><br>    Debtor. | Case No. 17-17467 KHT<br>Chapter 11 |
| In re:<br><br>BADLANDS ENERGY-UTAH, LLC<br>EIN: 47-2023934,<br><br>    Debtor. | Case No. 17-17469 KHT<br>Chapter 11 |
| In re:<br>MYTON OILFIELD RENTALS, LLC<br>EIN: 20-1202389,<br>    Debtor. | Case No. 17-17471 KHT<br>Chapter 11<br><br>**Jointly Administered Under**<br>**Case No. 17-17465 KHT** |

## MOTION FOR ENTRY OF ORDER
### (A) APPROVING REAL ESTATE SALE CONTRACT BETWEEN MYTON OILFIELD RENTALS, LLC AND WAPITI UTAH, LLC, (B) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL PROPERTY PURSUANT THERETO, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (C) GRANTING RELATED RELIEF

Myton Oilfield Rentals, LLC, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), respectfully states the following in support of this Motion:

### I. Jurisdiction and Venue

1. This Court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and D.C. COLO. LCivR 84.1(a) of the United States District Court for the District of Colorado. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, and 9013-1 of the Court's Local Bankruptcy Rules, Forms and Appendix (the "Local Rules").

### II. Background

4. On August 11, 2017 (the "Petition Date"), Debtor and its affiliates Badlands Energy, Inc., Badlands Production Company, and Badlands Energy-Utah, LLC (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Debtors' chapter 11 cases are jointly administered pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in the Debtors' cases, and no committees have been appointed or designated.

5. Debtors are an onshore oil and gas exploration and production company with headquarters in Denver, Colorado, and operations located primarily in Utah's Uinta Basin. Badlands Energy, Inc., is the 100% member of its subsidiary debtor affiliates, which operate the Riverbend project through Badlands Production Company and operate the South Altamont

project through Badlands Energy-Utah, LLC. Debtor owns real estate and related field equipment for use in operating the Debtors' assets.

6. Driven by current market conditions, the Debtors' liquidity constraints have prevented them from increasing their oil and gas production and proved productive reserves. Continuation of the Debtors' business without new capital would diminish the value of their assets. Accordingly, a sale or sales of substantially all of the Debtors' assets to the highest or best bidder(s) is in the best interests of their estates and creditors.

7. Earlier this year, the Debtors retained Parkman Whaling LLC ("PW") as investment bankers in connection with restructuring, and a potential sale, merger, or other disposition of all or a portion of the Debtors and their assets. The Debtors and PW canvassed interested parties, solicited bids, and assisted interested buyers in completing initial due diligence toward a sale or sales of their assets. The Debtors solicited bids before the Petition Date for all or some of their assets, resulting in a stalking horse purchaser for the Riverbend assets of Badlands Production Company.

8. With respect to those Riverbend assets of Badlands Production Company, on October 26, 2017, the Court entered its *Order (A) Approving the Asset Purchase Agreement between Debtor Badlands Production Company and Wapiti Utah, LLC; (B) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief*, Dkt. #222. The Debtors and PW continued to market the South Altamont assets and field office assets of the Debtor and Myton Oilfield Rentals, LLC during the Riverbend sale process.

9. Pursuant to the Court's separate *Order (A) Approving Bid Procedures for Sale of South Altamont Assets of Badlands Energy-Utah, LLC, and Sale of Related Field Office Assets of Myton Oilfield Rentals, LLC, (B) Scheduling an Auction and Sale Hearing, and (C) Approving Procedures for the Assumption and Assignment of Contracts* (the "Bid Procedures Order"), Dkt. #196, the Debtors solicited any and all bids for the sale of the South Altamont assets of Badlands Energy-Utah, LLC, and the Debtor's field office assets. After receiving multiple bids on October 20, 2017, the Debtors convened an auction on October 26, 2017.

10. Wapiti Utah, LLC ("Wapiti Utah") has been identified as the Successful Bidder (as defined in the Bid Procedures Order) for the field office assets of the Debtor (the "Property"). Through this Motion, and in accordance with the Bid Procedures Order, the Debtor seeks entry of an order approving the Real Estate Sale Contract with Wapiti Utah, on terms and conditions substantially set forth in the form of agreement attached as **Exhibit A** (the "Purchase Agreement"). Under the Purchase Agreement, Wapiti Utah proposes to purchase the Debtor's Property, and substantially all of the Debtor's assets, for a purchase price of $400,000 (the "Purchase Price"). The Debtor's personal property (vehicles and related equipment) will be transferred upon entry of an order granting this Motion via bill of sale, certificate of title or other appropriate transfer documents, consistent with the Sale of substantially all of the Debtor's assets.

### III. Relief Requested

11. The Debtor seeks entry of an order at the conclusion of the Sale Hearing, substantially in the form submitted with this Motion as a proposed order (the "Sale Order"):

    (a) authorizing and approving the Sale of the Debtor's Property to Wapiti Utah as the Successful Bidder (as defined in the Bid Procedures) on the terms substantially set forth in the final form of Purchase Agreement;

4

  (b) authorizing and approving the Sale free and clear of liens, claims, encumbrances, and other interests to the extent set forth in the final form of Purchase Agreement; and

  (c) granting any related relief.

12. The Debtor reserves the right to file and serve before the Sale Hearing any supplemental pleading or declaration that it deems appropriate or necessary in its reasonable business judgment, including any pleading summarizing the competitive bidding and sale process and the results thereof, in support of its request for entry of the Sale Order.

## IV. Notice

13. The Debtor will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Colorado (the "U.S. Trustee"); (b) the administrative agent under the Debtor's prepetition credit facility; (c) all creditors on the Debtor's list of creditors with the 20 largest unsecured claims; (d) the United States Attorney's Office for the District of Utah; (e) the Internal Revenue Service; (f) the Environmental Protection Agency; (g) the office of the Attorney General for the State of Utah; (h) counsel to the Successful Bidder; (i) the United States Bureau of Land Management; (j) the Utah Department of Environmental Quality; (k) all parties identified as secured creditors in Debtor's Schedule D filed as required by Section 521(a)(1)(A) of the Bankruptcy Code; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given at this time.

## V. The Proposed Sale and Debtor's Business Judgment

14. The Debtor believes a prompt Sale of the Property represents the best alternative available for all stakeholders in its chapter 11 case. Moreover, it is critical for the Debtor to execute on the proposed Sale transaction within the timeframe contemplated by the Bid Procedures Order and debtor-in-possession financing and cash collateral order entered on

September 14, 2017. *See* Dkt. #136 (the "DIP Order"). Delays in the sale process may trigger an event of default under the DIP Order, among other things.

15. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g., In re Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004).

16. Once the Debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted); *Integrated Res.*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

    **A.**     **A Sound Business Purpose Exists for the Sale.**

17. As set forth above, the Debtor has a sound business justification for selling the Property. *First*, the Debtor believes the Sale maximizes value and is the result of a competitive bidding process at the Auction.

18. *Second*, the sale of the Property was subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Property. Consequently, the Successful Bid was the result of a competitive Auction, and, in the Debtor's reasonable business judgment, is the highest or otherwise best offer for the Property, geared to provide a greater recovery for its estate than any known or practically available alternative. *See, e.g., In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

19. Thus, the Debtor submits that Wapiti Utah's Successful Bid, the Purchase Price and the final form of Purchase Agreement, constitute the highest or otherwise best offer for the Property and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. As such, the Debtor's determination to sell the Property to Wapiti Utah is a valid and sound exercise of business judgment. The Debtor will submit evidence at the Sale Hearing to support these conclusions. Therefore, the Debtor requests that the Court find and conclude that the proposed sale of the Property is a proper exercise of the Debtor's business judgment and is duly authorized under the Bankruptcy Code.

B. **Adequate and Reasonable Notice of the Sale Has and Will Be Provided.**

20. As described above, the Sale Notice: (a) will be served in a manner that provides notice of the date, time, and location of the Sale Hearing, in accordance with the Bid Procedures Order; (b) informs parties in interest of the deadlines for objecting to the Sale or the assumption

and assignment of the Assumed Contracts; and (c) otherwise includes all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner of the Sale Notice has been approved by this Court pursuant to the Bid Procedures Order, which itself entered after notice and a hearing.

21. On October 18, 2017, the Debtors filed and served their Notice of Auction and Sale Hearing under the Bid Procedures Order, serving notice of the date of the auction and the date of the Sale Hearing on more than 1,000 creditors and parties in interest, including a list of potentially interested purchasers as reflected in the certificate of service. *See* Dkt. #201.

### C. The Sale and Purchase Price Reflects a Fair Value Transaction.

22. It is well-settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market. *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

23. The Debtors have marketed their assets with the assistance of PW as investment advisor, and solicited offers before and after the Petition Date. PW contacted more than 100 potential buyers in that process, and provided acceptable bidders with data room access and requested information, while assisting the Debtors in considering a variety of alternative transaction structures, to increase overall transaction value. The result of those efforts is the Wapiti Utah transaction, which represents fair value for the Debtor's field office and related assets.

### D. The Sale Has Been Proposed in Good Faith and Without Collusion, and the Successful Bidder Is a "Good-Faith Purchaser."

24. The Debtor requests that the Court find that Wapiti Utah as the Successful Bidder arising from the Auction, is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Property.

25. Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

26. Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g., In re Abbotts Dairies of Pa., Inc.* ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Services, Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

27. The Debtor submits that Wapiti Utah, as the Successful Bidder arising from the Auction, is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the final form of Purchase Agreement, is a good-faith agreement on arms'-length terms entitled to the protections of section 363(m) of the Bankruptcy Code. *First*, as set forth in more detail above, the consideration to be received by the Debtor pursuant to the Purchase Agreement is substantial, fair, and reasonable. After closing the auction for the South Altamont assets of Badlands Energy-Utah, LLC, the Debtors opened bidding for the two interested purchaser for the Property. The Debtors' opened the bidding at the Purchase Price, in the exercise of their business judgment consistent with the Bid Procedures Order, and solicited competing bids from any and all parties willing to submit them. Wapiti Utah was identified as the Successful Bid shortly thereafter. *Second*, the parties are negotiating the final form of Purchase Agreement in good faith and at arm's-length, during which all parties are represented by competent counsel. *Third*, there is no indication of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Sale or Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. And, with respect to all potential bidders, the Bid Procedures Order was designed to ensure that no party was able to exert undue influence over the process. *Finally*, Wapiti Utah's highest and best offer was evaluated and approved by the Debtor in consultation with its advisors. Accordingly, the Debtor believes that Wapiti Utah as the Successful Bidder arising from the Auction under the final form of Purchase Agreement, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

E. **The Sale Should be Approved "Free and Clear" Under Section 363(f).**

28. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such

a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

29. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtor's sale of the Property free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be Assumed Liabilities under the Purchase Agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

30. The Debtor submits that any interest that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor may possess with respect thereto. The Debtor accordingly requests authority to convey the Property to Wapiti Utah as the Successful Bidder arising from the Auction, free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the Sale.

### F. Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.

31. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed

until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." The Debtor requests that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

32. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 *Collier on Bankruptcy* ¶ 6004.11 at p. 6004-22 (16th rev. ed. 2017). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id*.

33. To maximize the value received for the Property, the Debtor seeks to close the Sale as soon as possible after the Sale Hearing. Accordingly, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: October 30, 2017.

**LINDQUIST & VENNUM LLP**

By: /s/Theodore J. Hartl
    Theodore J. Hartl, #32409
    Harold G. Morris, Jr., #8409
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
Email: thartl@lindquist.com
Email: hmorris@lindquist.com

*Counsel for Badlands Energy, Inc., Badlands Production Company, Badlands Energy-Utah, LLC, and Myton Oilfield Rentals, LLC*