# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) Case No. 17-17465-KHT |
| BADLANDS ENERGY, INC. | ) Chapter 11 |
| EIN: 98-0204105, | ) |
| Debtor. | ) |
| | ) |
| In re: | ) |
| | ) Case No.  17-17467-KHT |
| BADLANDS PRODUCTION COMPANY | ) Chapter 11 |
| EIN: 84-1461816, | ) |
| Debtor. | ) |
| | ) |
| In re: | ) |
| | ) Case No.  17-17469-KHT |
| BADLANDS ENERGY-UTAH, LLC | ) Chapter 11 |
| EIN: 47-2023934, | ) |
| Debtor. | ) |
| | ) |
| In re: | ) |
| | ) Case No.  17-17471-KHT |
| MYTON OILFIELD RENTALS, LLC | ) Chapter 11 |
| EIN: 20-1202389, | ) |
| Debtor. | ) **Jointly Administered Under** |
| | ) **Case No.  17-17465-KHT** |
| | ) |

### DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION DATED APRIL 6, 2018

## CONTENTS

INTRODUCTION .................................................................................................... 1

ARTICLE I DEFINITIONS AND INTERPRETATION........................................... 1

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS.................................. 11

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
            INTERESTS ...................................................................................... 12

ARTICLE IV COMPROMISES AND SETTLEMENTS ......................................... 16

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED
            LEASES............................................................................................. 16

ARTICLE VI PROVISIONS GOVERNING ALLOWANCE AND
            DISALLOWANCE OF CLAIMS AND DISTRIBUTIONS............................ 17

ARTICLE VII EFFECTIVENESS OF THE PLAN .................................................. 21

ARTICLE VIII MEANS FOR IMPLEMENTATION AND EXECUTION OF THE
            PLAN ................................................................................................. 22

ARTICLE IX EFFECT OF CONFIRMATION ........................................................ 28

ARTICLE X RETENTION OF JURISDICTION ..................................................... 30

ARTICLE XI CRAMDOWN RESERVATION......................................................... 31

ARTICLE XII OTHER PLAN PROVISIONS.......................................................... 31

DMNORTH #6560188 v1

## INTRODUCTION

This Amended Joint Plan of Liquidation under chapter 11 of Title 11 of the United States Code proposes to pay creditors of Badlands Energy, Inc., Badlands Production Company, Badlands Energy-Utah, LLC and Myton Oilfield Rentals, LLC, from the net proceeds of the orderly liquidation of all of the Debtors' remaining assets, accounts receivable, and any net proceeds of the Debtors' Avoidance Actions and other litigation claims.

This Plan provides for one class of priority claims; four classes of secured claims; one class of general unsecured claims; one class of intercompany claims, and one class of equity security holders. This Plan also provides for the payment of unclassified administrative and priority tax claims.

On the Effective Date, the Debtors will transfer all of the Trust Assets to the Badlands Liquidating Trust, free and clear of all liens, claims, interests, and encumbrances, but subject to the terms of this Plan (including any liens, claims, and encumbrances preserved thereunder). Thereafter, the Trust, acting through the Trustee designated in the Plan, will administer and liquidate those assets and distribute the net proceeds thereof to the holders of Allowed Claims against the Debtors as provided in, and pursuant to the priorities established by, this Plan.

All creditors and equity security holders should refer to Articles II and III of this Plan for information regarding the precise treatment of their claims. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders will be circulated in support of this Plan.

YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

**Definitions.** The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

**1.1.** **Administrative Claim**. Any right to payment constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estate; any actual and necessary costs and expenses of operating the Debtors' business; any indebtedness or obligations incurred or assumed by the Debtors, as Debtors-in-possession, during the Chapter 11 Cases.

**1.2.     Allowed**. With reference to any Claim, (i) any Claim against the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with this Plan, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or under this Plan.

**1.3.     Avoidance Actions**. Any actions commenced, or that may be commenced, before or after the Effective Date pursuant to Chapter 5 of the Bankruptcy Code.

**1.4.     Badlands Liquidating Trust Agreement. T**he agreement, substantially in the form of **Exhibit 1** to this Plan, as it may be subsequently modified, that governs the creation, operation, and administration of the Trust.

**1.5.     Bankruptcy Code**. Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.6.     Bankruptcy Court**. The United States Bankruptcy Court for the District of Colorado, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**1.7.     Bankruptcy Rules**. The Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to these Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.8.     Bar Date**. January 19, 2018 for all Claimants, including Governmental Units.

**1.9.     Business Day**. Any day other than a Saturday, a Sunday, or any other day on which banking institutions in Denver, Colorado are required or authorized to close by law or executive order.

**1.10.     Cash**. Legal tender of the United States of America.

**1.11.     Causes of Action**. Any and all actions, causes of action, derivative litigation claims, claims against directors and officers, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, other than Avoidance Actions, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise,

2

based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases.

**1.12.    Chapter 11 Cases**. The chapter 11 cases of the Debtors.

**1.13.    Claim**. The meaning set forth in section 101(5) of the Bankruptcy Code.

**1.14.    Claims Register**. The list maintained by the Clerk of the Bankruptcy Court listing all Claims filed in the Chapter 11 Cases.

**1.15.    Class**. Any group of Claims or Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.16.    Claim Objection Deadline**. The first Business Day that is one hundred and twenty (120) days after the Effective Date unless such deadline is extended by the Court for good cause.

**1.17.    Collateral**. Any property or interest in property of the Estates of the Debtors subject to a validly perfected lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.18.    Confirmation Date**. The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.19.    Confirmation Hearing**. The hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.20.    Confirmation Order**. The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.21.    Consolidated Estates**. The substantively-consolidated Estates of the Debtors pursuant to Section 8.1 of the Plan.

**1.22.    Crescent Point APA.** That certain Asset Purchase Agreement dated December 1, 2017  among Debtor Badlands Energy-Utah, LLC, as the Seller, and Crescent Point Energy, U.S. Corp., as Buyer.

**1.23.    Crescent Point Sale Order.** The Order (A) Approving Asset Purchase Agreement between Debtor Badlands Energy-Utah, LLC and Crescent Point Energy U.S. Corp., (B) Authorizing the Sale of Substantially all Property Pursuant Thereto Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief pursuant to which the Crescent Point Sale Transaction was approved by the Bankruptcy Court.

**1.24.    Crescent Point Sale Transaction.** The sale of substantially all of the assets of Debtor Badlands Energy-Utah, LLC to Crescent Point Energy, U.S. Corp. pursuant to the Crescent Point APA and the Crescent Point Sale Order.

**1.25.    Debtor and Debtors**. Badlands Energy, Inc., Badlands Production Company, Badlands Energy-Utah, LLC and Myton Oilfield Rentals, LLC on and after the Petition Date, and when the context so requires, in their capacities as debtors and debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code. For the avoidance of doubt, each of the Debtors is individually a Debtor under the Plan.

**1.26.    Deficiency Claim**. Any portion of a Claim (a) to the extent the value of the holder's interest in the Collateral securing such Claim is less than the amount of such Claim, or (b) to the extent the amount of a Claim subject to setoff is less than the amount of the Claim, each as determined by the Bankruptcy Court under Bankruptcy Code section 506(a).

**1.27.    Disclosure Statement**. The disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.28.    Disputed**. With respect to any Claim or Interest, any Claim or Interest to which the Debtors, Trustee, or any other party in interest authorized by the Plan has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that is otherwise disputed by the Debtors or Trustee in accordance with applicable law, which objection, request for estimation, or dispute has not been settled, waived, withdrawn, or determined by a Final Order. A Claim that is Disputed by the Debtors or Trustee as to its amount only shall be deemed Allowed in the amount the Debtors or Trustee admit to be owing, if any, and Disputed as to the excess.

**1.29.    Disputed Claims Reserve**. A reserve established to provide for potential distributions to Disputed Claims in the event that such Disputed Claims are eventually Allowed.  The Disputed Claims Reserve shall consist of the following sub-reserves: (i) Sub-Reserve: Secured Tax Claim Reserve; (ii) Sub-Reserve: Secured Other Claim Reserve; (iii) Sub-Reserve: Wind-Down Reserve; and (iv) Sub-Reserve: Unencumbered Trust Cash Claims, with each such sub-reserve corresponding to a source of payment for potentially Disputed Claims treated under the Plan. A Disputed Claim shall not be entitled to payment from any sub-reserve corresponding to a source of payment that would not be available to satisfy such Claim if it were Allowed. In the event that any Disputed Claim is Disallowed, settled or Allowed, the funds within the applicable sub-reserve attributable to such Disputed Claim that are no longer needed to satisfy the Allowed amount of such Claim shall be released to the corresponding Secured Tax Claim Reserve, Secured Other Claim Reserve or Wind-Down Reserve (or, in the case of the Unencumbered Trust Cash Claims subreserve, to Unencumbered Trust Cash).

4

**1.30.    Distribution**. The distribution, in accordance with the Plan, of Cash or other Property, as the case may be, or the Cash or other Property as distributed.

**1.31.    Effective Date**. A Business Day on or after the Confirmation Date specified by the Debtor on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Section 7.2 hereof have been satisfied or waived by the Debtors.

**1.32.    Entity**. The meaning set forth in section 101(15) of the Bankruptcy Code.

**1.33.    Estates**. The estate of the Debtors in the Chapter 11 Cases as created under section 541 of the Bankruptcy Code.

**1.34.    Exculpated Parties**. The Debtors or any of their respective officers, directors, financial advisors, attorneys, employees, and representatives, acting in such capacity.

**1.35.    Executory Contract**. Any contract to which a Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

**1.36.    Final Order**. As applicable, an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, that has not been vacated or reversed, and as to which (i) no stay is in effect, (ii) the time to seek rehearing, file a notice of appeal or petition for certiorari has expired, (iii) no appeal, request for stay, petition seeking certiorari, or other review has been timely filed and is pending and (iv) any appeal that has been taken, any petition for certiorari, or motion for a new trial, reargument or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule (whether federal or state) may be but has not then been filed with respect to such order shall not cause such order not to be a Final Order.

**1.37.    Final DIP Order**.  The Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis and (B) Use Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief entered in the Debtors' Chapter 11 Cases (Docket No. 136).

**1.38.    Garrison Adequate Protection Administrative Claim**.    An Administrative Claim allowed in respect of any Prepetition Adequate Protection Superpriority Claim (as such term is defined in the Final DIP Order) claim held by GLAS.

**1.39.    Garrison Secured Claim**.  Any prepetition, Secured Claim held by GLAS and any of its constituent lenders against any of the Debtors, including the Secured

5

Claims set forth in: (i) proof of claim number 14, filed in the case of Badlands Production Company (Case No. 17-17467-KHT); (ii) proof of claim number 38 filed in the case of Badlands Energy, Inc. (Case No. 17-17465-KHT); (iii) proof of claim number 5 filed in the case of Badlands Energy-Utah, LLC (Case No. 17-17469-KHT); and (iv) proof of claim number 3 filed in the case of Myton Oilfield Rentals, LLC (Case No. 17-17471-KHT).

1.40.    **General Unsecured Claim**. Any Claim against the Debtors that is (i) not an Administrative Claim, Priority Tax Claim, Secured Claim, Intercompany Claim, or Priority Non-Tax Claim, or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

1.41.    **GLAS.**  Garrison Loan Agency Services LLC, as agent for the Debtors' prepetition secured credit facility.

1.42.    **Governmental Unit**. The meaning specified in Bankruptcy Code section 101(27).

1.43.    **Halliburton.**  Multi-Chem Group, LLC, a Texas limited liability company.

1.44.    **Halliburton Adversary.**  Adversary proceeding number 17-1427 KHT pending in the Bankruptcy Court.

1.45.    **Halliburton Proof of Claim.**  Proof of claim number 36 filed in the bankruptcy case of Badlands Energy, Inc. (Case No. 17-17465-KHT).

1.46.    **Halliburton Secured Claim.**  Any Secured Claim asserted in the Halliburton Proof of Claim.  The Halliburton Secured Claim shall be Disputed on the Effective Date, subject to approval of the Halliburton Settlement.

1.47.    **Halliburton Settlement.**  The settlement of the Halliburton Adversary and any potential objections (either formal or informal) to the Halliburton Proof of Claim, subject to Court approval on notice under Bankruptcy Rule 9019, allowing Halliburton a Secured Claim of $550,000.00, and a general unsecured claim for the balance of the Halliburton Proof of Claim, along with mutual releases of all Claims, Causes of Actions and Avoidance Actions by and among the Debtors, Trustee, GLAS, and Halliburton.  **.**

1.48.    **Holder**. The owner or holder of any Claim or Interest.

1.49.    **Intercompany Claim**. A Claim of one Debtor against another Debtor.

1.50.    **Interest**. With respect to the Debtors, any "equity security" as such term is defined in section 101(16) of the Bankruptcy Code, whether or not asserted, of any equity security holder of the Debtors, as defined in section 101(17) of the Bankruptcy Code.  Interest shall also include, without limitation, all stock, partnership, membership

6

interest, warrants, options or other rights to purchase or acquire any equity interests in a Debtor.

1.51. **Law**. Any law, rule, regulation, order, decree or other requirement having the force of law and, where applicable, any interpretation thereof by an authority having jurisdiction with respect thereto or charged with administration thereof.

1.52. **Lien**. A judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section 101(51) of the Bankruptcy Code; a statutory lien as defined in section 101(53) of the Bankruptcy Code; and any other lien, interest, charge or encumbrance.

1.53. **Net Proceeds.** With respect to the sale of any property of the Trust Estate, the proceeds of such sale remaining after payment of customary closing costs, Allowed priority tax claims, brokerage fees, marketing costs, title company charges, recording fees, and the fees and expenses of the Trustee and its professionals and other agents that are attributable to such sale.

1.54. **Person**. The meaning set forth in section 101(41) of the Bankruptcy Code.

1.55. **Petition Date**. August 11, 2017.

1.56. **Plan**. This second amended joint chapter 11 plan of liquidation, including exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.57. **Plan Supplement**. A separate volume of documents that may be filed with the Bankruptcy Court not less than seven (7) days prior to the Confirmation Hearing.

1.58. **Priority Non-Tax Claim**. Any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.59. **Priority Tax Claim**. Any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.60. **Pro-Rata Share**. At any time, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims (including Disputed Claims, but excluding Disallowed Claims) in that particular Class, unless the Plan provides otherwise.

1.61. **Property**. All property and interests in property of the Estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtors or acquired by the Estates as defined in Section 541 of the Bankruptcy Code.

7

**1.62.**   **Purchased Assets**. The assets of the Debtors sold to the Purchasers pursuant to the Sale Transactions.

**1.63.**   **Purchasers**. Collectively, Wapiti Utah, LLC and Crescent Point US Corporation.

**1.64.**   **Released Parties**. Collectively, (i) Garrison Loan Agency Services LLC; (iii) each of the lender affiliates of Garrison Loan Agency Services LLC for which Garrison Loan Agency Services LLC serves as administrative agent, including, without limitation, Garrison Funding 2013-2 Ltd, GMMF Loan Holdings LLC, Garrison GMM Loan Holdco LLC, and Garrison Capital Inc., (iv) and with respect to each of the entities in clauses (i) through (iv) such entities' agents, advisors, employees, officers, directors, representatives, members, financial advisors, attorneys, accountants, consultants and other professionals, in each case solely in their capacity as such.

**1.65.**   **Sale Proceeds**. The proceeds of the Sale Transactions.

**1.66.**   **Sale Transactions**. Collectively, the Crescent Point Sale Transaction and the Wapiti Utah Sale Transaction.

**1.67.**   **Schedules**. The schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date.

**1.68.**   **Secured Claim**. All Allowed Claims secured by a valid, perfected, and enforceable lien that is not subject to avoidance or subordination under the Code or applicable non-bankruptcy law, but only to the extent of the value (determined in accordance with section 506(a) of the Code) of the Claimant's interest in the Debtors' interest in the specific property of the bankruptcy estate to which the lien attaches.

**1.69.**   **Secured Tax Claim Reserve**. A reserve established to satisfy the estimated amount of Allowed Class 1A Secured Tax Claims existing on the Effective Date.  The amount of the Secured Tax Claim Reserve shall be approximately $600,000 or as otherwise set forth in the Plan Supplement.  Any amounts within the Secured Tax Claim Reserve that are not needed to satisfy Allowed, Class 1A Secured Tax Claims shall be transferred to the Secured Garrison Claim Reserve and shall be immediately due and payable to holders of Class 1B Garrison Secured Claims.  No portion of funds within the Secured Tax Claim Reserve may ever constitute Unencumbered Trust Cash.

**1.70.**   **Secured Garrison Claim Reserve**. A reserve, in an amount not less than $8,500,000 (eight million and five hundred thousand dollars), established to fund distributions in respect of Class 1B Garrison Secured Claims on the Effective Date or as

otherwise set forth in the Plan Supplement.  The Secured Garrison Claim Reserve balance shall be supplemented with: (i) any portion of the Secured Tax Claim Reserve that is not needed to satisfy Allowed, Class 1A Secured Tax Claims; (ii) any portion of the Secured Other Claim Reserve that is not needed to satisfy Allowed, Class 1D Secured Other Claims; and (iii) any proceeds of Garrison's collateral that were funded into the Wind-Down Reserve and are not needed to satisfy Allowed Administrative Claims, Allowed Priority Tax Claims, or Allowed Priority Non-Tax Claims.  Any supplement to the Garrison Secured Claim Reserve shall be immediately payable to the holders of Class 1B Garrison Secured Claims.  No portion of funds within the Secured Garrison Claim Reserve may ever constitute Unencumbered Trust Cash.

1.71.    **Secured Other Claim Reserve**.  A reserve established to satisfy the alleged amount of Allowed Class 1D Secured Other Claims.  Each of the Class 1D Secured Other Claims shall be Disputed on the Effective Date.  The amount of the Secured Other Claim Reserve, if any, shall be set forth in the Plan Supplement.  Any amounts within the Secured Other Claim Reserve that are not needed to satisfy Allowed, Class 1D Secured Other Claims shall be transferred to the Secured Garrison Claim Reserve, and shall be immediately due and payable to holders of Class 1B Garrison Secured Claims.  No portion of funds within the Secured Other Claim Reserve may ever constitute Unencumbered Trust Cash.

1.72.    **Tax Code**. Title 26 of the United States Code, as amended from time to time.

1.73.    **Trust**. The Badlands Liquidating Trust, established as a grantor trust pursuant to this Plan and the Badlands Liquidating Trust Agreement.

1.74.    **Trustee.** Any individual or entity designated pursuant to the Badlands Liquidating Trust Agreement as the fiduciary responsible for administration of the Trust.

1.75.    **Trust Assets.** All assets of the Debtors, excluding the Purchased Assets, which shall be transferred to the Trust and held and administered by the Trustee in trust for the Holders of Allowed Claims, as provided in Article 8.

1.76.    **Trust Estate.** As defined in the Badlands Liquidating Trust Agreement.

1.77.    **Trust Oversight Committee**. A committee, appointed pursuant to Section 8.6 of the Plan, which will oversee the Trustee's administration of the Trust and Trust Assets.  The identity of the persons or entities comprising the Trust Oversight Committee, other than or in addition to GLAS, shall be set forth in the Plan Supplement.

1.78.    **Unencumbered Trust Cash**.  All Cash of the Trust that (i) is not subject to a lien or security interest securing a Secured Claim; (ii) does not otherwise constitute proceeds of Collateral; and (iii) does not constitute funds for the Secured Tax Claim

9

Reserve, Secured Garrison Claim Reserve, Secured Other Claim Reserve, or Wind-Down Reserve (or any portion of the Disputed Claims Reserve corresponding to such reserves). The Unencumbered Trust Cash shall include the Unencumbered Trust Cash GLAS Deposit.

1.79.    **Unencumbered Trust Cash GLAS Deposit**.  A \$25,000 (twenty five thousand dollar) deposit funded from the Sale Proceeds as agreed by GLAS and as consideration for the releases under this Plan.

1.80.    **Unexpired Lease**. A lease of nonresidential real or personal property to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.81.    **Wapiti Utah APA.** That certain Asset Purchase Agreement dated August 7, 2017 among Debtor Badlands Production Company, as the Seller, and Wapiti Utah, LLC, as Buyer.

1.82.    **Wapiti Utah Sale Order.** The Order (A) Approving Asset Purchase Agreement between Debtor Badlands Production Company and Wapiti Utah, LLC, (B) Authorizing the Sale of Substantially all Property Pursuant Thereto Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief pursuant to which the Crescent Point Sale Transaction was approved by the Bankruptcy Court.

1.83.    **Wapiti Sale Transaction.** The sale of substantially all of the assets of Debtor Badlands Production Company to Wapiti Utah, LLC pursuant to the Wapiti Utah APA and the Wapiti Utah Sale Order, and including the sale of the field office assets of Myton Oilfield Rentals, LLC to Wapiti Utah, LLC pursuant to the separate Court's November 20, 2017, Order (A) Approving Real Estate Sale Contract Between Myton Oilfield Rentals, LLC and Wapiti Utah, LLC, (B) Authorizing Sale of Substantially All Property Pursuant Thereto, Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Granting Related Relief.

1.84.    **Wind-Down Reserve.**  A reserve established to satisfy: (i) estimated Allowed Administrative Claims existing as of the Effective Date (other than Allowed Garrison Adequate Protection Administrative Claims) and fees of the United States Trustee under 28 U.S.C. § 1930 payable as of and following the Effective Date**; (ii) estimated Priority Tax Claims existing on the Effective Date; and (iii) estimated Priority Non-Tax Claims existing on the Effective Date.  The amount of the Wind-Down Reserve shall be approximately \$600,000, or as otherwise set forth in the Plan Supplement.  Any amounts within the Wind-Down Reserve that are not needed to satisfy Allowed Administrative Claims, Allowed Priority Tax Claims, or Allowed Priority Non-Tax Claims shall be transferred to the Secured Garrison Claim Reserve and shall be immediately due and payable to holders of Class 1B Garrison Secured**

Claims.  **No portion of funds within the Wind-Down Reserve may ever constitute Unencumbered Trust Cash.**

1.85.    **Interpretation, Application of Definitions and Rules of Construction**. Except as otherwise provided in the Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan. Wherever the context requires, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Terms used but not defined in the Plan shall have the meanings ascribed to such terms by the Bankruptcy Code or the Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Article, Section, or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize, limit, or expand the generality of the class within which such things are included. Any references to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns. Captions and headings to articles, Sections and exhibits are inserted for convenience of reference only, are not a part of the Plan, and shall not be used to interpret the Plan.

**ARTICLE II**
**TREATMENT OF UNCLASSIFIED CLAIMS**

2.1.    **Administrative Claims**. Subject to the deadline described in Section 2.2 and other provisions herein and except to the extent the Debtor and the holder of an Allowed Administrative Claim (including, without limitation, any Holder of an Allowed Garrison Adequate Protection Administrative Claim) agree to different and less favorable treatment, the Debtor shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash from the Wind-Down Reserve and/or Unencumbered Trust Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date or (ii) the first Business Day after the date that is 30 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid solely from the Wind-Down Reserve and other Unencumbered Trust Cash.

2.2.    **Administrative Claim Bar Date**. Any Entity seeking allowance of an Administrative Claim shall prepare a final application for all fees and expenses incurred through the Effective Date, and shall file and serve such application no later than: (i) for any Administrative Claim, other than a Garrison Adequate Protection Administrative Claim, the date that is thirty (30) days after the Effective Date; and (ii) for any Garrison Adequate Protection Administrative Claim, the date that is one hundred and twenty (120) days after the Effective Date.  **FAILURE TO TIMELY FILE SUCH APPLICATION SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED**

11

**AND DISCHARGED.**  Objections to any application filed pursuant to this subsection must be filed and served no later than twenty-one (21) days after service of such application.  As soon as practicable after the Bankruptcy Court enters an order allowing an Administrative Claim pursuant to application made under this subsection, the Trustee shall pay the Claimant the unpaid Allowed amount of such claim in accordance with Section 2.1.  Any such Administrative Claim bar date may be extended by further order of the Bankruptcy Court for cause shown.

2.3.    **U. S. Trustee Fees**.  Administrative Claims for U.S. Trustee Fees owing by any Debtor to the extent Allowed shall be paid in accordance with 28 U.S.C. § 1930. Administrative Claims for U.S. Trustee fees due and owing under 28 U.S.C. § 1930 shall be paid solely from the Wind-Down Reserve and other Unencumbered Trust Cash. All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, and all fees payable pursuant 28 U.S.C. § 1930 after the Effective Date shall be paid on a quarterly basis until the chapter 11 cases (as substantively consolidated under this Plan) are closed, converted, or dismissed. The reorganized Debtors and the Trust shall be jointly and severally liable for the payment of all quarterly fees and the Trustee shall file with the Court and provide the United States Trustee with post-confirmation quarterly reports that shall include all of the Trust's disbursements for that quarter.

2.4.    **Priority Tax Claims**. Each holder of a Priority Tax Claim Allowed pursuant to § 507(a)(8) of the Code will be paid from the Wind-Down Reserve and other Unencumbered Trust Cash: (a) in Cash on the Effective Date; or (b) in regular installment payments over time, commencing on the first Business Day of the month following the Effective Date, and annually thereafter, in an aggregate principal amount equal to the amount of its Allowed Claim, plus interest on the unpaid portion thereof at the rate of five percent (5%) per annum from the Effective Date through the date of payment thereof; or (b) receive such other treatment as to which the Debtors (or the Trustee, after the Effective Date) and the Claimant have agreed in writing. All Allowed Priority Tax Claims shall be paid no later than five (5) years from the date of the first payment pursuant to this section, but the Trustee shall have the right to pay any Allowed Priority Tax Claim, or any unpaid portion thereof, in full at any time after the Effective Date without premium or penalty.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

3.1.    **Summary and Classification of Claims and Interests**.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described above, have not been classified and are not entitled to vote on the Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest

12

falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1A | Secured Tax Claims | Unimpaired | No |
| Class 1B | Secured Claims–Garrison | Impaired | Yes |
| Class 1C | Secured Claims–Halliburton | Impaired | Yes |
| Class 1D | Secured Claims–Other | Unimpaired | No |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Intercompany Claims | Impaired | No (deemed to reject) |
| Class 5 | Interests | Impaired | No (deemed to reject) |

**3.2.    Classification and Treatment of Classified Claims**.

(a)    **Class 1A - Secured Tax Claims** . Provided that the holder of a Class 1A Secured Claim has not yet been paid, on the later of (A) the Effective Date and (B) for Claims in Class 1A that were Disputed Claims on the Effective Date and have thereafter become Allowed Secured Claims, immediately following the date upon which such Claims became Allowed Secured Claims, or as soon thereafter as is practicable, holders of each such Allowed Secured Claim shall receive, at the sole discretion of the Trustee, (1) Cash from the Secured Tax Claim Reserve in an amount not to exceed the amount of such Allowed Secured Claim, (2) the Collateral securing such Allowed Secured Claim (in which case any deficiency claim shall become a Class 3 General Unsecured Claim), or (3) such other treatment as may be agreed upon by the Debtors or the Trustee and the holder of such

13

Allowed Secured Claim, provided that the holder of such Allowed Secured Claim will not receive more than the value of the Collateral securing such Claim. Secured Tax Claims shall, until satisfied pursuant to the Plan, retain their pre-Effective Date liens upon the applicable Collateral, notwithstanding the transfer of Trust Assets to the Trust on the Effective Date.

(b)     **Class 1B - Secured Claims-Garrison**.   On the Effective Date, the Garrison Secured Claim shall be an Allowed Secured Claim in the amount of no less than $33,428,641.96, or such other amount as may be provided in the Plan Supplement with the consent of GLAS.   Notwithstanding its allowance in this amount, the Garrison Secured Claim shall be treated as set forth herein, with a portion of Collateral that would otherwise secure the Class 1B Garrison Secured Claim being used to fund the Wind-Down Reserve and the Unencumbered Trust Cash GLAS Deposit.   Provided that the holder of a Class 1B Garrison Secured Claim has not yet been paid from the Sale Proceeds, on the Effective Date, holders of each such Allowed Garrison Secured Claim shall receive (1) the Collateral securing such Allowed Garrison Secured Claim (but excluding any amounts in the Secured Tax Claim Reserve, Secured Other Claim Reserve, the Unencumbered Trust Cash GLAS Deposit, and Wind-Down Reserve), including all of the Cash in the Secured Garrison Claim Reserve, in any event not to exceed the amount of such Allowed Secured Claim (with any Deficiency Claim of GLAS and its constitutent lenders becoming a Class 3 General Unsecured Claim), or (2) such other treatment as may be agreed upon by the Debtors or the Trustee and the holder of such Allowed Garrison Secured Claim, provided that the holder of such Allowed Secured Claim will not receive more than the value of the Collateral securing such Claim. Class 1B Garrison Secured Claims shall, until satisfied pursuant to the Plan, retain their pre-Effective Date liens upon the applicable Collateral, notwithstanding the transfer of Trust Assets to the Trust on the Effective Date.

(c)     **Class 1C - Secured Claims-Halliburton**.   The Halliburton Secured Claim shall be Disputed on the Effective Date, subject to approval of the Halliburton Settlement.   Upon approval of the Halliburton Settlement, the Halliburton Secured Claim shall be $550,000, and Halliburton shall have an Allowed General Unsecured Claim for the  balance of the Halliburton Proof of Claim. Unless otherwise agreed to by the parties to the Halliburton Adversary as part of a settlement approved by the Court, no Holder of a Halliburton Secured Claim shall be entitled to any distribution in respect of such alleged Secured Claim on the Effective Date unless and until a Final Order is entered either: (i) approving the Halliburton Settlement, or (ii) determining that any Secured Claims asserted in the Halliburton Proof of Claim are Allowed and are secured by liens that are senior to the liens securing the Garrison Secured Claims. Within three (3) business days after the date of a Final Order either: (a) approving the Halliburton Settlement; or (b) determining that claims alleged in the Halliburton Proof of

14

Claim are Allowed Claims secured by liens that are senior to the liens securing the Garrison Secured Claims, the Debtors or the Trustee shall pay Halliburton an amount equal to the amount of Halliburton Secured Claim. If all or any portion of Halliburton's liens are determined to be junior to any liens securing the Garrison Secured Claims, Halliburton shall have an unsecured claim not to exceed the amount stated in the Halliburton Proof of Claim, subject to any objections asserted by the Debtors or the Trustee, and which unsecured claim shall be Allowed by agreement of the parties, or by Final Order of the Bankruptcy Court.

(d)     **Class 1D - Secured Other Claims**. Each of the Secured Other Claims shall be Disputed on the Effective Date.  In the event that a Secured Other Claim becomes an Allowed Secured Claim, immediately following the date upon which such Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable, such holder of an Allowed Secured Claim shall receive, at the sole discretion of the Trustee, (1) Cash from the Secured Other Claim Reserve in an amount not to exceed the amount of such Allowed Secured Claim, (2) the Collateral securing such Allowed Secured Claim (in which case any deficiency claim shall become a Class 3 General Unsecured Claim), or (3) such other treatment as may be agreed upon by the Debtors or the Trustee and the holder of such Allowed Secured Claim, provided that the holder of such Allowed Secured Claim will not receive more than the value of the Collateral securing such Claim. Allowed Secured Other Claims shall, until satisfied pursuant to the Plan, retain their pre-Effective Date liens upon the applicable Collateral, notwithstanding the transfer of Trust Assets to the Trust on the Effective Date.

(e)     **Class 2 - Priority Non-Tax Claims**. Each holder of an Allowed Class 2 Priority Non-Tax Claim shall receive Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Priority Non-Tax Claim on the Effective Date or as soon thereafter as is practicable, payable solely from the Wind-Down Reserve and other Unencumbered Trust Cash.

(f)     **Class 3 - General Unsecured Claims**.  Following the expiration of the Claim Objection Deadline, as soon as the sum of all Allowed General Unsecured Claims has been determined, holders of Allowed General Unsecured Claims shall receive their Pro-Rata Share of Unencumbered Trust Cash from time to time, at the discretion of the Trustee, after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.  Notwithstanding any other provision of the Plan, holders of Allowed General Unsecured Claims shall not be entitled to receive any payment of Cash on account of Allowed General Unsecured Claims until the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims have received payment on account of such Allowed Claims or such Allowed Claims have been fully reserved for in accordance with the Plan, and any

15

Disputed General Unsecured Claims have been reserved for in accordance with the Plan. No distributions or payments shall be made in respect of General Unsecured Claims until after the expiration of the Claim Objection Deadline.

**(g)** **Class 5 - Intercompany Claims**. Intercompany Claims, if any, are eliminated and Holders of Intercompany Claims will not receive a distribution of property or interest in property under the Plan.

**(h)** **Class 6 - Interests**. All equity interests in the Debtors will be cancelled on the Effective Date.

## ARTICLE IV
## COMPROMISES AND SETTLEMENTS

**4.1.** **Settlements Generally**. Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim against or Interest in any of the Debtors may have with respect to any Allowed Claim or Interest as to any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.

The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an order of the Bankruptcy Court finding and determining that the settlements provided for in the Plan are (a) in the best interests of creditors and the Estates, (b) fair, equitable, and reasonable, (c) made in good faith, and (d) approved by the Bankruptcy Court. All Final Orders entered by the Bankruptcy Court approving any compromises, stipulations, or settlements in the Debtors' Chapter 11 Cases prior to the Effective Date shall remain in effect and shall be binding according to their terms.

**4.2.** **Settlement of Litigation and Sale Transactions**. To the extent not otherwise finally settled on or before the Effective Date, the Debtors and the Trustee shall retain all of the estate's rights, titles, and interests, related to any settlement or compromise of pending litigation and disputes related to the Sale Transactions, and may, subject to compliance with the other requirements of the Plan, enter into such additional agreements to compromise any Disputed Claims relating to the Sale Transactions.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

**5.1.** **Assumed Contracts.** Under the Plan, and except as provided in any Final Orders entered by the Court before the Effective Date related to the Crescent Point Sale Transaction, the Wapiti Sale Transaction, and the Debtors' lease and sub-lease for

property located at 7979 East Tufts Avenue, Suite 1150, Denver, Colorado 80237, no Executory Contracts and Unexpired Leases will be assumed and assigned on the Effective Date. No executory Contracts or Unexpired Leases will be assumed and assigned to the Trust under the Plan.

**5.2.     Rejected Contracts**.  The Debtors will be conclusively deemed to have rejected all remaining executory contracts and/or unexpired leases on the Effective Date except as provided in this Plan and Final Orders of the Court.

**5.3.     Bar Date for Rejection Damage Claims.** Any and all proofs of claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed within thirty (30) days after the Effective Date. Any proof of Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not timely filed shall be disallowed automatically and forever barred, estopped and enjoined from assertion and shall not be enforceable against the Debtors, the Estates or the Trust or their respective Property or Trust Assets, without the need for any objection or any further notice to or action, order or approval of the Bankruptcy Court, and any Claim arising out the rejection of the Unexpired Lease or Executory Contract or shall be deemed fully satisfied and released notwithstanding anything in the Schedules or a proof of claim to the contrary. All Allowed Claims arising from the rejection of an Unexpired Lease or Executory Contract shall be treated as Class 3 General Unsecured Claims for purposes of a distribution pursuant to the Plan.

**ARTICLE VI**
**PROVISIONS GOVERNING ALLOWANCE AND DISALLOWANCE OF**
**CLAIMS AND DISTRIBUTIONS**

**6.1.     Disallowance of Claims**. Except as otherwise agreed by the Trustee, any and all proofs of Claim filed after the Bar Date shall be deemed disallowed as of the Effective Date without any further notice to, or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late proof of Claim is deemed timely filed by a Final Order of the Bankruptcy Court. Nothing herein shall in any way alter, impair or abridge the legal effect of the Bar Date or the rights of the Debtor or the Trustee to object to Claims (except to the extent such claims are Allowed Claims pursuant to a Final Order of the Court) on the grounds that they are time barred or otherwise subject to disallowance, subordination or modification.

**6.2.     Claim Objections**. Objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made pursuant to the Code, the Bankruptcy Rules, or any applicable non-bankruptcy law no later than the Claim Objection Deadline. The Debtors, the Trustee, and any other party-in-interest shall have full right, power and authority to investigate and, if necessary,

17

object to claims prior to the Claim Objection Deadline.  The Claim Objection Deadline may be extended by further order of the Court.

6.3.    **Litigation and Settlement of Claims**. Subject to the terms of the Plan, objections to Claims may be litigated to judgment, settled, or withdrawn. Only the Trustee shall have the authority to settle claims.  With respect to any settlement of a General Unsecured Claim involving an amount of $20,000 or less, no notice to creditors, or approval by the Bankruptcy Court, of the settlement will be required.  With respect to any General Unsecured claim involving an amount greater than $20,000, or any objection to any Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Tax Claims, or Secured Other Claims, settlement by the Trustee of any objection to any claim shall be permitted on the fourteenth (14th) day after notice of the settlement has been provided by the Trustee to the objector, the holder of the claim, and the Trust Oversight Committee.  If on or before the objection deadline no written objection to the proposed settlement is submitted to the Trustee, such settlement shall be conclusively approved.  If a written objection to the proposed settlement is submitted before the objection deadline, the Trustee and the objector shall confer to reach a consensual resolution of the dispute. If no resolution is reached within fourteen (14) days after the Trustee's receipt of the objection, the Trustee shall file an application with the Bankruptcy Court to approve the settlement and the settlement shall be subject to approval by the Bankruptcy Court (in accordance with the standards developed under Bankruptcy Rule 9019) and upon notice to the objecting party.

6.4.    **Manner of Distributions**. Distributions in respect of General Unsecured Claims shall be made solely from the Trust Estate whenever reasonably ascertainable in the sole opinion of the Trustee, and solely to the extent of Unencumbered Trust Cash. Distributions in respect of other Claims shall be made at the time and in the manner called for under the Plan.  Distributions to a Holder of an Allowed Claim will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any Holder of an Allowed Claim that wishes to receive a cash payment by wire transfer shall provide wire instructions to the Trustee. In any such case, the Trustee shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided, that, the costs of such wire transfer shall be deducted from such entity's distribution.  Distributions shall be made: (i) at the addresses set forth in the proofs of claims filed by claimants (or the last known addresses of such claimants if no proof of claim is filed or if the Trustee has been notified of a change of address); (ii) at the addresses set forth in written notices of address change delivered to the Trustee after the date of any related proof of claim; or (iii) at the addresses reflected in the Schedules if no proof of claim has been filed and the Trustee has not received a written notice of change of address.

6.5.    **No Distribution Pending Allowance**. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or

distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

6.6.    **Estimation of Claims**. For purposes of making distributions provided for under the Plan, all Disputed Claims may be estimated by the Trustee at an amount equal to (i) such lesser amount that is agreed to by the holder of such claim, (ii) the amount claimed if the Court has not made an estimation of such claim or the holder of such claim has not agreed to a lesser amount, or (iii) the amount, if any, determined by the Court pursuant to § 502(c) of the Code as an estimate for distribution purposes.  In any event, the estimated amount shall be the maximum amount of the claim for distribution purposes under this Plan and any order of the Bankruptcy Court estimating the claim shall also set the maximum amount of the claim if it becomes an Allowed Claim.  The Trustee shall create a Disputed Claims Reserve sufficient to pay estimated claims when and if they become Allowed Claims. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any claim so estimated until such claim is an Allowed Claim.

6.7.    **Unclaimed Distributions**.

(a)    **Undeliverable Distributions**. In the event that any distribution to any Holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Trustee is notified of such Holder's then-current address. If any Holder of an Allowed Claim does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder of an Allowed Claim entitled thereto, such unclaimed property shall be deemed to be forfeited by such Holder, whereupon all right, title and interest in and to the unclaimed property shall be held by the Trustee and any Holder thereof shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtor, the Trust Estate, and the Trustee. In such cases, (i) with respect to any distribution made from Unencumbered Trust Cash, the Unencumbered Trust Cash that was to be distributed will become Property of the Trust Estate free and clear of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary and shall be distributed in accordance with the terms of the Plan; and (ii) with respect to any distribution made from any other source, such proceeds shall instead be paid to satisfy the Garrison Secured Claim. Nothing contained in the Plan or otherwise shall require any of the Debtors or the Trustee to attempt to locate any Holder of an Allowed Claim.

(b)    **Time Bar to Cash Payments**. In the event that any distribution to any Holder of an Allowed Claim made by check is not cashed within sixty (60) days after issuance thereof, a stop payment order shall be given with respect to such check rendering the check null and void. Requests for reissuance of any check

19

subject to a stop payment order shall be made in writing to the Trustee by the Holder of such Allowed Claim to whom such check originally was issued. Any claim in respect of such voided check shall be made on or before thirty (30) days after the sixty (60) day period following the date of issuance of such check. If any Holder of an Allowed Claim does not assert a claim pursuant to this Plan for reissuance of a voided check within such period, the amount represented by such voided check shall be deemed to be forfeited by such Holder, and any Holder thereof shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtor, the Trust Estate, and the Trustee. In such cases; (i) with respect to any distribution made from Unencumbered Trust Cash, the Unencumbered Trust Cash that was to be distributed will become Property of the Trust Estate free and clear of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary and shall be distributed in accordance with the terms of the Plan; and (ii) with respect to any distribution made from any other source, such proceeds shall instead be paid to satisfy the Garrison Secured Claim;  notwithstanding any federal or state escheatment laws to the contrary.

**6.8.**     **Withholding Taxes**. The Trustee shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution, the Trustee will issue an IRS Form 1099. Notwithstanding any other provision of the Plan, each Entity receiving a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

**6.9.**     **Fractional Cents**. Any other provision of the Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

**6.10.**     **De Minimis Distributions**. The Trustee shall not be required to make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed General Unsecured Claim. To the extent that any interim distribution is not paid on an Allowed General Unsecured Claim on the grounds that it amounts to less than twenty-five dollars ($25.00), the amount of such withheld distribution shall be reserved for addition to any future distribution and may be made at that time if the total distribution is at least twenty-five dollars ($25.00), or as the final distribution on such Allowed General Unsecured Claim.

**6.11.**     **Setoffs**. Nothing in this Plan shall expand or enhance a Creditor's rights of setoff and recoupment, which shall be determined as of the applicable Petition Date.

20

Nothing in this Plan is intended to, or shall be interpreted to, approve any Creditor's effectuation of a post-petition setoff or recoupment without the consent of the Debtor or the Trustee unless prior Bankruptcy Court approval has been obtained. Except as otherwise provided for herein, with respect to Causes of Action or Avoidance Actions released by or on behalf of the Estates pursuant to the Plan and the Confirmation Order, the Trustee may, but shall not be required to, exercise its right setoff and recoupment, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable nonbankruptcy law, against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, Causes of Action, or Avoidance Action of any nature whatsoever that the Trust Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim shall constitute a waiver or release by the Debtor, the Trustee or the Trust Estate of any Claim it may have against the Creditor.

## ARTICLE VII
## EFFECTIVENESS OF THE PLAN

**7.1.    Condition Precedent to Confirmation of Plan**. The following are conditions precedent to the confirmation of the Plan:

(a)    The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtors.

(b)    All exhibits to the Plan are in the form and substance reasonably satisfactory to the Debtors.

**7.2.    Conditions Precedent to Effective Date**. The following are conditions precedent to the Effective Date of the Plan:

(a)    The Confirmation Order shall have become a Final Order;

(b)    The Confirmation Order, in form and substance reasonably satisfactory to the Debtors has been entered and is not stayed;

(c)    All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, inform and substance satisfactory to the Debtors;

(d)    All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked;

(e)    the Trustee shall have accepted appointment as Trustee for the Trust; and

(f)     Any modifications to the Plan are in a form acceptable to the Debtors.

**7.3.     Waiver of Conditions**. The Debtors, in writing, may at any time, without notice or authorization of the Bankruptcy Court, waive one or more of the conditions set forth in Sections 7.1 and 7.2 of the Plan.

**7.4.     Satisfaction of Conditions**. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously. If the Debtors decide that one of the conditions precedent set forth in Section 7.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**7.5.     Notice of Effective Date**. On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors shall file with the Bankruptcy Court a "Notice of Effective Date", which notice shall constitute appropriate and adequate notice that the Plan has become effective. Failure to timely file the notice shall not in any way affect the effectiveness of the Plan.

**7.6.     Request for Waiver of Stay of Confirmation Order**. The Plan shall serve as a motion seeking a waiver of the stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e). Any objection to this request for waiver shall be filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules or as otherwise ordered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

**7.7.     Sale Transactions**. Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed to modify or otherwise affect the terms and conditions of the Sale Transactions. In the event of a conflict between the Plan, on the one hand, and the Sale Transactions, on the other hand, the terms of the Sale Transactions shall control.

**ARTICLE VIII**
**MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

**8.1.     Substantive Consolidation.** On and subject to the occurrence of the Effective Date, this Plan shall substantively consolidate the Debtors' Estates. Resultantly, solely for purposes of administering the Consolidated Estates and making distributions under this Plan and the Badlands Liquidating Trust Agreement, (a) all assets and liabilities of the Debtors shall be pooled, and (b) any and all Intercompany Claims shall be disregarded. Accordingly, duplicative Claims Filed against the Debtors, including guaranty claims, claims sounding in tort that purport to recover the same, or substantially the same, damages as other Claims, and Claims that purport to establish joint and several liability, shall be expunged and disallowed upon the Effective Date, and the Holder of

22

any Claims shall receive a single recovery on account of any such joint or duplicative obligations. The treatment of the Estates as if they were substantively consolidated solely for the purpose of administering the Consolidated Estates and making distributions under this Plan shall not, and shall not be deemed to, affect or constitute a waiver of the mutuality requirement for setoff under Section 553 of the Bankruptcy Code, except to the extent otherwise expressly waived by the Trustee in writing. Except to the extent expressly released in the Plan, all Claims, Causes of Action, Avoidance Actions or rights of the Chapter 11 Trustee under applicable law to avoid transfers of the property of any of the Debtors are and shall be preserved under the Plan.

**8.2.    Order Granting Substantive Consolidation.** This Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors as described in Section 8.1 above. Any objection to this request for substantive consolidation shall be Filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules or as otherwise ordered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at the Confirmation Hearing. Entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, effective as of the Effective Date, of the substantive consolidation of the Debtors for Plan purposes. The Confirmation Order shall constitute approval of the Bankruptcy Court of the substantive consolidation of the Debtors, and the relief accorded under Section 8.1 shall be effective as of the Effective Date.

**8.3.    Vesting of Assets in Trust and Abandonment on the Effective Date.** As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, the Debtors shall transfer and assign all of their right, title, and interest in and to all of the Trust Assets, which shall automatically vest in the Trust free and clear of all Claims, Liens, encumbrances, charges, Equity Interests, and other interests, including any successor liability claims, and except for such Liens, charges and encumbrances set forth in the Plan**.**

**8.4.    Establishment of the Trust.** The Trust shall be established in accordance with the Plan and the Badlands Liquidating Trust Agreement.  For all U.S. Federal income tax purposes, all parties shall treat the Debtors' transfer of the Trust Assets to the Trust as a transfer of such assets by the Debtors to the holders of Allowed Claims under the Plan, and followed by a transfer by such holders to the Trust.  On and after the Effective Date, the Trust may operate and may use, acquire, and dispose of assets without supervision or approval by the Bankruptcy Court, provided, however, that (i) the Trust shall be entitled to have disputes resolved by the Bankruptcy Court in matters for which the Bankruptcy Court has retained jurisdiction; and (ii) the Trustee shall consult with the Trust Oversight Committee in advance of disposing any assets with a value of $10,000 or more.  Without any further action of any Entity, the Badlands Liquidating Trust Agreement shall become effective on the Effective Date. The terms of this Plan and the Badlands Liquidating Trust Agreement shall govern the operations of the Trust.

23

8.5.     **The Trustee.**  The identity of the Trustee as disclosed in the Plan, or in any Plan Supplement.  The Trustee shall be retained as the sole Trustee of the Trust for purposes of executing this Plan until all Trust Assets have been administered and Unencumbered Trust Cash has been distributed as provided herein and in the Badlands Liquidating Trust Agreement.  The Trustee shall be deemed to have been appointed as the Debtors' representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

8.6.     **The Trust Oversight Committee.**  On the Effective Date, the Trust Oversight Committee shall be appointed.  The Trust Oversight Committee shall consist of GLAS, as the largest single unsecured creditor, and any other creditor as ordered by the Court, and shall oversee the Trustee's administration of the Trust, liquidation of Trust assets, and reconciliation of Allowed Claims.  The Trust Oversight Committee shall: (i) have the right to access all reports, documents, memoranda, and other records of the Trustee; (ii) shall have the right to monitor the actions of the Trustee and receive status reports from the Trustee; and (iii) shall have the right of reimbursement of any reasonable, documented, out-of-pocket expenses incurred in connection with serving on the Trust Oversight Committee. The Beneficiaries (as defined in the Badlands Liquidating Trust Agreement) may monitor the activities of the Liquidating Trust and raise any concerns, first with the Trust Oversight Committee and the Trustee, and to the extent necessary thereafter, with the Court under applicable law.

8.7.     **Liquidation of Non-Cash Assets.**  With respect to non-cash assets of the Trust Estate, the Trustee shall have the duty to liquidate and convert to cash all non-cash portions of the Trust Estate, and distribute the proceeds thereof in accordance with the provisions of this Plan.  The Trustee, in consultation with the Trust Oversight Committee, shall exercise reasonable business judgment in liquidating all non-cash assets and shall attempt to liquidate the assets in an orderly manner and with a view towards maximizing the net proceeds thereof.  The Trustee, in consultation with the Trust Oversight Committee, shall have the authority (as provided in the Badlands Liquidating Trust Agreement) to abandon and not administer any non-cash asset of the Trust Estate that the Trustee determines in the exercise of reasonable business judgment to be burdensome to the Trust Estate or of inconsequential value and benefit to the Trust Estate.

8.8.     **Avoidance Actions; Litigation Claims.**  The Trustee shall be vested with standing to pursue any and all Causes of Action, Avoidance Actions, and litigation claims to recover assets and money on behalf of the Trust Estate in accordance with the following:

(a)     Pursuant to Code §1123 (b) (3) (B), and except for claims that are expressly waived or released by the Plan (including those as to the Released Parties), the Trust Estate and the Trustee shall be assigned and subrogated to each and every claim, right, demand or cause of action whatsoever of the Debtors, and their bankruptcy estates (whether pre- or post-petition) (all of which claims, rights,

demands and causes of action are hereby preserved), including, without limitation, actions for the avoidance and recovery pursuant to Code §550 of transfers avoidable by reason of Code §§ 544, 545, 547, 548, 549, 553(b), and may commence or continue in any appropriate court or tribunal, including the Bankruptcy Court, legal causes of action for collection of the same.

(b)    The Trustee shall exercise the authority granted by the Plan to investigate and pursue on behalf of the Trust Estate collection of any actions and claims, accounts receivable, and related actions, including the authority to compromise and settle any of such claims or actions.  No claimant or other party-in-interest shall have any entitlement, right or claim against the Trustee, or any of its agents, representatives, or employees, with respect to any collection, or failure to collect, any such actions or claims for the benefit of the Trust Estate.

(c)    Any recoveries (net of fees, costs and expenses) made on account of Avoidance Actions, Causes of Action, and other litigation Claims shall be deposited in the Trust Estate.  To the extent that such recoveries constitute proceeds of Avoidance Actions or other Causes of Action that do not constitute Collateral of any prepetition or postpetition creditor, such recoveries and shall be considered additions to the Unencumbered Trust Cash.  To the extent that such recoveries constitute proceeds of Causes of Action that serve as Collateral for any Garrison Secured Claims, such Collateral proceeds shall be distributed to the holders of Garrison Secured Claims.  To the extent that such recoveries constitute proceeds of Causes of Action that do not secure the Garrison Secured Claims, but instead secure Secured Tax Claims or Secured Other Claims, such recoveries shall be distributed to the applicable holder(s) of such Secured Claims, in order of lien priority.

8.9.    **Trustee's Employment of Professionals.**  The Trustee, in consultation with the Trust Oversight Committee, may retain such legal counsel, accountants, advisors, professionals or other persons as deemed necessary by the Trustee to assist the Trustee in fulfilling its duties hereunder or in exercising any of the Trustee's rights and powers hereunder (regardless of whether any such person is related to the Trustee or is otherwise affiliated with the Trustee in any manner, except as expressly provided herein). To the extent that the Trustee is licensed and capable of doing so, the Trustee may serve as its own attorney, accountant and/or tax specialist in conjunction with any of the rights, powers and duties of the Trustee under this Plan.

8.10.    **Compensation and Reimbursement of Trustee and Professionals.**  The Trustee or any professionals or any person retained by the Trustee pursuant to this Plan shall be entitled to reasonable compensation for services rendered at a rate reflecting actual time billed by such Trustee, professional or person on an hourly basis, at the standard billing rates for such services in effect at the time of service or such other rate of compensation that is reasonable (and shall also be entitled to reimbursement for

25

reasonable, out-of-pocket expenses incurred in connection with the provision of such services); provided, however, that the Trustee shall provide the Trust Oversight Committee with at least five (5) business days advanced notice before paying any compensation to any Trust professionals. Any compensation paid to the Trustee or any other Trust professionals may only be paid from Unencumbered Trust Cash.   No compensation may be paid to the Trustee or other Trust professionals from the Secured Tax Claim Reserve, Secured Garrison Claim Reserve, Secured Other Claim Reserve, or Wind-Down Reserve without the written consent of GLAS and the Trust Oversight Committee.

8.11.    **No Rights In Assets.**  The assets held by the Trust Estate shall be held by the Trustee in trust for the benefit of the Holders of Claims.  Consequently, the Plan does not create for, or give to, any claimant any direct interest or property right to any of the assets held by the Trust Estate, and no Holder of any Claim shall have any rights against any such assets until a distribution is made or required to be made to such Holder under the Plan.

8.12.    **Tax Treatment.** The Trust is intended to be treated, for federal income tax purposes, in part as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d), for the benefit of the Holders of Allowed Claims, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations section 1.468B- 9(b)(1), as more specifically provided for under the Badlands Liquidating Trust Agreement. Accordingly, for all federal income tax purposes the transfer of Trust Assets to the Trust will be treated as a transfer of the Trust Assets directly from the Debtors to the Holders of Allowed Claims and to the reserves established pursuant to the Plan, followed by the transfer of such Trust Assets. The Holders of Allowed Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Trust Assets and any earnings thereon. The Trustee will be required by the Badlands Liquidating Trust Agreement to file federal tax returns for the Trust as a grantor trust with respect to the portion of the Trust owned by Holders of Allowed Claims and as one or more disputed ownership funds with respect the portion of the Trust allocable to the claim reserves established hereunder, and any income of the Trust will be treated as subject to tax on a current basis. The Badlands Liquidating Trust Agreement will provide that the Trustee will pay such taxes from the Trust Assets. In addition, the Badlands Liquidating Trust Agreement will require consistent valuation by the Trustee and the Beneficiaries (as defined in the Badlands Liquidating Trust Agreement), for all federal income tax purposes, of any property transferred to the Trust. The Badlands Liquidating Trust Agreement will provide that termination of the trust will occur no later than five (5) years after the Effective Date, unless before termination the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Trust to complete its Claims resolution and liquidating purpose. The Badlands Liquidating Trust Agreement also will limit the investment powers of the Trustee in accordance with IRS Rev. Proc. 94-45 and will require the Trust to distribute at

least annually to the Beneficiaries (as such may have been determined at such time) its net income (net of any payment of or provision for taxes), except for amounts retained as reasonably necessary to maintain the value of the Trust Assets or to meet Claims and contingent liabilities (including Disputed Claims).

8.13.    **Limitation on Liability of Trustee.**  Subject to applicable law, the Trustee shall not be liable for any act it may do or omit to do as Trustee hereunder while acting in good faith and in the exercise of its reasonable judgment; nor shall the Trustee be liable in any event except for its own gross negligence or willful misconduct. The foregoing limitation on liability shall apply equally to the agents and/or employees of the Trustee acting on behalf of the Trustee in the fulfillment of the Trustee's duties hereunder.

8.15.    **Funding of the Plan. As of the date of this Plan, the Debtors project that the Trust Estate will consist of the following assets, with the associated estimated values:**

| Asset | Estimated Value |
| --- | --- |
| Cash | $10.2 MM |
| Personal Property, including accounts receivable | $400,000 (est.) |
| Avoidance Actions and other litigation claims | $750,000 (est.) |
| TOTAL: | $11.35 MM |

8.16.    **Preservation/Vesting of Rights of Action**. Except as expressly released or otherwise provided under the Plan, pursuant to Bankruptcy Code section 1123(b), the Trust Estate shall be vested on the Effective Date with and shall retain and may enforce any and all Avoidance Actions and Causes of Action that the Debtors or their Estates may hold or have against any entity, including (i) the Avoidance Actions, (ii) any legal or equitable rights to subordinate and/or disallow Claims, (iii) any derivative Causes of Action that may be brought by such Debtor; and (iv) any and all other Causes of Action of any kind or nature of such Debtor or its Estate that may exist as a consequence of applicable bankruptcy law or nonbankruptcy law (collectively, the "Retained Actions"). Except as expressly released or otherwise provided pursuant to the Plan, or agreed by the Trustee in writing, upon the Effective Date, the Trust Estate and only the Trust Estate shall have standing to assert the Retained Actions and the Trustee may prosecute Retained Actions, abandon Retained Actions, settle Retained Actions, dispose of Retained Actions, or assign the right to enforce designated Retained Actions in its sole discretion. Notwithstanding the foregoing, the Retained Actions shall not include any Claim, right or cause of action released pursuant to the Plan.

27

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.1.    Vesting of Assets**. Except as otherwise explicitly provided in the Plan, on the Effective Date, all Trust Assets or interest in Trust Assets owned by the Debtors' Estates shall revest in the Trust Estate free and clear of all Claims, Liens, charges, encumbrances, rights, and interests of creditors and equity security holders. As of and following the Effective Date, the Trustee may administer the Trust Estate under the terms and conditions of the Badlands Liquidating Trust Agreement, as amended or supplemented from time to time, without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**9.2.    No Discharge of the Debtors.** In accordance with § 1141(d)(3) of the Code, the Debtors will not receive any discharge of debt in these bankruptcy cases.

**9.4.    Injunction Against Interference with Plan**. Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**9.5.    Release by Debtors**.

**Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, the Debtors, their Estates, and their respective successors and assigns and any and all entities who may purport to claim through them, shall forever release, waive and discharge the Released Parties of any and all Claims, Avoidance Actions, and Causes of Action whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that the Debtors or their Estates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of any Holder of any Claim or other entity, that they have, had or may have against any Released Party existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, any of the Debtors, any prepetition or postpetition act taken or omitted to be taken in connection with or related to or arising out of the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the any of the Debtors and any party released under this Section 9.5, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases, including but not limited to, any Claim relating to, or arising out of the Chapter 11 Cases, the administration of the Chapter 11 Cases and all documents or pleadings filed herein, the negotiation and filing of the plan, the filing of the Chapter 11 Cases,**

DMNORTH #6560188 v1

the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Plan, the Disclosure Statement, exhibits, the Plan Supplement documents, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with the Plan. The reorganized Debtors, Trust, and Trustee shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above; provided, however, that the foregoing provisions of Section 9.5 shall have no effect on the liability of any party released hereunder that would otherwise result from (a) the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. The Debtors' releases of GLAS and the prepetition lenders follows similar releases that were effective under the Final Order approving the DIP Financing Motion, entered on September 14, 2017 [Docket No. 136].

9.6.    Exculpation.

Except as otherwise specifically provided in the Plan, exhibits, the Plan Supplement or related documents and to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Holder of a Claim against or Interest in the Debtors, or any other party-in-interest or any of their representatives, or any of their successors and assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of this Plan, or the consummation of this Plan. No Holder of a Claim against or Interest in the Debtors, or any other party-in-interest, including their respective representatives, successors, or assigns shall have any right of action against the Exculpated Parties for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of this Plan provided, however, that the foregoing provisions of Section 9.6 shall have no effect on the liability of any Exculpated Party that would otherwise result from (a) the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Nothing in this Section 9.6 shall be deemed to exculpate or release any Exculpated Party for any acts, omissions, transactions, events or other occurrences taking place after the Confirmation Date. Nothing in this Section 9.6 shall be deemed to exculpate or release any Exculpated Party to the extent that such exculpation or release is prohibited by Rule 1.8(h)(1) of the Colorado Rules of Professional Conduct.

9.7.    [Reserved].

DMNORTH #6560188 v1

## ARTICLE X
## RETENTION OF JURISDICTION

**10.1.    Jurisdiction of Bankruptcy Court**. The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine motions for the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases and the allowance of Claims resulting therefrom;

(b)    To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date; including, without limitation, any proceeding to recover a Cause of Action and Avoidance Actions;

(c)    To hear, adjudicate, determine and allocate the value(s) of any property owned or sold by the Estates and any liens asserted against such property; including, without limitation the Sale Proceeds;

(d)    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)    To hear and determine any issue or dispute arising under or related to the Sale Transactions, however, only to the extent such issue or dispute involves the Debtors;

(i)    To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

30

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan);

(n)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o)     To hear and determine any pending adversary proceedings as of the Effective Date (including the Halliburton Adversary);

(p)     To hear and determine matters concerning or impacting the administration of the Trust and the liquidation of the assets of the Trust; and

(q)     To enter a final decree closing the Chapter 11 Cases.

## ARTICLE XI
## CRAMDOWN RESERVATION

**11.1.     Nonconsensual Confirmation**. If any impaired class fails to accept the Plan by the requisite statutory majorities provided in sections 1126(c) and 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtors reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code and/or amend the Plan to the extent necessary to obtain entry of a confirmation order.

## ARTICLE XII
## OTHER PLAN PROVISIONS

**12.1.     Substantial Consummation**. On the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.2.    Trust Oversight Committee Reporting**. Promptly following request by the Trust Oversight Committee, the Trustee shall provide any reports, accountings, and other information reasonably requested by the Trust Oversight Committee concerning the Trust, the assets of the Trust, and the reconciliation of outstanding Claims.

**12.3.    Exemption from Transfer Taxes**. Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**12.4.    Payment of Statutory Fees**. On the Effective Date, and thereafter as may be required, the Trustee shall cause to be paid from the Wind-Down Reserve and other Unencumbered Trust Cash all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**12.5.    Modification of Plan**. The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Interests under the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that (i) such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests; and (ii) the Debtors provide at least three (3) business days notice of any such proposed changes to the persons that comprise (or will comprise) the Trust Oversight Committee.

**12.6.    Revocation or Withdrawal of Plan**. The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Debtors take such action, the Plan shall be deemed null and void.

**12.7.    Courts of Competent Jurisdiction**. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**12.8.**    **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Colorado shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of a Debtor shall govern corporate or other governance matters with respect to that Debtor, in either case without giving effect to the principles of conflicts of law thereof.

**12.9.**    **Exhibits**. All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**12.10.**    **Successors and Assigns**. All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**12.11.**    **Time**. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.12.**    **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**12.13.**    **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

DMNORTH #6560188 v1

**12.14.**   **Notices**. All notices, requests and demands to or upon the Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> If to the Debtors:
>
>> BALLARD SPAHR LLP
>> Theodore J. Hartl, #32409
>> 1225 17th Street, Suite 2300 South
>> Denver, CO, 80202-5596
>> Telephone: (303) 454-0528
>> Facsimile: (303) 573-1956
>> Email: hartlt@ballardspahr.com
>
> If to Trustee:
>
>> WADSWORTH WARNER CONRARDY, P.C.
>> David V. Wadsworth
>> 2580 West Main Street, Suite 200
>> Littleton, CO 80120
>> Telephone: (303) 296-1999
>> Facsimile: (303) 396-7600
>> Email: dwadsworth@wwc-legal.com

**12.15.**   **Entire Agreement**. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

Dated:  August 7, 2018

Badlands Energy, Inc., Badlands Production Company, Badlands Energy-Utah, LLC and Myton Oilfield Rentals, LLC, as Debtors-in-Possession:

By: _/s/ Richard Langdon_____
      Richard Langdon, CEO

BALLARD SPAHR LLP
Theodore J. Hartl, #32409
1225 17th Street, Suite 2300 South
Denver, CO, 80202-5596
Telephone: (303) 454-0528
Facsimile: (303) 573-1956
Email: hartlt@ballardspahr.com

Attorneys for Debtors Badlands Energy, Inc.,
Badlands Production Company,
Badlands Energy-Utah, LLC and
Myton Oilfield Rentals, LLC

2

## EXHIBITS

Exhibit 1 - Badlands Liquidating Trust Agreement

DMNORTH #6384374 v1
DMNORTH #6560188 v1

# EXHIBIT 1

## BADLANDS LIQUIDATING TRUST AGREEMENT

This Badlands Liquidating Trust Agreement is dated this ___ day of _____, 2018 ("Trust Agreement"), and is entered into by and among Badlands Energy, Inc., Badlands Production Company, Badlands Energy-Utah, LLC and Myton Oilfield Rentals, LLC, each a debtor and debtor-in-possession (collectively, the "Debtors"), and David V. Wadsworth, as trustee (the "Trustee") for the benefit of the creditors of the Debtors identified on the Register of Beneficiaries (as defined below).

## RECITALS

A.      On August 11, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11, U.S.C. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court"), captioned as Case Nos. (the "Bankruptcy Cases").

B.      Before the Petition Date, the Debtors owned interests in oil and gas properties, leases, contracts, and related assets, located in the state of Utah.

C.      On April 6, 2018, the Debtors filed a joint plan of liquidation pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified from time to time, the "Plan");

D.      On ____, 2018, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

E.      The Plan and the Confirmation Order provide for the establishment of this Agreement and the appointment of the Liquidation Trustee to administer the Liquidation Trust for the benefit of holders of Allowed Claims ("Allowed Claims") under the Plan, and to provide administrative services relating to the Plan's implementation;

F.      The Trust is established pursuant to the Plan and this Agreement as a liquidating trust in accordance with Treasury Regulation section 301.7701-4(d) for the sole purpose of liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except, to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust and the Plan;

G.      The Liquidation Trust is established for the benefit of the holders Allowed Claims that are entitled to receive Distributions from the Liquidation Trust under the Plan (each a "Beneficiary" and collectively, "Beneficiaries"); and

H.      The Liquidation Trust is intended to qualify as a "grantor trust" for US federal income tax purposes pursuant to sections 671-677 of the Internal Revenue Code, with the Liquidation Trust beneficiaries treated as the grantors and owners of the Liquidation Trust.

**AGREEMENT**

Now, therefore, in consideration of the premises and the mutual promises and agreements contained herein and for other valuable consideration the receipt and sufficiency of which are hereby expressly acknowledged, the Debtors and the Trustee on behalf of the Beneficiaries hereby agree as follows:

**ARTICLE I**
**Defined Terms**

**Section 1.01**   Terms Defined Above.   Each of the terms previously identified in quotation marks shall have the meaning set forth above.

**Section 1.02**   Additional Defined Terms.   The following terms shall have the meanings set forth below unless the context otherwise requires:

(a)     "Beneficiaries" or "Beneficiary" shall mean either any individual creditor or all of the creditors collectively listed in the Register of Beneficiaries.

(b)     "Beneficial Interest" shall mean the rights and interests of each of the Beneficiaries in and to the Trust Estate.

(c)     "Claim" shall have the same meaning as claim amount.

(d)     "Claim Amount" shall mean the principal amount owed to each Beneficiary, except to the extent a claim amount is a duplication of another claim or is unsupportable.   As used in this Trust Agreement, Claim Amount does not include accrued interest and expenses incurred on the claim.

(e)     "Effective Date" shall mean the date of this Trust Agreement.

(f)     "Priority" shall mean the priority position of each class of allowed claims as established by the Plan.

(g)     "Register of Beneficiaries" shall mean a register that contains the names and addresses of all Beneficiaries, which shall consist of all of the holders of allowed claims against the Debtors in the Bankruptcy Case.

(h)     "Trust" shall mean the Badlands Liquidating Trust.

(i)     "Trust Administration Expenses" shall mean any and all expenses of administering the Trust as provided in Sections 3.4(k) and 3.14, Article V, or elsewhere in this Trust Agreement.

(j)     "Trust Estate" is defined in Section 5.01.

(k)     "Trust Termination Date" is defined in Section 6.08.

2

## ARTICLE II
## Declaration of Trust

The Debtors and the Liquidation Trustee enter into this Trust Agreement to effectuate the Distribution of the Trust Assets to the holders of Allowed Claims pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan and the Confirmation Order, all right, title, and interest in, under, and to the Trust Assets shall be absolutely and irrevocably assigned to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan, solely for the benefit of the holders of Allowed Claims and for no other party.

## ARTICLE III
## Recitals, Definitions, and Interpretation

**Section 3.01   Recitals**. The Recitals are incorporated into and made terms of this Agreement.

**Section 3.02   Plan Definitions**. All terms used in this Agreement but not defined herein shall have the same meanings set forth in the Plan.

**Section 3.03   Interpretation, Headings**. All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

**Section 3.04   Conflict Among Documents**. In the event of any inconsistency between the Plan or Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE IV
## Organization of Trust

**Section 4.01   Source**.  The Beneficiaries are the sole beneficiaries of the Trust.

**Section 4.02   Office**.  The office of the Trustee shall be at Wadsworth Warner Conrardy, P.C., 2580 West Main Street, Suite 200, Littleton, CO 80120, or at such other address as the Trustee may from time to time designate.

DMNORTH #6180101 v1

Section 4.03   Appointment of the Trustee.  David V. Wadsworth is hereby appointed as Trustee of the Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.  The Trustee hereby agrees to serve as trustee of the Trust.

Section 4.04   Irrevocability.  The Debtors do not have any right to amend, revise or revoke the Trust, and reserves no powers over the Trustee, the Trust Assets, or the Beneficiaries.

Section 4.05   Effect of Actions.   Unless contrary to the provisions of this Trust Agreement, all actions taken and determinations made by the Trustee shall be final and binding upon all Beneficiaries individually and collectively.

Section 4.06   Effective Date. The Trust shall be established and become effective upon execution of this Trust Agreement pursuant to the Plan and Confirmation Order.

Section 4.07   Exemption from Registration.  The parties to this Trust Agreement intend that the rights of the Beneficiaries arising pursuant to this Trust Agreement shall not be "securities" under applicable law, but none of the parties represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities law.

## ARTICLE V
## Authority and Certain Directions to Trustee; Declaration of Trust

Section 5.01   Creation of the Badlands Liquidating Trust.  The Beneficiaries and the Debtors hereby create the Badlands Liquidating Trust for the benefit of the Beneficiaries. Subject to the provisions of Section 2.2 below, the Debtors hereby irrevocably transfer, absolutely assign, convey, set over, and deliver to the Trust, and its successors and assigns, all right, title, and interest of the Debtors in and to the Trust Assets, in trust, to and for the benefit of the Beneficiaries for the uses and purposes stated herein.   The Confirmation Order shall automatically vest the Trust Assets in the Trust (the "Trust Estate") without the need for any additional documentation, notice, or acknowledgements; *however*, to the extent reasonably requested by the Trustee, the Debtors shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation, and will cooperate and take such other actions, as are necessary or desirable in order to transfer, convey, and assign all rights, title, and interests in and to the Trust Assets to the Trust.

Section 5.02   Transfer of Trust Assets.   Transfer of the Trust Assets to the Trust, pursuant to and in accordance with the Plan and this Trust Agreement, shall be deemed a transfer to and for the benefit of the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Trust to hold in trust for the benefit of the Beneficiaries, except as otherwise provided in the Plan or this Trust Agreement.  The Beneficiaries shall be treated as the grantors and deemed owners of the Trust.  Except as otherwise provided by the Plan or this Trust Agreement, upon the Effective Date of the Plan, title to the Trust Assets shall pass to the Trust free and clear of all liens, claims, encumbrances, and interests, pursuant to Section 1123 of the Bankruptcy Code.

Section 5.03   Property in the Trust.  The Trust shall hold the legal title to all property at any time constituting a part of the Trust Estate and shall hold such property in trust to be

administered and/or disposed of by it pursuant to the terms of this Trust Agreement and the Plan for the benefit of the Beneficiaries.  The Trustee shall invest the Trust Assets, or proceeds from the Trust Assets, subject to the limitations set forth in 11 U.S.C. 345. The Trustee may make such investments in such amounts and at such times as he may deem necessary in his sole and absolute discretion, to provide funds when needed to make payment from the Trust Assets.  The Trustee is authorized to make disbursements and payments from the Trust Estate as described in this Agreement.

**Section 5.04**   <u>Purpose</u>.   The purposes of the Trust include but are not limited to authorizing and directing the Trustee to take such action in connection with the Trust Assets to distribute available cash, to maximize value by maintaining and preserving the Trust Assets, and taking any other lawful action that is consistent with and carries out the objectives of this Trust Agreement.   The Trustee is hereby authorized and directed: (i) to take all reasonable and necessary actions to conserve and protect the Trust Estate; (ii) to the extent necessary and appropriate, and except as limited by the Plan, object to Claims asserted against the Trust; and (iii) to maintain, operate, lease, or sell or otherwise dispose of the Trust Estate, in accordance with the terms of this Agreement, the Plan, and to distribute the net proceeds of such disposition to the Beneficiaries, in as prompt, efficient, and orderly a fashion as possible.

**Section 5.05**   <u>Acceptance of Trust and Conveyance</u>.  The Trustee is hereby directed to, and the Trustee accepts the Trust imposed upon him by this Trust Agreement and agrees to observe and perform that trust, upon and subject to the terms and conditions set forth in this Trust Agreement.  Further, the Trustee agrees that he will:

(a)     Accept delivery of the Trust Assets on behalf of the Trust;

(b)     Accept all bills of sale, deeds, assumptions, and assignments, and any other instruments of conveyance reasonably required to be delivered by any of the Debtors with respect to the Trust Estate transferred to the Trustee on behalf of the Trust pursuant to, or in connection with, the Plan, the Confirmation Order, or this Trust Agreement; and

(c)     Take such other action as may be required of the Trust hereunder, including the receipt and acceptance of the Trust Estate.

**Section 5.06**   <u>Title</u>.  On the Effective Date, legal title to all Trust Assets shall be vested in the Trust in accordance with and pursuant to the terms of the Plan and this Agreement.  Except as otherwise provided in the Plan, on the Effective Date, the Trustee, on behalf of the Trust, shall be:  (i) authorized to act as representative of the Debtors' Estates in respect of any and all claims or causes of action that constitute Trust Assets or assets of the Trust Estate (ii) substituted as successor to the Debtors (a) in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court or elsewhere in regard to the Trust Assets or the Trust Estate, and (b) in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court in connection with or regarding all Claims.

## ARTICLE VI
## Duties of the Trustee

**Section 6.01**  Obligations of Trustee.  The Trustee shall perform and discharge all obligations and duties specifically assigned to him pursuant to the terms of this Trust Agreement and the Plan, and such other duties as may be necessary or appropriate in order to carry out and implement this Agreement and the Plan.  The Trustee shall manage and operate the Trust Assets in such a manner as to maximize the value of the Trust Assets pending their final disposition in accordance with the Plan and this Trust Agreement.

**Section 6.02**  Register of Beneficiaries.  The Trustee shall keep the Register of Beneficiaries at his principal office.  The Trustee may treat the person in whose name any beneficial interest in the Trust is registered on the Register of Beneficiaries as the owner of such beneficial interest for any and all purposes of the Trust Agreement.

**Section 6.03**  No Duties Except as Specified in Trust Agreement or Plan.  The Trustee shall not have any right, duty, or obligation to manage, make any payment in respect of, register, record, sell, dispose of, vary, or otherwise deal with the Trust Assets, or to otherwise take or refrain from taking any action under, or in connection with the Trust Assets or any portion thereof, except as expressly provided by the terms of this Trust Agreement and the Plan.

**Section 6.04**  Powers of the Trustee.  The Trustee shall have such rights and powers as are set forth in this Trust Agreement and in the Plan in order to carry out and implement the purposes and intents of the Trust.  The Debtors hereby grant, assign, convey, deliver, delegate and set over unto the Trustee and the Trust Estate in trust for the benefit of the Beneficiaries and subject to the terms and provision set out in this Trust Agreement and the Plan, all of the authority, rights, powers and duties previously vested in the Debtors under the Bankruptcy Code and applicable non-bankruptcy law including without limitation such laws to which the Debtors or the Trustee is or hereafter may become subject.  All powers granted to the Trustee by this Trust Agreement are exercisable by the Trustee only in a fiduciary capacity and only in furtherance of the administration of the Trust Assets in accordance with this Trust Agreement.  During the Trustee's administration of the Trust, and subject to the Plan and this Trust Agreement, the Trustee may exercise the following powers and duties:

> (a)  To hold and retain the Trust Assets in the form in which he or she receives the same until its sale or other disposition and to have exclusive, possession, and control thereof as permissible under applicable law;

> (b)  To manage the Trust Assets, to maintain, maximize and preserve the value of the Trust Assets and to employ such persons, including former employees and members of management of the Debtors, as may be necessary to carry out the purposes of the Trust;

> (c)  To liquidate any non-cash real or personal property associated with the Trust Assets and to negotiate with any potential buyer the terms of the sale of the Trust Assets or any portion thereof;

6

(d)    To distribute the Trust Assets, and the proceeds of sales thereof, as provided in this Trust Agreement and the Plan;

(e)    To open bank deposit and checking accounts, deposit funds therein, withdraw funds therefrom and conduct such other banking activities as are necessary for the effectuation of the trust set forth herein, and to pay routine and ordinary fees in connection therewith;

(f)    To select and employ such brokers, banks, institutions, investment counsel, attorneys, accountants, appraisers and such other agents as it may deem advisable, and to delegate to such agents such of its ministerial duties, rights and powers as it deems necessary and appropriate, and to pay reasonable compensation to such agents;

(g)    To renew and extend the due date of any obligations, and to commence, litigate, arbitrate, adjust, defend, abandon, settle or compromise any causes of action relating to the Trust Assets on such terms as it may deem advisable;

(h)    To institute any action or proceeding at law or in equity for the collection of the sums due the Trust or otherwise to advance the interest of the Trust;

(i)    To enter into, perform, and exercise rights under contracts binding upon the Trust (but not upon the Trustee in his individual or corporate capacity) which are reasonably incident to the administration of the Trust and which the Trustee, in the exercise of his best business judgment, reasonably believes to be in the best interests of the Trust;

(j)    To collect and receive any accounts receivable, income, proceeds of sale, and distributions derived from or relating to the Trust Estate and to distribute the same to the Beneficiaries in accordance with the terms of this Agreement;

(k)    To pay any and all reasonably necessary expenses attributable or relating to the management, maintenance, operation, preservation, or liquidation of the Trust Estate ("Trust Administration Expenses");

(l)    To investigate, file, compromise, settle, withdraw, or litigate in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Claims filed against the Debtors' Estates, the Trust Estate or the Trust;

(m)    To investigate, file, compromise, settle, withdraw, or litigate in Bankruptcy Court or other court of competent jurisdiction, any and all causes of action belonging to the Trust Estate;

(n)    To sue in connection with any matter arising from or related to the Plan or this Trust Agreement that affects in any way the rights or obligations of the Trust, the Trustee, or the Beneficiaries relating to the Trust Assets;

DMNORTH #6180101 v1

(o)     To represent the interests of the Beneficiaries in their capacity as beneficiaries of the Trust with respect to any matters relating to the Plan, this Agreement, or the Trust affecting the rights of such Beneficiaries;

(p)     To act as representative of the Debtors' Estates with respect to the assets that constitute the Trust Estate, and to investigate, initiate, prosecute, settle, or compromise any and all claims, or causes of action belonging to the Trust Estate;

(q)     If the Trust shall become subject to federal income or state tax, the Trustee shall have the power, but not the obligation, exercisable at his discretion, to take any action reasonably necessary to minimize any adverse federal or state income tax consequences to the Beneficiaries resulting from any distribution made by the Trust to such Beneficiaries;

To do any and all other things, not in violation of any other terms of the Plan and this Trust Agreement, which, in the reasonable business judgment of the Trustee, are necessary or appropriate for the proper liquidation, management, investment, and distribution of the assets of the Trust Estate in accordance with the provisions of this Trust Agreement and the Plan.

**Section 6.05**   Exculpation of the Trustee.  Neither the Trustee nor any officers, directors, affiliates, employees, attorneys, consultants, or agents of the Trustee shall have any liability to any Beneficiaries or to any other person or entity for (a) the obligations of the Trust or (b) for the consequences of their acts and omissions in the performance of their respective duties hereunder and under the Plan, including without limitation with respect to any losses incurred on investments made by the Trustee in accordance with the terms of the Plan and this Trust Agreement, except to the extent such consequences are caused by acts which constitute bad faith, willful misfeasance, or gross negligence.  Neither the Trustee nor any officers, directors, affiliates, employees, attorneys or agents of the Trustee shall have any liability to any of the Beneficiaries, collectively or individually, or to any other person for the consequences of any act or omission.

**Section 6.06**   Trustee Not Acting in Individual Capacity.  The Trustee may contract in such a manner that the Trustee is exempt from personal liability and that liability is limited to the Trust Estate.  The Trustee shall not engage in self-dealing, and any material self-dealing shall be considered willful.  The foregoing notwithstanding, the Trustee shall be personally liable to the Trust, Beneficiaries or third parties for bad faith, willful misfeasance, or gross negligence.

**Section 6.07**   Beneficiaries.

(a)     All cash held by the Trustee from the sale or other disposition of the Trust Assets, or from any other source, shall be deposited in a bank account established by the Trust and held by the Trustee and if deemed advisable by the Trustee, invested as permitted by this Trust Agreement.  The Trustee shall keep an accounting of receipts and disbursements which shall be available to the Beneficiaries upon written request at all reasonable times.

(b)    No Beneficiary shall have the right to dispute the amount or Priority of any other Beneficiary's claim.

**(c)**    The distributions received on Beneficiary Claims under Article V shall be in complete and final satisfaction of their Claims and Claim Amounts in the Debtor's Bankruptcy Case.   Such distributions are in final and absolute satisfaction of all Beneficiary Claims or Claim Amounts.

**Section 6.08**   <u>Termination of the Trust</u>.   This Trust Agreement and the Trust shall terminate and this Trust Agreement shall be of no further force or effect (the "Trust Termination Date") thirty (30) days after the final distribution by the Trustee of all money and other properties and proceeds constituting the Trust Assets.  Upon termination of the Trust as herein provided, the Trustee shall execute and lodge among the records of the Trust an instrument setting forth the fact of such termination, and the Trustee shall thereupon be discharged from all further liabilities and duties hereunder.

**Section 6.09**   <u>Right to Withhold</u>.   To the extent that the Trustee is required by applicable law to withhold or otherwise deduct any taxes or other governmental charges in respect of any distributions made pursuant to the Trust, the Trustee shall be entitled to withhold or deduct the amount of such taxes or charges from the gross amount of such distribution and remit the same to the appropriate taxing or governmental authority.

**Section 6.10**   <u>No Premature Termination</u>.   The death, incapacity, insolvency or bankruptcy of a Beneficiary during the term of the Trust shall not operate to terminate the Trust, nor shall it entitle the representatives or creditors of such Beneficiary to enforce the interests of such Beneficiary in any manner other than as provided for in this Trust Agreement.

**Section 6.11**   <u>Trust Not An Investment Company</u>.  The Trustee shall not take any action which might cause the Trust to become subject to the provisions of the Investment Company Act of 1940, as amended.

**Section 6.12**   <u>Tax Treatment of the Trust</u>.  It is anticipated that the Trust will constitute either a liquidating trust or a grantor trust owned, within the meaning of section 671 of the Internal Revenue Code of 1986, as amended (the "IRC"), entirely by the Beneficiaries.  The Trustee shall have the right, but not the obligation, to file a ruling request with, or otherwise seek guidance or advice from, the Internal Revenue Service or tax counsel as to the proper federal income tax classification and treatment of the Trust and, upon receipt of such guidance, shall file the appropriate federal, state, and local income tax returns, provide Beneficiaries with the appropriate information returns, and, in accordance with such guidance or advice, pay from the corpus or income of the Trust (to the extent that it is subject to income taxation) any federal, state, or local income tax attributable to the earnings of the Trust. Pending receipt of such guidance or advice, the Trustee shall be entitled:

(a)    to assume that the Trust is either a liquidating trust, a grantor trust owned entirely by the Beneficiaries, or a complex trust taxable under section 641 of the IRC,

with each Beneficiary treated as owning a separate and independent share within the meaning of section 663(c) of the IRC and the regulations issued thereunder;

(b)     to pay from the Trust Assets such federal, state, and local income taxes as may be payable in accordance with such assumptions; and

(c)     to file all appropriate federal, state, and local income tax returns, and provide the Beneficiaries with information statements in accordance with such assumptions.

The taxable year of the Trust shall, unless otherwise required by the IRC, be the calendar year.

**Section 6.13**   <u>Bonds</u>.  Unless a bond is required by law, no bond shall be required of the Trustee hereunder.  If a bond is required by law, no surety or security with respect to such bond shall be required unless such security is also required by law.  If any such bond is required, all costs and expenses of procuring any such bond shall be paid by the Trustee as a cost of administering the Trust.

**Section 6.14**   <u>Costs and Expenses of Trustee</u>.  The Trustee shall pay out of the Trust Estate all reasonable costs, expenses, and obligations incurred by the Trustee in carrying out his duties under this Agreement or in any manner connected, incidental or related to the administration of the Trust, without application to the Bankruptcy Court, including, without limitation:

(a)     Any reasonable fees and expenses of attorneys, accountants, consultants, analysts, investment advisors, expert witnesses, insurance adjusters, property managers, realtors, brokers, professionals, or other persons whom the Trustee may reasonably deem advisable to employ in connection with the Trust, or in their own behalf in accordance with the terms of this Agreement;

(b)     Any taxes, charges, and assessments which may be owed by, or levied or assessed against, the Trust Estate or any property held in trust hereunder; and

(c)     Reasonable compensation for the fees performed pursuant to the terms of, and in accordance with this Agreement, at the hourly rate set forth in Section 3.15.

**Section 6.15**   <u>Compensation of Trustee</u>.  The Trustee will be compensated as follows:

(a)     The Trustee shall receive $425 per hour, including travel time, as compensation, from and after the Effective Date of the Plan, through the earlier of (i) the Termination Date, (ii) the appointment of a new trustee for the Trust or (iii) the resignation of the Trustee; and

(b)     The Trust shall reimburse the Trustee for reasonable, actual, and necessary expenses relating solely to the Trustee's performance of his responsibilities under the Agreement.

## ARTICLE VII
## Successor Trustees and Additional Trustees

**Section 7.01**   Resignation.  The Trustee may resign at any time without cause by giving at least thirty (30) days prior written notice to the Debtors and the Bankruptcy Court.  In case of the death, disability, dissolution, or resignation of the Trustee, the Debtors may appoint one or more successor trustees, subject to Bankruptcy Court approval.

**Section 7.02**   Successor Trustee.  Any successor Trustee shall execute and deliver to the Debtors and the Bankruptcy Court an instrument accepting such appointment, and thereupon such successor Trustee, without further act, shall become vested with all the estates, properties, rights, powers, duties, and trusts of the predecessor Trustee in the Trust with like effect as if originally named the Trustee herein; but nevertheless, upon the written request of such successor Trustee, such predecessor Trustee shall execute and deliver an instrument(s) transferring to such successor Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, duties, and trusts of such predecessor Trustee, and such predecessor Trustee shall duly assign, transfer, deliver, and pay over to such successor Trustee all monies or other property then held or subsequently received by such predecessor Trustee upon the trusts herein expressed.

**Section 7.03**   Trust Continuance.  The death, resignation, incompetency or removal of the Trustee shall operate neither to terminate the Trust created by this Agreement nor to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by such Trustee.  In the event of the resignation or removal of the Trustee, such Trustee shall (i) promptly execute and deliver any such documents, instruments, and other writing as may be necessary to effect the termination of such Trustee's capacity under this Agreement, and the conveyance of the Trust Estate then held by such Trustee to the temporary or successor trustee; (ii) deliver to the temporary or successor trustee all documents, instruments, records, and other writings relating to the Trust or Trust Estate as may be in the possession of such Trustee; and (iii) otherwise assist and cooperate in effecting the transfer and assumption of his obligations and functions by the temporary or successor trustee.

## ARTICLE VIII
## Payment of Administrative Claims; Distributions to Beneficiaries

**Section 8.01**   Administrative Claims.  The Beneficiaries acknowledge and agree that for the Trust Assets to be transferred to the Trust as contemplated in this Agreement, it is necessary to pay Administrative Claims incurred and allowed in the Debtors' Bankruptcy Cases. Such Administrative Claims shall be paid first, from cash on hand, and second, from the proceeds of the Trust Assets before distributions to Beneficiaries.

**Section 8.02**   Distribution to Beneficiaries.  Distributions to Classes 1, 2, and 4 under the Debtors' Plan are to be made as provided in the Plan.

## ARTICLE IX
### Miscellaneous

**Section 9.01**   Title to Trust Estate.   No Beneficiary shall have title to any part of the Trust Estate.

**Section 9.02**   Sales of Assets of the Trust Estate.   Any sale or other conveyance of any assets of the Trust Estate, or part thereof, by the Trustee made in accordance with the terms of this Agreement, shall bind the Beneficiaries and shall be effective to transfer or convey all right, title, and interest of the Trustee and the Beneficiaries in and to such asset of the Trust Estate.

**Section 9.03**   Notices.   Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices shall be in writing and delivered by registered or certified mail, return receipt requested, or by a hand or facsimile transmission (and confirmed by mail), in any such case addressed as follows:

If to the Trustee:

> David V. Wadsworth
> **Wadsworth Warner Conrardy, P.C.**
> 2580 West Main Street, Suite 200
> Littleton, CO 80120
> Telephone: (303) 296-1999
> Facsimile: (303) 296-7600
> Email: dwadsworth@wwc-legal.com

With a copy to:

> Theodore J. Hartl
> **BALLARD SPAHR LLP**
> 1225 17th Street, Suite 2300
> Denver, CO, 80202-5596
> Telephone: (303) 454-0528
> Facsimile: (303) 573-1956
> Email: hartlt@ballardspahr.com

And if to any Beneficiary, addressed to its latest mailing address reflected on the Register of Beneficiaries.

**Section 9.04**   Severability.   Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

DMNORTH #6180101 v1

**Section 9.05**    Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.

**Section 9.06**    Binding Agreement.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Trustee and his respective successors and assigns and any successor Trustee, his respective successors and assigns, and the Beneficiaries, and their respective personal representatives, successors and assigns.  Any request, notice, direction, consent, waiver, or other instrument or action by any party hereto or any Beneficiary shall bind their respective heirs, personal representatives, successors and assigns.

**Section 9.07**    Construction.    Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations, limited liability companies, and corporations.

**Section 9.08**    Execution by Facsimile or Email.  Facsimile or e-mail transmissions of an executed original of this Trust Agreement and/or retransmission of any executed facsimile or e-mail transmission shall be deemed to be the same as the delivery of an executed original.

**Section 9.09**    Headings.  The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

**Section 9.10**    Governing Law.    Except to the extent that the Bankruptcy Code is applicable, this Trust Agreement shall be governed, construed, interpreted and enforced in accordance with the substantive laws of the State of Colorado applied to agreements entered into and performed entirely within such State.

**Section 9.11**    Retention of Bankruptcy Court Jurisdiction.  The Bankruptcy Court shall retain original and exclusive jurisdiction as provided in the Plan over this Trust, the Trustee, and the Trust Assets, including without limitation the determination of all controversies and disputes arising under or in conjunction with this Trust Agreement.

**Section 9.12**    No Obligation to Register Trust.  The Trustee will have no obligation to register this Trust pursuant to any requirement of state law.

**Section 9.13**    Non-Avoidability of Trust.    The Debtors shall not raise, and hereby expressly waives, any claim or action to avoid this Trust Agreement, the Trust created hereby, and the transfer of the Trust Assets as described herein, as a preference, fraudulent transfer, post-petition transaction, or other similar claim.

**Section 9.14**    Further Assurances.  To the extent necessary, the Debtors agree to execute and deliver to the Trustee such instruments to terminate the automatic stay imposed by 11 U.S.C. § 362.  In addition, each party hereto shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Trust Agreement.

DMNORTH #6180101 v1

**Section 9.15**   Entire Agreement.   This Trust Agreement contains the entire agreement between the parties hereto with respect to the subject matter of this Trust Agreement and supersedes all prior understandings, agreements, representations, and warranties, if any, with respect to such subject matter.

**Section 9.16**   Attorney Fees.   If a party hereto or beneficiary hereof commences a legal proceeding to enforce any of the terms of this Trust Agreement, the prevailing party in such action shall have the right to recover reasonable attorney fees and costs from the other party to be fixed by the court in the same action.

**Section 9.17**   No Strict Construction.   All parties hereto have participated jointly in the negotiation and drafting of this Trust Agreement.   In the event an ambiguity or question of intent or interpretation arises under any provision of this Trust Agreement, this Trust Agreement shall be construed as if drafted jointly by all parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Trust Agreement.

**\* \* \* SIGNATURE PAGE FOLLOWS \* \* \***

DMNORTH #6180101 v1

**IN WITNESS WHEREOF**, the Trustee and the Debtors have duly executed this Trust Agreement as of the day and year first above written.

**TRUSTEE:**

_____

David V. Wadsworth, in his capacity as
as Trustee for the Badlands Liquidating
Trust

**DEBTORS:**

BADLANDS ENERGY, INC.

By:_____
Name: Richard Langdon
Title: President and CEO

BADLANDS PRODUCTION COMPANY

By:_____
Name: Richard Langdon
Title: President and CEO

BADLANDS ENERGY-UTAH, LLC

By:_____
Name: Richard Langdon
Title: President and CEO

MYTON OILFIELD RENTALS, LLC

By:_____
Name: Richard Langdon
Title: President and CEO

15